**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**DOLORES CEPEDA**

    **VS**

**BANK OF AMERICA, N.A.**
**FAY SERVICING, LLC**
**WILMINGTON TRUST NATIONAL ASSOCIATION**
**SOLEY AS TRUSTEE FOR THE MFRA TRUST 2014-2 , ALIAS**

## <u>COMPLAINT</u>

Plaintiff, by her attorney, complains of Defendants as follows:

1.    Plaintiff is a resident of the State of Rhode Island with an address of 177 Dexter Street, , Providence, Rhode Island. Plaintiff owns said real estate located at 177 Dexter Street, Providence, Rhode Island.

2.    Plaintiff executed a mortgage to Bank of America, N.A. on December 22, 2006. A copy is attached as Exhibit A.

3.    Defendant, Bank of America, N.A. is a national bank with a principal office in the State of North Carolina.

4.    Defendant, Wilmington Trust National Association solely as Trustee for the MFRA Trust 2014-2 ("Wilmington Trust") claims to own Plaintiff's mortgage.

5.    Wilmington Trust has a primary business address of 350 Park Ave, New York, NY 10022

6.    Defendant, Fay Servicing, LLC ("Fay") is a limited liability company, organized pursuant to the laws of Delaware. It is a debt collector and asserts that it is the loan servicer for the Plaintiff's mortgage

7.      Defendant, Bank of America, N.A. is a National Bank. It was the former loan servicer for the Plaintiff's mortgage loan.

8.      Orlans PC ("Orlans") without signing the letter, on November 15, 2018, indicated in the attached Exhibit B that Wilmington Trust was bringing a foreclosure proceeding and that it had scheduled a public auction foreclosure sale for 7th day of January, 2019 at 3:00 PM.

9.      Neither Orlans, Fay, Bank of America nor Wilmington Trust have ever mailed Plaintiff  a notice, which was required pursuant to the provisions of paragraph 22 of the mortgage nor have accelerated the note.  Plaintiff has never been mailed such a default notice from the owner of the note or mortgage.

10.     Before an acceleration of the loan was declared, the Lender was required to send Plaintiff a notice to her home address which specified:

      a.      the default;

      b.      the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

      c.      that failure to cure the default on or before the date specified in the Notice may result in the acceleration and sale of her  home

      d.      the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

11.     Paragraph 22 of the mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

**Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The  notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that  failure to cure the default on or before the date specified in the notice  may result in acceleration of the sums secured by this Security Instrument and sale**

2

**of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not  cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall  mail a copy of a notice of sale to Borrower as provided in Section 15.  Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

12.     The provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage.

13.     There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above.

14.     Any alleged exercise of the statutory power of sale to Plaintiff was defective because a default notice and the note was never accelerated as required by paragraph 22 of the mortgage.

15.      Fay mailed Plaintiff  a letter dated December 12, 2017, which it claimed to be a default notice.  A copy is attached as Exhibit C.

16.     This letter did not strictly comply with Paragraph 22 of the mortgage as indicated in this complaint.

17.     Paragraph 22 (c) of the mortgage required a default notice which specified:

**(c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured**

18.    However this letter did not specify a particular date for the cure date. Instead it stated:

To cure the default, you must pay the full amount of the default on this loan by 01/19/2018(or if said date falls on a Saturday, Sunday or legal holiday, then on the first business day thereafter.

19.    The letter did not specify a particular date, but left it to the Plaintiff to determine the date to cure the loan.

20.    Plaintiff was not provided a specific and unequivocal  date to cure the loan.

21.    The mortgage required that Plaintiff be provided the following information:

**that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.**

22.    This letter instead stated:

Failure to cure the default on or before this date may result in acceleration of the sums secured by the Security Instrument, **foreclosure by judicial proceeding where applicable**, and sale of the property. (emphasis added)

23.    The reference to foreclosure by judicial procedure indicates that Fay would commence a legal action against Plaintiff as provided by Rhode Island General Laws §34-27-1.

24.    Later in the letter, Fay again indicated that the purpose of the letter was to eventually commence a foreclosure proceeding:

If foreclosure proceedings are undertaken, we may pursue a deficiency judgment

25.     Neither Fay nor Wilmington Trust ever initiated a foreclosure proceeding in any Court.

26.     No earlier than September 27, 2018, a purported Notice of Foreclosure Counseling was mailed to Plaintiff pursuant to R.I.G.L. § 34-27-3.1.

27.     Plaintiff has not been provided a Notice of Foreclosure Counseling pursuant to the provisions of R.I.G.L § 34-27-3.1, which states:

### § 34-27-3.1. Foreclosure counseling.

(a) No less than forty-five (45) days prior to initiating any foreclosure of real estate pursuant to subsection 34-27-4(b), the **mortgagee shall provide to an individual consumer mortgagor** written notice of default and the mortgagee's right to foreclose by first class mail at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices.

(b) The written notice required by this section shall be in English and Spanish and, provided the same is then available, shall advise the mortgagor of the availability of counseling through HUD-approved mortgage counseling agencies and, the toll-free telephone number and website address maintained to provide information regarding no-cost HUD-approved mortgage counseling agencies in Rhode Island. The written notice may also contain any other information required under federal law. A form of written notice meeting the requirements of this section shall be promulgated by the department of business regulation for use by mortgagees at least thirty (30) days prior to the effective date of this section. Counseling shall be provided at no cost to the mortgagee.

(c) Failure of the mortgagee to provide notice to the mortgagor as provided herein shall render the foreclosure void, without limitation of the right of the mortgagee thereafter to reexercise its power of sale or other means of foreclosure upon compliance with this section. The mortgagee shall include in the foreclosure deed an affidavit of compliance with this section.

(d) As used herein and in this chapter, the term "HUD" means the United States Department of Housing and Urban Development and any successor to such department.

28.     Exhibit D is a letter mailed to Plaintiff from Orlans, P.C. located in Troy Michigan, which was provided to her after October 1, 2018 by regular mail.

29.     Plaintiff was not provided this letter at least 45 days prior to the purported Notice of Sale, which was dated November 15, 2018.

30.      The statute provides that failure to provide the homeowner/Plaintiff with this letter at least forty five days before the Notice of Sale will render the sale void.

31.     Plaintiff was not mailed a Notice of Mediation from the purported mortgagor, Wilmington Trust pursuant to R.I.G.L. § 34-27-3.2.

31.     R.I.G.L. § 34-27-3.2. provides:

 (d) The mortgagee shall, prior to initiation of foreclosure of real estate pursuant to § 34-27-4(b), provide to the mortgagor written notice at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices, that the mortgagee may not foreclose on the mortgaged property without first participating in a mediation conference. Notice addressed and delivered as provided in this section shall be effective with respect to the mortgagor and any heir or devisee of the mortgagor.. .

     (m) No deed offered by a mortgagee as a result of a mortgage foreclosure action under power of sale shall be submitted to a city or town recorder of deeds for recording in the land evidence records of the city or town until and unless the requirements of this section are met. Failure of the mortgagee to comply with the requirements of this section shall render the foreclosure voidable, without limitation of the right of the mortgagee thereafter to re-exercise its power of sale or other means of foreclosure upon compliance with this section. The rights of the mortgagor to any redress afforded under the law are not abridged by this section.

32.     Wilmington Trust did not mail or send Plaintiff a Notice of Mediation as required by R.I.G.L. § 34-27-3.2.

33.     Wilmington Trust claimed to be the mortgagee, which sought to mail the Plaintiff a Notice of Sale pursuant to R.I.G.L. § 34-27-3.2.

34.    Such notice of mediation was a precondition to exercising the statutory power of sale.

35.    Pursuant to R.I.G.L. § 34-27-3.2. Plaintiff can file an action in the Providence Superior Court to set aside any purported foreclosure sale.

36.    Wilmington Trust made no effort to comply with the provisions of R.I.G.L § 34-27-3.2 prior to mailing the Notice of Sale dated November 15, 2018.

37.    Previously by a letter dated July 23, 2018, Defendants, through their attorney, Orlans, P.C. mailed a purported Notice of Sale pursuant to R.I.G.L. § 34-27-4 advertising a sale for September 23, 2018.

38.    A copy of this Notice of Sale is attached as Exhibit  E.

39.    Prior to mailing this  purported Notice of Sale letter, neither Fay, Wilmington Trust, nor any person or entity acting on their behalf mailed the Plaintiff a Notice of Foreclosure Counseling pursuant to R.I.G.L. § 34-27-3.1.

40.    Prior to mailing this  purported Notice of Sale letter, neither Fay, Wilmington Trust, nor any person or entity acting on their behalf mailed the Plaintiff a Notice of Mediation pursuant to R.I.G.L. § 34-27-3.2.

41.    This Notice of Sale was also mailed to the Plaintiff's tenants.

42.    This Notice of Sale was not  preceded by a default notice pursuant to the terms of the mortgage as previously alleged in this complaint.

43.    Plaintiff from January 1, 2018 through November, 2018 mailed elven mortgage payments to Fay.

44.    All payments since March 2018 have been returned to the Plaintiff by Fay.

45.    Prior to Fay commencing servicing of the mortgage loan, Bank of America was the loan servicer.

46.    Bank of America never declared the loan to be in default pursuant to the terms of paragraph 22 of the  mortgage.

47.    Bank of America never mailed the Plaintiff a default notice as required by the terms of the mortgage.

48.    Fay, through its attorney Orlans PC was notified of the defective nature of the foreclosure proceedings for failure to comply with the provisions of R.I.G.L 34-27-3.1 and R.I.G.L 34-27-3.2 but has refused to cancel this sale.

## COUNT I

## <u>VIOLATION OF RHODE ISLAND GENERAL LAWS § 34-27-3.1</u>

49.    Paragraphs 1-48 are incorporated by reference.

50.     Rhode Island General Laws § 34-27-3.1 requires a mortgagee,  to mail a mortgagor a Notice of Foreclosure counseling at least 45 days prior to the mailing of a Notice of Sale.

51.     As alleged above Plaintiff was not provided a Notice of Foreclosure Counseling until after October 1. This document was provided to her less than 45 days before the November 15, 2018  Notice of Sale.

52.     Pursuant to R.I.G.L. 35-27-3.1, any foreclosure sale which does not comply with the provisions of the statute will be void and  any actions of the Defendants regarding this foreclosure attempt will be void pursuant to Rhode Island law.

53.     Plaintiff has incurred damages as a result of the actions of Fay and Wilmington Trust as  alleged in this complaint.

54.     Her mortgage loan account has been charged improper fees and charges.

55.     Her tenant was notified of this improper foreclosure activity on two occasions, causing the tenant to fail to pay rent for two months.

56.     She has incurred emotional distress arising from the advertising of the foreclosure sale due to the fear that she will be removed from her home.

57.     Plaintiff has incurred legal fees for the prosecution of this action.

Wherefore Plaintiff demands the following relief:

A. A declaration that the any charges arising from the November 15, 2018 Notice of Sale and subsequent advertising are invalid and void;

B. A declaration that the Defendants did not comply with the provisions of R.I.G.L 34-27-3.1.

C. Damages arising from this action of the Defendants

D. Grant all other just and proper relief, including actual damages and costs and attorney fees.

> DOLORES CEPEDA
> By her Attorney

January 3, 2019            /s/ John B. Ennis
                           JOHN B. ENNIS, ESQ. #2135
                           1200 Reservoir Avenue
                           Cranston, Rhode Island 02920
                           (401) 943-9230
                           Jbelaw75@gmail.com

## VIOLATION OF RHODE ISLAND GENERAL LAWS § 34-27-3.1

58.     Paragraphs 1-57 are incorporated by reference.

59.     Rhode Island General Laws § 34-27-3.2 requires a mortgagee, which seeks to exercise the statutory power of sale,  to mail a mortgagor a Notice of Mediation prior to the mailing of a Notice of Sale.

60.     As alleged above Plaintiff was not provided a Notice of Mediation by Fay or Wilmington Trust.

61.     Pursuant to R.I.G.L. 35-27-3.2, any failure to provide mediation to the homeowner by the mortgagee seeking to exercise the statutory power of sale will be voidable upon the Plaintiff filing a complaint in the Providence Superior Court, which will rescind this foreclosure attempt,

62.     Plaintiff has incurred damages as a result of the actions of Fay and Wilmington Trust as alleged in this complaint.

63.     Her mortgage loan account has been charged improper fees and charges.

64.     Her tenant was notified of this improper foreclosure activity on two occasions, causing the tenant to fail to pay rent for two months.

65.     She has incurred emotional distress arising from the advertising of the foreclosure sale due to the fear that she will be removed from her home.

66.     Plaintiff has incurred legal fees for the prosecution of this action.

Wherefore Plaintiff demands the following relief:

A. A declaration that the any charges arising from the November 15, 2018 Notice of Sale and subsequent advertising are invalid and void;

B. A declaration that the Defendants did not comply with the provisions of R.I.G.L 34-27-3.2.

C. Judgment for damages arising from this action of the Defendants

D. Grant all other just and proper relief, including actual damages and costs and attorney fees.

DOLORES CEPEDA
By her Attorney

January 3, 2019

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT III

## BREACH OF CONTRACT AND OF THE COVENANT OF GOOD FAITH AND DEALING

66.    Paragraphs 1- 65 are incorporated by reference.

67.    Paragraph 22 of the mortgage provides that the Lender must send a notice of default which contains specific language as a condition precedent to acceleration and sale.

68.    As alleged in this complaint, Plaintiff never received any  default letter, which included language required by the terms of the mortgage from the lender or owner of the note or the mortgage or an agent indicating that it was acting on behalf of the lender or owner of the note and the mortgage.

69.    Another precondition to exercise the statutory power of sale in the mortgage contract was compliance with the Rhode Island Mediation Statute, R.I.G.L 34-27-3.2.

70.    As alleged in this complaint, neither Wilmington Trust nor Fay nor any  entity acting on its behalf mailed the Plaintiff  a Notice of Mediation.

71.    As a result Wilmington Trust was not authorized to exercise the statutory power of sale.

72.    Another precondition to exercise the statutory power of sale in the

mortgage contract was compliance with the Notice of Foreclosure Counseling Statute, R.I.G.L 34-27-3.1.

73.     As alleged in this complaint, neither Wilmington Trust nor Fay nor any entity acting on its behalf provided the Plaintiff  a Notice of Foreclosure Counseling pursuant to the statute at least forty five days prior to mailing the Plaintiff a purported Notice of Sale dated November 15, 2018.

74.     As alleged in this complaint, neither Wilmington Trust nor Fay nor any entity acting on its behalf provided the Plaintiff  any Notice of Foreclosure Counseling  prior to mailing the Plaintiff a purported Notice of Sale dated July 23, 2018.

75.     As a result Wilmington Trust was not contractually or sstatutorily authorized to exercise the statutory power of sale on either September 23, 2018 or January 7, 2019.

76.     The actions of  Wilmington Trust constituted a breach of contract, resulting in damages to the Plaintiff, who hired an attorney to commence this case.

77.     The mortgage contract between Plaintiff and the mortgagee and its successor or assignee contained an implied covenant of good faith and dealing between the parties so that the contractual obligation of the contract might be achieved.

78.     Wilmington Trust  violated the covenant of good faith and dealing by scheduling tow foreclosure sale in violation of the terms of the mortgage by seeking to exercise the statutory power of sale without having mailed a Notice of Mediation or provided a Notice of Foreclosure Counseling as required by  law.

79.     Wilmington Trust also  violated the covenant of good faith and dealing by scheduling a foreclosure sale in violation of the terms of the mortgage by seeking to exercise the statutory power of sale without the lender having first sent a default notice to the Plaintiff, which contained language required by the terms of the mortgage.

80.    Wilmington Trust also failed to accept Plaintiff's payments pursuant to the mortgage contract despite the fact that the mortgage loan was never accelerated.

81.    The failure to send an accurate default letter pursuant to the terms of the mortgage and then mailing a Notice of Sale  without a Notice of Mediation or providing a Notice of Foreclosure Counseling and failure to accept payments from the Plaintiff were  actions taken contrary to the contractual and statutory obligations of the parties.

82.    As a result, Plaintiff have incurred the following damages:

      a.    Plaintiff has incurred the cost of filing this action in the form of filing fees and service fees, incurred in order to stop the nonjudicial foreclosure, which was in violation of the terms of the mortgage.

      b.    Plaintiff's mortgage loan account has been charged fees and costs which were not permitted without a valid default letter having being sent to them and despite the fact that the mortgagee did not provide Mediation or a Notice of Foreclosure Counseling.

      c.    Plaintiff has incurred damages for Plaintiff's aggravation, humiliation, embarrassment, loss of privacy, strain on personal relationships, loss of enjoyment of life, sleepless nights, worry and anxiety. She has  incurred stress after twice having been notified that her home will be sold at a public auction.

      d.    Plaintiff's tenants have failed to pay rent for two months due to the improper Notices of Sale mailed to them.

      e.    Plaintiff has incurred attorney fees and costs to obtain an injunction to stop the illegal foreclosure.

      e.    Plaintiff has  incurred attorney fees and costs for the prosecution of this action.

83.    The conduct of Wilmington Trust has been willful, wanton and reckless, warranting the imposition of punitive damages.

84.    Wilmington Trust ignored the clearly stated terms of the mortgage and case law in this Court holding that a mortgage contract involves strict compliance in order to exercise the statutory power of sale.

85.    Instead Wilmington Trust has gone forward and have sought to exercise the statutory power of sale without a valid default notice and without  having sent the Plaintiff a Notice of Mediation and has also failed to provide the Plaintiff a Notice of Foreclosure Counseling at least forty five days before mailing a Notice of Sale.

86.    Wilmington Trust has breached the mortgage contract by charging the Plaintiff excessive and unreasonable and unnecessary expenses for two improper foreclosure sales.

WHEREFORE, Plaintiff demands the following relief:

a.    Damages against Wilmington Trust  for failure to comply with the terms of the mortgage.

b.    Damages against Wilmington Trust for charging the Plaintiff unreasonable and unnecessary foreclosure  fees and other improper and unreasonable and unnecessary costs charged to the mortgage loan account.

c.    Actual damages attributable to the aggravation, humiliation, embarrassment, loss of privacy, strain on personal relationships, loss of enjoyment of life, sleepless nights, worry and anxiety and stress suffered by the Plaintiff.

d.    Actual damages for loss of rental income by the Plaintiff.

e.    Damages for punitive damages

f.    Legal fees from  Wilmington Trust  pursuant to the provisions of  R.I.G.L § 9-1-45.

14

g.      All other just and proper relief.


                              DOLORES CEPEDA
                              By her Attorney


January 3, 2019                /s/ John B. Ennis
                              JOHN B. ENNIS, ESQ. #2135
                              1200 Reservoir Avenue
                              Cranston, Rhode Island 02920
                              (401) 943-9230
                              Jbelaw75@gmail.com


## COUNT IV
## INJUNCTIVE RELIEF

87.    Paragraphs 1-86 are incorporated by reference.

88.    Plaintiff  will be irreparably harmed if the foreclosure sale on January 7, 2019 occurs and her home is sold.

89.    Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed.

90.    The failure of the Defendant to comply with paragraph 22 of the mortgage renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability to exercise the statutory power of sale.

91.    The failure of the Defendant to provide the Plaintiff a Notice of Foreclosure Counseling pursuant to R.I.G.L 34-27-3.1. renders any purported foreclosure sale void.   This demonstrates that Plaintiff has a substantial likelihood of success.

92.    The failure of the Defendant to mail the Plaintiff a Notice of Mediation pursuant to R.I.G.L 34-27-3.2. renders any purported foreclosure sale voidable and prohibits the Defendant from exercising the statutory power of sale.   This demonstrates that Plaintiff has a substantial likelihood of success.

93.     Likewise a foreclosure sale of Plaintiff's  property by a party not entitled to foreclose on the property will cause Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by Defendant.

94.    Such relief sought by Plaintiff will not disserve the public interest if imposed.

95.    The failure of the Defendant to comply with paragraph 22 of the mortgage and failure to mail a Notice of Mediation or to provide a Notice of Foreclosure Counseling at least forty five days prior to the mailing of the Notice of Sale renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability due to the terms of the mortgage .

WHEREFORE, Plaintiffs demand that this Court:

a.    Grant a Temporary Restraining Order and Preliminary

Injunction Restraining and Enjoining Wilmington Trust, Fay  or any other

entity acting on their behalf from conducting, advertising or continuing a

foreclosure  sale at 177 Dexter Street, Providence, Rhode Island on January

7, 2019 or at any other time until there has been compliance the terms of the

mortgage, R.I.G.L 34-27-3.2 and R.I.G.L 34-27-3.1, pending a hearing on a

Permanent Injunction

b.      Grant a Permanent Injunction Restraining and Enjoining Wilmington

Trust, Fay  or any other entity acting on their behalf from conducting,

advertising or continuing a  foreclosure  sale at 177 Dexter Street,

Providence, Rhode Island  on January 7, 2019 or at any other time until there

has been compliance the terms of the mortgage, R.I.G.L 34-27-3.2 and

R.I.G.L 34-27-3.1 until  further Order of this Court.

c.      Award the Plaintiff actual damages and compensatory damages and

legal fees and costs against the Defendants for scheduling a foreclosure

without complying the  terms of the mortgage and the provisions of Rhode

Island law.

d.      Grant all other just and proper relief.
         By their Attorney

                                        DOLORES CEPEDA
                                        By her attorney,


January 3, 2019                         /s/ John B. Ennis
                                        JOHN B. ENNIS, ESQ. #2135
                                        1200 Reservoir Avenue
                                        Cranston, Rhode Island 02920
                                        (401) 943-9230
                                        Jbelaw75@gmail.com

## COUNT IV

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TRUTH IN LENDING ACT BY WILMINGTON TRUST'S FAILURE TO SEND THE PLAINTIFF A MONTHLY MORTGAGE STATEMENT EACH MONTH PURSUANT TO THE PROVISIONS OF 12 C.F.R. 1026.41 AND 15 U.S.C. 1638 SINCE JANUARY 5, 2018.**

96.    Paragraphs 1-95 are incorporated by reference.

97.    This is an action for damages brought by the Plaintiff, who is a consumer,  for Wilmington Trust's violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA").

98.    Specifically, Plaintiff  seeks the remedies provided in TILA for Defendant's failure to send the Plaintiff monthly mortgage statements as required by 15 U.S.C. §§ 1638 and 12 C.F.R. 1026.41 respectively.

99.    This Court has jurisdiction pursuant to 15 U.S.C. §1640 to provide private remedies for failure to respond to provide a borrower monthly statements.  15 U.S.C. § 1640 provides for statutory damages of the type alleged in this Complaint to a range of not less than $400.00 nor greater than $4,000.00.  Jurisdiction is further conferred on this Court by 15 U.S.C. §1640(e).

100.   The Defendant,  Wilmington Trust is a National Bank that is the trustee of the securitized trust that claims to own the Plaintiff's mortgage loan.

101.   Fay services residential mortgage loans and claims to be the servicer of the mortgage loan, which is the subject of this complaint

102     The mortgage loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1).

102     Plaintiff has not been sent a monthly statement in compliance with 12 C.F.R. 1026.41 January 5, 2018.

103   Pursuant to 12 C.F.R. 1026.41, the loan servicer on behalf of the creditor, Wilmington Trust was required to send the Plaintiff a monthly mortgage statement that provides the following information:

**(d)** *Content and layout of the periodic statement.* The periodic statement required by this section shall include:

**(1)** *Amount due.* Grouped together in close proximity to each other and located at the top of the first page of the statement:

**(i)** The payment due date;

**(ii)** The amount of any late payment fee, and the date on which that fee will be imposed if payment has not been received; and

**(iii)** The amount due, shown more prominently than other disclosures on the page and, if the transaction has multiple payment options, the amount due under each of the payment options.

**(2)** *Explanation of amount due.* The following items, grouped together in close proximity to each other and located on the first page of the statement:

**(i)** The monthly payment amount, including a breakdown showing how much, if any, will be applied to principal, interest, and escrow and, if a mortgage loan has multiple payment options, a breakdown of each of the payment options along with information on whether the principal balance will increase, decrease, or stay the same for each option listed;

**(ii)** The total sum of any fees or charges imposed since the last statement; and

**(iii)** Any payment amount past due.

**(3)** *Past Payment Breakdown.* The following items, grouped together in close proximity to each other and located on the first page of the statement:

**(i)** The total of all payments received since the last statement, including a breakdown showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, sent to any suspense or unapplied funds account; and

**(ii)** The total of all payments received since the beginning of the current calendar year, including a breakdown of that total showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, currently held in any suspense or unapplied funds account.

**(4)** *Transaction activity.* A list of all the transaction activity that occurred since the last statement. For purposes of this paragraph (d)(4), *transaction activity* means any activity that causes a credit or debit to the amount currently due. This list must include the date of the transaction, a brief description of the transaction, and the amount of the transaction for each activity on the list.

(**5**) *Partial payment information.*  If a statement reflects a partial payment that was placed in a suspense or unapplied funds account, information explaining what must be done for the funds to be applied. The information must be on the front page of the statement or, alternatively, may be included on a separate page enclosed with the periodic statement or in a separate letter.

(**6**) *Contact information.*  A toll-free telephone number and, if applicable, an electronic mailing address that may be used by the consumer to obtain information about the consumer's account, located on the front page of the statement.

(**7**) *Account information.*  The following information:

(**i**)  The amount of the outstanding principal balance;

(**ii**)  The current interest rate in effect for the mortgage loan;

(**iii**)  The date after which the interest rate may next change;

(**iv**)  The existence of any prepayment penalty, as defined in § 1026.32(b)(6)(i), that may be charged;

(**v**)  The Web site to access either the Bureau list or the HUD list of homeownership counselors and counseling organizations and the HUD toll-free telephone number to access contact information for homeownership counselors or counseling organizations; and

(**8**) *Delinquency information.*  If the consumer is more than 45 days delinquent, the following items, grouped together in close proximity to each other and located on the first page of the statement or, alternatively, on a separate page enclosed with the periodic statement or in a separate letter:

(**i**)  The date on which the consumer became delinquent;

(**ii**)  A notification of possible risks, such as foreclosure, and expenses, that may be incurred if the delinquency is not cured;

(**iii**)  An account history showing, for the previous six months or the period since the last time the account was current, whichever is shorter, the amount remaining past due from each billing cycle or, if any such payment was fully paid, the date on which it was credited as fully paid;

(**iv**)  A notice indicating any loss mitigation program to which the consumer has agreed, if applicable;

(**v**)  A notice of whether the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, if applicable;

(**vi**)  The total payment amount needed to bring the account current; and

(**vii**)  A reference to the homeownership counselor information disclosed pursuant to paragraph (d)(7)(v) of this section.

104.   None of these statements have been sent to the Plaintiff, inconformity with Regulation Z since  January 5, 2018.

105.   The Plaintiff has have been charged regular  fees for Property Inspection in a monthly charge of $12.50 on the  statements.  These fees were neither reasonable nor necessary and were not actually paid to the vendor which purportedly billed the loan servicer.

106.   Property inspection fees, advertising costs and foreclosure fees have been charged to the mortgage loan account and reflected in each of the periodic monthly statements despite the fact that neither lender, the assignee or the servicer of  the alleged owner of the mortgage loan were not authorized to exercise the statutory power of sale.

107.   These fees were not accurate because they included fees for foreclosure and related expenses despite the fact that the Plaintiff was not provided a Notice of Foreclosure Counseling and was never mailed a Notice of Medation and no default letter pursuant to the terms of the mortgage was ever sent to the Plaintiff.

108.   These charges have  resulted in an  incorrect calculation of principal and interest in all statements sent to the consumer by Fay on behalf of Wilmington Trust.

109.   As a result of this failure to comply with 12 C.F.R. 1026.41 and TILA, Defendant,  Deutsche Bank is liable for actual damages and statutory damages of up to $4,000.00 to the Plaintiff for each of the inaccurate statements, which were either not sent to the Plaintiff since January 5, 2018 or were not accurate and not in conformity with 12 C.F.R. 1026.41 and TILA.

110.   She has incurred actual damages, costs and legal fees in regard to this action:

    a.    Her mortgage loan account  has been charged unreasonable charges on the statements.

    b.    She has incurred the time and expense away from her usual activities to visit her attorney on at least ten occasions to discuss the inaccurate statements.

    c.     She has   incurred postage costs, copying costs and stationary and envelope costs for transmission to the Defendant's loan servicer disputing the inaccurate statements.

    d.     She has incurred attorney fees and costs for the prosecution of this action. Her fee agreement with her attorney provides that she will be responsible for legal fees expenses incurred in regard to this action.

WHERFORE, Plaintiff demands Judgment against Wilmington Trust for statutory damages of at least $4,000.00,   for each failure to send a monthly mortgage statement in conformity with TILA since January 5, 2018 plus actual damages, plus attorney fees and costs and all other just and proper relief.

DOLORES CEPEDA
By her attorney,

January 3, 2019

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT V
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 USC 1692 AGAINST FAY

111.   Paragraphs 1-110 are incorporated by reference.

112.   Fay  is a debt collector as defined by 15 USC 1692 et seq.  since January 5, 2018  has committed several violations of the Fair Debt Collection Practices Act ("FDCPA") and is liable to the Plaintiffs for

compensatory damages, statutory damages, and attorney fees and costs for violations.

113.   The primary business of Fay is the collection of debts.

114    At the time Fay commenced servicing Plaintiff's  mortgage loan account, Plaintiff was delinquent on her mortgage.

115    Fay  has used unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiff.

116.   Fay, through its attorney,   has threatened to commence and has claimed to have commenced a non-judicial foreclosure to effect dispossession of the Plaintiff  of her property  even though Deutsche Bank had  no present right to possession of the property claimed as collateral through an enforceable security interest.

117.   It also made a threat to take legal action which could not legally be taken.  Specifically it stated, through its attorney, by the letter dated November 15, 2018  that a Mortgage Foreclosure sale of the Plaintiff's property by statutory power of sale would occur on  January 7, 2019.

118.   It also made a threat to take legal action which could not legally be taken.  Specifically it stated, through its attorney, by the letter dated July 23, 2018  that a Mortgage Foreclosure sale of the Plaintiff's property by statutory power of sale would occur on  September 23, 2018.

119.   The November 15, 2018 threat to conduct a Mortgage Foreclosure Sale on January 7, 2018 was a deceptive action on the part of Fay due to the failure to provide an accurate default notice and due to the fact the Plaintiff was not mailed a Notice of Mediation nor was provided a Notice of Foreclosure Counseling at least 45 days prior to the date the purported Notice of Sale dated November 15, 2018 was mailed to the Plaintiff.

120.   The July 23, 2018 threat to conduct a Mortgage Foreclosure Sale on September 23, 2018 was a deceptive action on the part of Fay due to the failure to provide an accurate default notice and due to the fact the Plaintiff was not mailed a Notice of Mediation nor was provided a Notice of Foreclosure Counseling at any time prior to the date the purported Notice of Sale dated July 23, 2018 was mailed to the Plaintiff.

121.   Each of these actions of Fay  was a  violation of 15 U.S.C. 1692e(5).

122.    The facts alleged in this complaint establish that Wilmington Trust did not have the present right to possession of the property claimed as collateral through an enforceable security interest.

123.   As alleged above, Fay violated 15 U.S.C 1692e(5) by threatening to take legal action which it could not take.

124.   Fay  also violated section 1692e of the FDCPA by using false deceptive and misleading representations or means in connection with the collection of this alleged debt. Fay  made false representations regarding the character and legal status of the debt, namely that the loan had been accelerated and that Wilmington could exercise the statutory power of sale.

125.   All the actions of Fay,  alleged in this complaint, were designed to compel the Plaintiff to pay monies to Fay on behalf of Wilmington Trust, individually and through its attorney, on behalf of the alleged owner of the note and mortgage under the false threat of foreclosure of their home unless they made such a payment to Fay, through its attorney on behalf of  the entity, which claimed to own the  note.

126.   15 U.S.C. § 1692(f) provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

127.    15 U.S.C. § 1692(d) provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

128    Fay violated 15 U.S.C. § 1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

129.   Fay  violated 15 U.S.C. § 1692(d) by employing an unfair and unconscionable means to collect the subject debt.

130.   Fay conduct  has caused Plaintiff to suffer great emotional distress driven by the fear that she might lose hereir  home which has resulted in loss of sleep, anxiety, depression, and embarrassment.

131.   Fay's conduct was outrageous, willful, and wanton, and it showed a reckless disregard for Plaintiff's rights.

132.   The Plaintiff has incurred  actual damages as a result of the violations of the FDCPA:

> a.      She has  incurred costs of mailing and postage and attorney fees and costs to respond to these false communications.

> b.      Her mortgage loan account has been charged unreasonable fees and expenses

> c.      She has suffered emotional damages for embarrassment and humiliation by two advertisings of a foreclosure of her home.

> d.      She has incurred legal fees to communicate with Fay's attorney to cancel both improper attempted sales.

> e.      Her  mortgage loan account has been charged unreasonable fees and costs for uncorroborated and unreasonable and unnecessary property inspections and improper legal fees and costs. Such costs have rendered a modification of the mortgage loan or reinstatement of the mortgage loan more expensive to the Plaintiff, who submitted a loan modification application to Fay.

133    As a result of the above described acts of Fay it  is liable to the Plaintiff for actual damages, statutory damages, attorney's fees and costs.

134.   Plaintiff has incurred legal fees in this action.

WHEREFORE, Plaintiff demands that Judgment be entered against

Fay for the following relief:

> A.    Judgment against Fay for actual damages, and statutory damages of $1,000.00 for each violation of the FDCPA.

B.     Legal fees for the prosecution of this action.

C.     All other just and proper relief.

DOLORES CEPEDA
By her Attorney

January 3, 2019                          /s/ John B. Ennis
                                         JOHN B. ENNIS, ESQ. #2135
                                         1200 Reservoir Avenue
                                         Cranston, Rhode Island 02920
                                         (401) 943-9230
                                         Jbelaw75@gmail.com

## COUNT VI

## VIOLATIONS OF REGULATION X AND REGULATION Z AGAINST BANK OF AMERICA

135.   Paragraphs 1-134 are incorporated by reference.

136.   This is an action for actual and statutory damages filed by the Plaintiff for violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and specifically of the Regulations enacted pursuant thereto by the Consumer Financial Protection Bureau (CFPB).  This is also an action for actual and statutory damages filed by the Plaintiff for violations of the Real Estate Settlement Procedures Act, ("RESPA") and the Truth in Lending Act, 15 U.S.C. § 1601 et. seq.  ("TILA").

137.   This action is specifically filed to enforce the Regulations that became effective on January 10, 2014, specifically 12 CFR § 1024.36(c) and 12 CFR §1024.36(d)(2)(i)(A) of Regulation X.

138.   Bank of America, N.A.  performs its mortgage loan servicing business under the name of Bank of America, Home Loans. It was the former servicer of a Promissory Note and Deed of Trust on the Plaintiff's residential real estate.

139.   In January 2013, the Consumer Financial Protection Bureau issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).

140.   Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 FR §10901 (Regulation Z) (February 14, 2013) and 78 FR §10695 (Regulation X)(February 14, 2013).  These Regulations became effective on January 10, 2014.

141.   The residential mortgage loan in this case is a "federally related mortgage loan" as that term is defined by Regulation 1024.2 (b) of the said Regulations.

142.   The Defendant in this case is subject to the said Regulations and does not qualify for any of the exceptions noted in the said Regulations for "small servicers."  Neither is Defendant a "qualified lender," as defined in 12 CFR § 617.7000.

143.   The Plaintiff is asserting a claim for relief against the Defendant for breach of the specific Rules under Regulation X as set forth below.  The Plaintiff has a private right of action under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(f) for these breaches and such an action includes actual damages, costs, statutory damages and attorney's fees.

144.   On or about October 29, 2017, the Plaintiff sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

145.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9470110898765020746192.

146.   The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

147.   The Notice was received by the Defendant on October 31, 2018.

148.   A copy of the Notice of Error is attached as Exhibit F.

149.   The Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had failed to provide the contractual status of the mortgage loan when Bank of America, California, N.A. transferred ownership of the mortgage loan.

150.   Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than December 12, 2018.

151.   Defendant did not correct the error within thirty business days. It responded by letter dated November 2, 2018 in which it failed to correct the error and refused to provide the information requested.

152.   It refused to correct the information and correct the error. It merely made a generic response restating its previous failure to provide the documents requested and incorporated the prior response  that the documents requested did not need to be provided alleging the following:

We determined a number of the requests for information and documentation relating to  the loan fit within one or more exceptions under 12 C.F.R. 1024.36.

153.   It refused to provide the documents stating alternatively without any supporting basis that the documents requested were either:

Overbroad
Sought an unreasonable volume of documents or information.
Were irrelevant to the borrower's loan
Sought confidential, privileged or proprietary information
Sought information which was not in its control or possession or that cannot be retrieved in the ordinary course of business through reasonable efforts

154.   A copy of its response is attached as Exhibit F-1.

155.   Bank of America made no reasonable effort to correct the error and merely recited the Regulation promulgated under the Dodd Frank Act.

156.   Its response was nonresponsive to the Notice of Error.

157.   This Request for Information did not seek documents which were excepted from production.

158.   The information sought in this request for information did not seek information which was overbroad.

159.   The request was for a single request and was not overly broad.

160.   The information sought in this request for information did not seek information which  constituted an unreasonable volume of documents or information.

161.   The request was for a single item and did not constitute an unreasonable volume of documents.

162.   The information sought in this request for information did not seek information which was irrelevant to the borrower's loan.

163. The information sought in this request for information did not seek information which was confidential.

164.    The information sought in this request for information did not seek information which was proprietary.

165.   The information sought in this request for information did not seek information which was not in its control or possession or that cannot be retrieved in the ordinary course of business through reasonable efforts

166.   The Defendant had the ability to access this information which remained on its electronic system of record or on its archives.

167.   The Defendant transmitted this information to the successor servicer, Fay and retained access to the information.

168.   The Defendant has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint and in other responses to Notices of Error .

169.   Its general practice is to failure to provide any documents and to ignore Notices of Error by reciting generic reasons for not providing documents and to merely recite the regulation without responding to the Notice of Error.

170.   As a result of this lack of compliance by the Defendant, Bank of America is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

171.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.      She  has incurred postage and copying costs in transmitting this Notice of Error.

b.      She incurred time from her activities to visit her attorney to discuss these Notices of Error and the failure to respond to them.

c.      She has incurred attorney fees and costs for the prosecution of this action. Her fee agreement with her attorney provides that she will be responsible for legal fees expenses incurred in regard to this action.

172.   The failure of the Defendant to correct the Notices of Error in this case is consistent with the pattern and practice of Bank of America to ignore all  Regulation X Notice of Error.

173.   On or about October 29, 2017, the Plaintiff sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

174.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9470110898765020746192.

175.   The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

176.   The Notice was received by the Defendant on October 31, 2018.

177    A copy of the Notice of Error is attached as Exhibit G.

178.   The Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had failed to provide the Plaintiff all documents transferred to the new loan servicer.

179.   Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than December 12, 2018.

180.   Defendant did not correct the error within thirty business days. It responded by letter dated November 2, 2018 in which it failed to correct the error and refused to provide the information requested.

181.   It refused to correct the information and correct the error. It merely made a generic response restating its previous failure to provide the documents requested and incorporated the prior response  that the documents requested did not need to be provided alleging the following:

We determined a number of the requests for information and documentation relating to  the loan fit within one or more exceptions under 12 C.F.R. 1024.36.

182.   It refused to provide the documents stating alternatively without any supporting basis that the documents requested were either:

Overbroad
Sought an unreasonable volume of documents or information.
Were irrelevant to the borrower's loan
Sought confidential, privileged or proprietary information
Sought information which was not in its control or possession or that cannot be retrieved in the ordinary course of business through reasonable efforts

183.   A copy of its response is attached as Exhibit F-1.

184.   Bank of America made no reasonable effort to correct the error and merely recited the Regulation promulgated under the Dodd Frank Act.

156.   Its response was nonresponsive to the Notice of Error.

185.   This Request for Information did not seek documents which were excepted from production.

186.   The information sought in this request for information did not seek information which was overbroad.

187.   The request was for a single request and was not overly broad.

188.   The information sought in this request for information did not seek information which constituted an unreasonable volume of documents or information.

189.   The request was for the filed transferred at servicing to Fay Servicing and did not constitute an unreasonable volume of documents.

190.   The information sought in this request for information did not seek information which was irrelevant to the borrower's loan.

191. The information sought in this request for information did not seek information which was confidential.

192.    The information sought in this request for information did not seek information which was proprietary.

193.   The information sought in this request for information did not seek information which was not in its control or possession or that cannot be retrieved in the ordinary course of business through reasonable efforts

194.   The Defendant had the ability to access this information which remained on its electronic system of record or on its archives.

195.   The Defendant transmitted this information to the successor servicer, Fay and retained access to the information.

196.   The Defendant has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint and in other responses to Notices of Error.

197.   Its general practice is to failure to provide any documents and to ignore Notices of Error by reciting generic reasons for not providing documents and to merely recite the regulation without responding to the Notice of Error.

198.   As a result of this lack of compliance by the Defendant, Bank of America is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

199.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.      She  has incurred postage and copying costs in transmitting this Notice of Error.

b.      She incurred time from her activities to visit her attorney to discuss these Notices of Error and the failure to respond to them.

c.      She has incurred attorney fees and costs for the prosecution of this action. Her fee agreement with her attorney provides that she will be responsible for legal fees expenses incurred in regard to this action.

200.   The failure of the Defendant to correct the Notices of Error in this case is consistent with the pattern and practice of Bank of America to ignore all  Regulation X Notice of Error.

201.   On or about October 29, 2017, the Plaintiff sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

202.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number 94701108987650207461 92.

203.   The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

204.   The Notice was received by the Defendant on October 31, 2018.

205    A copy of the Notice of Error is attached as Exhibit H.

206.    The Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had failed to provide the Plaintiff information relating to the status of the Plaintiff's mortgage loan in regard to periodic payments of principal, interest and escrow when Bank of America, N.A. transferred ownership of the mortgage loan, including all documents on which it relied to provide this information.

207.    Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than December 12, 2018.

208.    Defendant did not correct the error within thirty business days. It responded by letter dated November 2, 2018 in which it failed to correct the error and refused to provide the information requested.

209.    It refused to correct the information and correct the error. It merely made a generic response restating its previous failure to provide the documents requested and incorporated the prior response  that the documents requested did not need to be provided alleging the following:

We determined a number of the requests for information and documentation relating to  the loan fit within one or more exceptions under 12 C.F.R. 1024.36.

210.    It refused to provide the documents stating alternatively without any supporting basis that the documents requested were either:

Overbroad
Sought an unreasonable volume of documents or information.
Were irrelevant to the borrower's loan
Sought confidential, privileged or proprietary information
Sought information which was not in its control or possession or that cannot be retrieved in the ordinary course of business through reasonable efforts

211.    A copy of its response is attached as Exhibit F-1.

212.   Bank of America made no reasonable effort to correct the error and merely recited the Regulation promulgated under the Dodd Frank Act.

213.   Its response was nonresponsive to the Notice of Error.

214.   This Request for Information did not seek documents which were excepted from production.

215.   The information sought in this request for information did not seek information which was overbroad.

216.   The request was for a single request and was not overly broad.

217.   The information sought in this request for information did not seek information which  constituted an unreasonable volume of documents or information.

218.   The request was for a  single request and did not constitute an unreasonable volume of documents.

219.   The information sought in this request for information did not seek information which was irrelevant to the borrower's loan.

220. The information sought in this request for information did not seek information which was confidential.

221.    The information sought in this request for information did not seek information which was proprietary.

222.   The information sought in this request for information did not seek information which was not in its control or possession or that cannot be retrieved in the ordinary course of business through reasonable efforts

223.   The Defendant had the ability to access this information which remained on its electronic system of record or on its archives.

224.   The Defendant transmitted this information to the successor servicer, Fay and retained access to the information.

225.   The Defendant has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint and in other responses to Notices of Error.

226.   Its general practice is to fail to provide any documents and to ignore Notices of Error by reciting generic reasons for not providing documents and to merely recite the regulation without responding to the Notice of Error.

227.   As a result of this lack of compliance by the Defendant, Bank of America is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

228.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.      She  has incurred postage and copying costs in transmitting this Notice of Error.

b.      She incurred time from her activities to visit her attorney to discuss these Notices of Error and the failure to respond to them.

c.      She has incurred attorney fees and costs for the prosecution of this action. Her fee agreement with her attorney provides that she will be responsible for legal fees expenses incurred in regard to this action.

229.   The failure of the Defendant to correct the Notices of Error in this case is consistent with the pattern and practice of Bank of America to ignore all  Regulation X Notice of Error.

230.   On or about October 29, 2017, the Plaintiff sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

231.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9470110898765020746192.

232.   The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

36

233.   The Notice was received by the Defendant on October 31, 2018.

234.   A copy of the Notice of Error is attached as Exhibit I.

235.   The Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had failed to provide the Plaintiff information relating to the status of the Plaintiff's mortgage loan in regard to periodic payments of principal, interest and escrow when Bank of America, N.A.  as creditor for Bank of America California, N.A. obtained ownership of the mortgage loan, including all documents on which it relied to provide this information.

236.   Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than December 12, 2018.

237.   Defendant did not correct the error within thirty business days. It responded by letter dated November 2, 2018 in which it failed to correct the error and refused to provide the information requested.

238.   It refused to correct the information and correct the error. It merely made a generic response restating its previous failure to provide the documents requested and incorporated the prior response  that the documents requested did not need to be provided alleging the following:

We determined a number of the requests for information and documentation relating to  the loan fit within one or more exceptions under 12 C.F.R. 1024.36.

239.   It refused to provide the documents stating alternatively without any supporting basis that the documents requested were either:

Overbroad
Sought an unreasonable volume of documents or information.
Were irrelevant to the borrower's loan
Sought confidential, privileged or proprietary information
Sought information which was not in its control or possession or that cannot be retrieved in the ordinary course of business through reasonable efforts

240.   A copy of its response is attached as Exhibit F-1.

241.   Bank of America made no reasonable effort to correct the error and merely recited the Regulation promulgated under the Dodd Frank Act.

242.   Its response was nonresponsive to the Notice of Error.

243.   This Request for Information did not seek documents which were excepted from production.

244.   The information sought in this request for information did not seek information which was overbroad.

245.   The request was for a single request and was not overly broad.

246.   The information sought in this request for information did not seek information which  constituted an unreasonable volume of documents or information.

247.   The request was for a  single request and did not constitute an unreasonable volume of documents.

248.   The information sought in this request for information did not seek information which was irrelevant to the borrower's loan.

249. The information sought in this request for information did not seek information which was confidential.

250.    The information sought in this request for information did not seek information which was proprietary.

251.   The information sought in this request for information did not seek information which was not in its control or possession or that cannot be retrieved in the ordinary course of business through reasonable efforts

252.   The Defendant had the ability to access this information which remained on its electronic system of record or on its archives.

253.   The Defendant transmitted this information to the successor servicer, Fay and retained access to the information.

254.   The Defendant has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint and in other responses to Notices of Error.

255.   Its general practice is to fail to provide any documents and to ignore Notices of Error by reciting generic reasons for not providing documents and to merely recite the regulation without responding to the Notice of Error.

256.   As a result of this lack of compliance by the Defendant, Bank of America is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

257.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.      She  has incurred postage and copying costs in transmitting this Notice of Error.

b.      She incurred time from her activities to visit her attorney to discuss these Notices of Error and the failure to respond to them.

c.      She has incurred attorney fees and costs for the prosecution of this action. Her fee agreement with her attorney provides that she will be responsible for legal fees expenses incurred in regard to this action.

258.   The failure of the Defendant to correct the Notices of Error in this case is consistent with the pattern and practice of Bank of America to ignore all  Regulation X Notice of Error.

259.   On or about October 29, 2017, the Plaintiff sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

260.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9470110898765020746192.

261.   The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

262.   The Notice was received by the Defendant on October 31, 2018.

263.   A copy of the Notice of Error is attached as Exhibit J.

264.   The Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had failed to provide the Plaintiff regarding the identity of the master servicer of the mortgage loan and failure to provide the owner of the mortgage loan by merely stating that the owner/investor of the mortgage loan was Bank of America, N.A. as Creditor on behalf of Bank of Amerioca, California, N.A.

265.   Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than December 12, 2018.

266.   Defendant did not correct the error within thirty business days. It responded by letter dated November 2, 2018 in which it failed to correct the error and refused to provide the information requested.

267.   It refused to correct the information and correct the error. It merely made a generic response restating its previous failure to provide the documents requested and incorporated the prior response  that the documents requested did not need to be provided alleging the following:

We determined a number of the requests for information and documentation relating to  the loan fit within one or more exceptions under 12 C.F.R. 1024.36.

268.   It refused to provide the documents stating alternatively without any supporting basis that the documents requested were either:

Overbroad
Sought an unreasonable volume of documents or information.
Were irrelevant to the borrower's loan

Sought confidential, privileged or proprietary information
Sought information which was not in its control or possession or that cannot
be retrieved in the ordinary course of business through reasonable efforts

269.   A copy of its response is attached as Exhibit F-1.

270.   Bank of America made no reasonable effort to correct the error and
merely recited the Regulation promulgated under the Dodd Frank Act.

271.   Its response was nonresponsive to the Notice of Error.

272.   This Request for Information did not seek documents which were
excepted from production.

273.   The information sought in this request for information did not seek
information which was overbroad.

274.   The request was for a single request and was not overly broad.

275.   The information sought in this request for information did not seek
information which  constituted an unreasonable volume of documents or
information.

276.   The request was for a  single request and did not constitute an
unreasonable volume of documents.

277.   The information sought in this request for information did not seek
information which was irrelevant to the borrower's loan.

278. The information sought in this request for information did not seek
information which was confidential.

279.    The information sought in this request for information did not seek
information which was proprietary.

280.   The information sought in this request for information did not seek
information which was not in its control or possession or that cannot be
retrieved in the ordinary course of business through reasonable efforts

281.   The Defendant had the ability to access this information which remained on its electronic system of record or on its archives.

282.   The Defendant merely decided not to provide this information which was mandatory under Regulation X.

283.   The Defendant has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint and in other responses to Notices of Error.

284.   Its general practice is to fail to provide any documents and to ignore Notices of Error by reciting generic reasons for not providing documents and to merely recite the regulation without responding to the Notice of Error.

285.   As a result of this lack of compliance by the Defendant, Bank of America is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

286.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

287.   The failure of the Defendant to correct the Notices of Error in this case is consistent with the pattern and practice of Bank of America to ignore all  Regulation X Notice of Error.

288.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.       She  has incurred postage and copying costs in transmitting this Notice of Error.

b.       She incurred time from her activities to visit her attorney to discuss these Notices of Error and the failure to respond to them.

c.       She has incurred attorney fees and costs for the prosecution of this action. Her fee agreement with her attorney provides that she will be responsible for legal fees expenses incurred in regard to this action.

289.    The failure of the Defendant to correct the Notices of Error in this case is consistent with the pattern and practice of Bank of America to ignore all Regulation X Notice of Error.

290.   259.   On or about October 29, 2017, the Plaintiff sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

291.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9470110898765020746192.

292.    The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

293.   The Notice was received by the Defendant on October 31, 2018.

294.   A copy of the Notice of Error is attached as Exhibit K.

295.   The Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had failed to provide the Plaintiff all periodic statements which were prepared for the mortgage loan account.

296.   Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than December 12, 2018.

297.   Defendant did not correct the error within thirty business days. It responded by letter dated November 2, 2018 in which it failed to correct the error and refused to provide the information requested.

298.   It refused to correct the information and correct the error. It merely made a generic response restating its previous failure to provide the documents requested and incorporated the prior response that the documents requested did not need to be provided alleging the following:

We determined a number of the requests for information and documentation relating to the loan fit within one or more exceptions under 12 C.F.R. 1024.36.

300. It refused to provide the documents stating alternatively without any supporting basis that the documents requested were either:

Overbroad
Sought an unreasonable volume of documents or information.
Were irrelevant to the borrower's loan
Sought confidential, privileged or proprietary information
Sought information which was not in its control or possession or that cannot be retrieved in the ordinary course of business through reasonable efforts

301. A copy of its response is attached as Exhibit F-1.

302. Bank of America made no reasonable effort to correct the error and merely recited the Regulation promulgated under the Dodd Frank Act.

303. Its response was nonresponsive to the Notice of Error.

304. This Request for Information did not seek documents which were excepted from production.

305. The information sought in this request for information did not seek information which was overbroad.

306. The request was for a single request and was not overly broad.

307. The information sought in this request for information did not seek information which constituted an unreasonable volume of documents or information.

308. The request was for a single request and did not constitute an unreasonable volume of documents.

309. The information sought in this request for information did not seek information which was irrelevant to the borrower's loan.

310. The information sought in this request for information did not seek information which was confidential.

311.   The information sought in this request for information did not seek information which was proprietary.

312.   The information sought in this request for information did not seek information which was not in its control or possession or that cannot be retrieved in the ordinary course of business through reasonable efforts

313.   The Defendant had the ability to access this information which remained on its electronic system of record or on its archives.

314.   The Defendant merely decided not to provide this information which was mandatory under Regulation X.

315.   The Defendant has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint and in other responses to Notices of Error.

316.   Its general practice is to fail to provide any documents and to ignore Notices of Error by reciting generic reasons for not providing documents and to merely recite the regulation without responding to the Notice of Error.

317.   As a result of this lack of compliance by the Defendant, Bank of America is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

318.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

319.   The failure of the Defendant to correct the Notices of Error in this case is consistent with the pattern and practice of Bank of America to ignore all  Regulation X Notice of Error.

320.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.      She  has incurred postage and copying costs in transmitting this Notice of Error.

b.      She incurred time from her activities to visit her attorney to discuss these Notices of Error and the failure to respond to them.

c.      She has incurred attorney fees and costs for the prosecution of this action. Her fee agreement with her attorney provides that she will be responsible for legal fees expenses incurred in regard to this action.

321.    The failure of the Defendant to correct the Notices of Error in this case is consistent with the pattern and practice of Bank of America to ignore all  Regulation X Notice of Error.

322.    On or about October 29, 2017, the Plaintiff sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

323.    The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9470110898765020746192.

324.     The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

325.    The Notice was received by the Defendant on October 31, 2018.

326.    A copy of the Notice of Error is attached as Exhibit L.

327.    The Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had failed to provide the servicing file for the mortgage loan account.

328.    Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than December 12, 2018.

329.   Defendant did not correct the error within thirty business days. It responded by letter dated November 2, 2018 in which it failed to correct the error and refused to provide the information requested.

330.   It refused to correct the information and correct the error. It merely made a generic response restating its previous failure to provide the documents requested and incorporated the prior response  that the documents requested did not need to be provided alleging the following:

We determined a number of the requests for information and documentation relating to  the loan fit within one or more exceptions under 12 C.F.R. 1024.36.

331.   It refused to provide the documents stating alternatively without any supporting basis that the documents requested were either:

Overbroad
Sought an unreasonable volume of documents or information.
Were irrelevant to the borrower's loan
Sought confidential, privileged or proprietary information
Sought information which was not in its control or possession or that cannot be retrieved in the ordinary course of business through reasonable efforts

332.   A copy of its response is attached as Exhibit F-1.

333.   Bank of America made no reasonable effort to correct the error and merely recited the Regulation promulgated under the Dodd Frank Act.

334.   Its response was nonresponsive to the Notice of Error.

335.   This Request for Information did not seek documents which were excepted from production.

336.   The information sought in this request for information did not seek information which was overbroad.

337.   The request was for a single request and was not overly broad.

339.   The information sought in this request for information did not seek information which  constituted an unreasonable volume of documents or

information as these documents were contained on its electronic system of record and were readily accessible.

340. The request was for a single item and did not constitute an unreasonable volume of documents.

341. The information sought in this request for information did not seek information which was irrelevant to the borrower's loan.

342. The information sought in this request for information did not seek information which was confidential.

343. The information sought in this request for information did not seek information which was proprietary.

344. The information sought in this request for information did not seek information which was not in its control or possession or that cannot be retrieved in the ordinary course of business through reasonable efforts

345. The Defendant had the ability to access this information which remained on its electronic system of record or on its archives.

346. The Defendant transmitted this information to the successor servicer, Fay and retained access to the information.

347. The Defendant has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint and in other responses to Notices of Error.

348. Its general practice is to failure to provide any documents and to ignore Notices of Error by reciting generic reasons for not providing documents and to merely recite the regulation without responding to the Notice of Error.

349. As a result of this lack of compliance by the Defendant, Bank of America is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

350. The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.     She  has incurred postage and copying costs in transmitting this Notice of Error.

b.     She incurred time from her activities to visit her attorney to discuss these Notices of Error and the failure to respond to them.

c.     She has incurred attorney fees and costs for the prosecution of this action. Her fee agreement with her attorney provides that she will be responsible for legal fees expenses incurred in regard to this action.

352.    The failure of the Defendant to correct the Notices of Error in this case is consistent with the pattern and practice of Bank of America to ignore all  Regulation X Notice of Error.

353.    On or about October 29, 2017, the Plaintiff sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

354.    The Notice of Error was mailed by certified mail, return receipt requested, having an article number 94701108987650207461192.

355.    The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

356.    The Notice was received by the Defendant on October 31, 2018.

357.    A copy of the Notice of Error is attached as Exhibit M.

358.    The Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had failed to provide  information which would indicate the application of each payment made on the mortgage loan account from the date of origination to the present and whether any payments had ever been placed in suspense.

359.    Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period

public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than December 12, 2018.

360.   Defendant did not correct the error within thirty business days. It responded by letter dated November 2, 2018 in which it failed to correct the error and refused to provide the information requested.

361.   It refused to correct the information and correct the error. It merely made a generic response restating its previous failure to provide the documents requested and incorporated the prior response  that the documents requested did not need to be provided alleging the following:

We determined a number of the requests for information and documentation relating to  the loan fit within one or more exceptions under 12 C.F.R. 1024.36.

362.   It refused to provide the documents stating alternatively without any supporting basis that the documents requested were either:

Overbroad
Sought an unreasonable volume of documents or information.
Were irrelevant to the borrower's loan
Sought confidential, privileged or proprietary information
Sought information which was not in its control or possession or that cannot be retrieved in the ordinary course of business through reasonable efforts

363.   A copy of its response is attached as Exhibit F-1.

364.   Bank of America made no reasonable effort to correct the error and merely recited the Regulation promulgated under the Dodd Frank Act.

365.   Its response was nonresponsive to the Notice of Error.

366.   This Request for Information did not seek documents which were excepted from production.

367.   The information sought in this request for information did not seek information which was overbroad.

368.   The request was for a single request and was not overly broad.

369.   The information sought in this request for information did not seek information which  constituted an unreasonable volume of documents or information.

370.   The request was for a single item and did not constitute an unreasonable volume of documents.

371.   The information sought in this request for information did not seek information which was irrelevant to the borrower's loan.

372. The information sought in this request for information did not seek information which was confidential.

373.    The information sought in this request for information did not seek information which was proprietary.

374.   The information sought in this request for information did not seek information which was not in its control or possession or that cannot be retrieved in the ordinary course of business through reasonable efforts

375.   The Defendant had the ability to access this information which remained on its electronic system of record or on its archives.

376.   The Defendant transmitted this information to the successor servicer, Fay and retained access to the information.

377.   The Defendant has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint and in other responses to Notices of Error.

378.   Its general practice is to failure to provide any documents and to ignore Notices of Error by reciting generic reasons for not providing documents and to merely recite the regulation without responding to the Notice of Error.

379.   As a result of this lack of compliance by the Defendant, Bank of America is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

380.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.      She  has incurred postage and copying costs in transmitting this Notice of Error.

b.      She incurred time from her activities to visit her attorney to discuss these Notices of Error and the failure to respond to them.

c.      She has incurred attorney fees and costs for the prosecution of this action. Her fee agreement with her attorney provides that she will be responsible for legal fees expenses incurred in regard to this action.

381.   The failure of the Defendant to correct the Notices of Error in this case is consistent with the pattern and practice of Bank of America to ignore all  Regulation X Notice of Error.


WHEREFORE, Plaintiff demands judgment for actual damages plus

statutory damages of $2,000.00 per violation for each of the enumerated

Regulation X violations, plus attorney fees and costs.


DOLORES CEPEDA
By her Attorney

January 3, 2018                    /s/ John B. Ennis

JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

Plaintiff demands a Trial by Jury