UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DOLORES CEPEDA

    VS                    CA: 19-cv-5 WES-PAS\

BANK OF AMERICA, N.A.
FAY SERVICING, LLC
WILMINGTON TRUST NATIONAL ASSOCIATION
SOLEY AS TRUSTEE FOR THE MFRA TRUST 2014-2 , ALIAS

### MEMORANDUM OF LAW IN SUPPORTMOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

This matter is before the Court on the Plaintiff's Motion for a Temporary Restraining Order to stop a foreclosure on January 7, 2019.  The following facts have been established by an affidavit of the Plaintiff:

1.    Plaintiff is a resident of the State of Rhode Island with an address of 177 Dexter Street, , Providence, Rhode Island.  Plaintiff owns said real estate located at 177 Dexter Street, Providence, Rhode Island.

2.    Plaintiff executed a mortgage to Bank of America, N.A. on December 22, 2006.   A copy is attached as Exhibit A.

3.    Defendant, Wilmington Trust National Association solely as Trustee for the MFRA Trust 2014-2 ("Wilmington Trust") claims to own Plaintiff's mortgage.

4.    Defendant, Fay Servicing, LLC ("Fay") is a limited liability company, organized pursuant to the laws of Delaware. It is a debt collector and asserts that it is the loan servicer for the Plaintiff's mortgage. Defendant,

1

Bank of America, N.A. is a National Bank. It was the former loan servicer for the Plaintiff's mortgage loan.

**THE DEFENDANT DID NOT COMPLY WITH THE TERMS OF PARAGRAPH 22 OF THE MORTGAGE**

Orlans PC ("Orlans") without signing the letter, on November 15, 2018, indicated in the attached Exhibit B that Wilmington Trust was bringing a foreclosure proceeding and that it had scheduled a public auction foreclosure sale for 7th day of January, 2019 at 3:00 PM. Neither Orlans, Fay, Bank of America nor Wilmington Bank have sent Plaintiff a notice pursuant to the provisions of paragraph 22 of the mortgage and have not accelerated the note. Plaintiff has never been sent a default notice from the owner of the note or mortgage.

The provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage. There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above. Any alleged exercise of the statutory power of sale to Plaintiff was defective because a default notice and a valid acceleration notice were never sent as required by paragraph 22 of the mortgage. Fay mailed Plaintiff a letter dated December 12, 2017, which it claimed to be a default notice. A copy is attached as Exhibit C. This letter did not comply

with Paragraph 22 of my mortgage. Paragraph 22 (c) of the mortgage required a default notice which specified:

**(c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured**

However this letter did not specify a particular date for the cure date. Instead it stated:

To cure the default, you must pay the full amount of the default on this loan by 01/19/2018(or if said date falls on a Saturday, Sunday or legal holiday, then on the first business day thereafter.

15. Plaintiff was not provided a specific and unequivocal date to cure the loan. The mortgage required that Plaintiff be provided the following information:

**that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.**

This letter instead stated:

Failure to cure the default on or before this date may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding where applicable, and sale of the property.

The reference to foreclosure by judicial procedure indicates that Fay would commence a legal action against Plaintiff as provided by Rhode Island law. Later in the letter, Fay again indicated that the purpose of the letter was to eventually commence a foreclosure proceeding:

3

If foreclosure proceedings are undertaken, we may pursue a deficiency judgment

This notice referenced that failure to cure a default would result in a foreclosure proceeding, not an action in which the mortgagee could exercise the statutory power of sale. It was not strictly compliant with the terms of the mortgage for several reasons, thus rendering any nonjudicial foreclosure void.

Strict compliance with the terms of the contract, is a condition precedent at indicated in the case of *Cinq-Mars v. Travelers Ins. Co.,* 218 A.2d 467, 471(R.I. 1966). In that case, the Court interpreted an insurance contract and held:

It is, of course accepted law that compliance with such a policy condition is a condition precedent to an insurer's liability. Sherwood Ice Co. v. U.S. Casualty Co., 40 R.I. 268; 8 Appleman, Insurance Law & Practice, § 4732, p. 7.

In the case of *Haviland v. Simmons,* 45 A.3d 1246 (R.I., 2012), the Rhode Island Supreme Court decided that if there was any ambiguity in a contract, that such issue had to be resolved at trial:

Where an ambiguity exists in a provision of a contractual 1259*1259 document, the construction of that provision is a question of fact."*Fryzel v. Domestic Credit Corp.,* 120 R.I. 92, 98, 385 A.2d 663, 666 (1978) (citing*Geary v. Hoffman,* 98 R.I. 413, 417, 204 A.2d 302, 305 (1964); *Russolino v. A. F. Rotelli & Sons,* 85 R.I. 160, 163, 128 A.2d 337, 340 (1957)). We are of the opinion that, although an express

4

agreement was entered into, based on our review of the contract in its entirety, an ambiguity exists concerning the terms of the agreement relative to the standard under which Haviland's reappointment is to be evaluated. *Haviland*, at pp. 1258-1259 The language in the mortgage, which was a condition precedent was not complied with by the Defendants.

In the case of *Abbenante v. Giampietro,* 75 R.I. 349, 353, 66 A.2d 501, 503 (1949), the Supreme Court review a notice case in which a specific date was not provided for a Notice to Quit. A question existed as whether the tenant had to quit on the next day after his tenancy terminated on February 29, 1949. The Court held:

We are unable to agree with this contention. If plaintiffs were demanding the premises freed of the existing tenancy at $25 a month defendant was entitled to an **unequivocal** notice to quit on the day next succeeding the last day of such tenancy.

Thus the Court held that in a Notice case, for a notice to be effective it had to be unequivocal as to the time of compliance, which did not occur in this case.

In the case of *Hedco v. Blanchette*, 763 A. 2d 639 (R.I., 2000), the Rhode Island Supreme Court upheld this principle when it held:

In considering the sufficiency of a termination notice, we have repeatedly stated [**8] that "the important factor is whether the statute has been complied with and not whether the tenant has been misled by the notice given." *Tate v. Peter Charles Reynolds, Inc.,* 622 A.2d 449, 450 (R.I. 1993) (per curiam) (citing *De Luca v. Cinima,* 72 R.I. 346, 350, 51 A.2d 369, 370-71 (1947)). Although a tenant may be clearly apprised of the termination of his lease, we have determined a notice to be fatally defective when it ordered the tenant to quit on the last day of his term instead of the first day following

5

it, *Industrial Trade Unions of America v. Metayer,* 69 R.I. 199, 203, 32 A.2d 789, 790-91 (1943), or when it did not clearly indicate that an agent was acting on behalf of the landlord. *Tate,* 622 A.2d at 450.

The Court held:

Because service of a valid and proper notice to quit is a condition precedent to maintaining a trespass and ejectment action, plaintiff failed to properly invoke the jurisdiction of the court. See *Abbenante v. Giampietro,* 75 R.I. 349, 353, 66 A.2d 501, 503 (1949) (holding that HN8 tenancy is not terminated without proper notice, regardless of landlord's intention).

Thus the Court held that in a Notice case, for a notice to be effective it had to be unequivocal as to the time of compliance, which did not occur in this case.

This Court, in *Martins v. Federal Housing Finance Agency*, No. 15-cv-235-M-LDA followed established Rhode Island law and held that strict compliance was required for paragraph 22 notices just like any other contracts. *Martins* involved a Judicial Foreclosure in Federal Court. The Court held:

In Rhode Island, if a contract contains a notice requirement, then a court construes that notice requirement as a condition precedent, which requires strict compliance. *Cinq-Mars v. Travelers Ins. Co.,* 218 A.2d 467, 471 (R.I. 1966) (requirement of written notice for a claim by the insured is a "condition precedent to the insurer's liability."); *Ins. Co. of N. Am. v. Kayser-Roth Corp.,* No. C.A. PC 92-5248, 1999 WL 81366, at *22 (R.I. Super. July 29, 1999) (stating that notice requirements are a condition precedent in insurance contracts); *Dyer v. Ryder Student Transp. Servs., Inc.,* No. 98-4489, 1999 WL 395417, at *2 (R.I.Super. June 7, 1999) ("If notice by a tenant is not given to a landlord in accordance with the terms of the lease, the right to renew has been lost or has lapsed. . . .").
Furthermore, Paragraph 22 of the Mortgage is a condition precedent, which

requires strict compliance, when a mortgagee seeks acceleration and foreclosure. *In re Demers,* 511 B.R. 233, 238, 239 (Bankr. D.R.I. 2014) (holding that a notice omitting a borrower's right to go to court to contest acceleration was fatal, and that even if notice to go to court was ambiguously provided, that ambiguity must be construed against the drafter).

*Martins* was quite specific:

Defendants now seek to foreclose on the Property through an order from this Court, instead of non-judicially. The change of process for the foreclosure, however, does not alleviate compliance with the agreement they made in the Mortgage, including the Paragraph 22 notice requirements. Despite the fact that the judicial foreclosure statute, R.I. GEN. LAWS § 34-11-22, does not expressly require compliance with the Mortgage document, the Rhode Island Supreme Court has stated that "the right to exercise the power of sale in a mortgage is derived from contract, not statute," and that the power of sale "does not exist independently" from the mortgage agreement. *Bucci v. Lehman Bros. Bank,FSB,* 68 A.3d 1069, 1084, 1085 (R.I. 2013). Simply put, if a mortgagee agrees togive a certain notice before a foreclosure, it does not matter whether it is a judicial or non-judicial foreclosure. The mortgagee must do that which it agreed. Thus, this Court must review compliance with Paragraph 22 of the Mortgage as a matter of contract law, irrespective of whether Defendants are seeking judicial or nonjudicial foreclosure.

This Court granted Summary Judgment to the homeowner stating:

There is no genuine issue as to any material fact concerning whether Fannie Maecomplied with the Mortgage Agreement. It did not. At the least, the notices failed, on their face, to specify an exact date by which Ms. Martins could cure default, that she could reinstate the loan after acceleration, and that she has a right to bring court action. With respect to these elements of the notice, there is no plausible way that a jury could find for Defendants, and the notice is indeed material, as it determines whether Defendants have complied with the Mortgage Agreement.

The Court also stated:

In real estate contracts, when required notice fails to specify particular dates, inform the borrower of his or her right to reinstate a loan after acceleration, or inform the borrower of the ability to bring a court action to contest

7

acceleration or foreclosure, that notice is insufficient. *In re Demers,* 511 B.R. at 239; *Hedco, Ltd. v. Blanchette,* 763 A.2d 639, 642, 643 (R.I. 2000) (failing to specify the termination date in a lease by providing the exact date by which tenant could pay was fatal to required notice); *see also* 55 Am. Jur. 2d Mortgages § 539 ("Because .. . power to sell . . . by foreclosure sale is derived from the deed of trust and statute, strict compliance with the notice requirements is considered a prerequisite . . . and noncompliance with these requirements can render a foreclosure sale void.").

Thus the defective default notice renders this attempt to foreclose void.

### PLAINTIFF WAS NOT PROVIDED A NOTICE OF FORECLOSURE COUNSELING 45 DAYS PRIOR TO THE MAILING OF THE NOTICE OF SALE

As indicated by the Plaintiff's affidavit, no earlier than September 27, 2018, a purported Notice of Foreclosure Counseling was mailed to Plaintiff pursuant to R.I.G.L. 34-27-3.1. Thus thePlaintiff has not been provided a Notice of Foreclosure Counseling pursuant to the provisions of R.I.G.L 34-27-3.1, which states:

### § 34-27-3.1. Foreclosure counseling.

(a) No less than forty-five (45) days prior to initiating any foreclosure of real estate pursuant to subsection 34-27-4(b), the **mortgagee shall provide to an individual consumer mortgagor** written notice of default and the mortgagee's right to foreclose by first class mail at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices.

(b) The written notice required by this section shall be in English and Spanish and, provided the same is then available, shall advise the mortgagor of the availability of counseling through HUD-approved mortgage counseling agencies and, the toll-free telephone number and website address maintained to provide information regarding no-cost HUD-approved mortgage counseling

8

agencies in Rhode Island. The written notice may also contain any other information required under federal law. A form of written notice meeting the requirements of this section shall be promulgated by the department of business regulation for use by mortgagees at least thirty (30) days prior to the effective date of this section. Counseling shall be provided at no cost to the mortgagee.

(c) Failure of the mortgagee to provide notice to the mortgagor as provided herein shall render the foreclosure void, without limitation of the right of the mortgagee thereafter to reexercise its power of sale or other means of foreclosure upon compliance with this section. The mortgagee shall include in the foreclosure deed an affidavit of compliance with this section.

(d) As used herein and in this chapter, the term "HUD" means the United States Department of Housing and Urban Development and any successor to such department.

The statute requires that the notice be provided at least 45 days before the notice of sale is mailed, not that it be mailed.    Exhibit E  is a letter mailed to Plaintiff from Troy Michigan, which was provided to her after October 1, 2018  by regular mail.  This letter as indicated by her affidavit was provided too late as it at the best was received on October 2, which was 44 days before the November 15, 2018 Notice of Sale.    Plaintiff was not provided this letter at least 45 days prior to the purported Notice of Sale, which was dated November 15, 2018.  The statute provides that failure to provide the homeowner/Plaintiff with this letter at least forty five days before the Notice of Sale will render the sale void. Under Rhode Island law, she would thus be able to file an action to set aside the sale. Thus based on this issue, she has a likelihood of success in prevailing. Thus the Temporary

Restraining Order should be granted to maintain the status quo due to the defective notice.

### THE PLAINTIFF WAS NOT MAILED A NOTICE OF MEDIATION AS REQUIRED BY THE PROVISIONS OF R.I.G.L. 34-27-3.2

As indicated by her affifavit, Plaintiff was not sent a Notice of Mediation from the purported mortgagor, Wilmington Trust pursuant to R.I.G.L 34-27-3.2. This statute provides:

(d) The mortgagee shall, **prior to initiation of foreclosure of real estate pursuant to § 34-27-4(b),** provide to the mortgagor written notice at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices, that **the mortgagee may not foreclose on the mortgaged property without first participating in a mediation conference**. Notice addressed and delivered as provided in this section shall be effective with respect to the mortgagor and any heir or devisee of the mortgagor.. .

(m) No deed offered by a mortgagee as a result of a mortgage foreclosure action under power of sale shall be submitted to a city or town recorder of deeds for recording in the land evidence records of the city or town until and unless the requirements of this section are met. **Failure of the mortgagee to comply with the requirements of this section shall render the foreclosure voidable, without limitation of the right of the mortgagee thereafter to re-exercise its power of sale or other means of foreclosure upon compliance with this section.** The rights of the mortgagor to any redress afforded under the law are not abridged by this section. (emphasis added)

Wilmington Trust claims to be the mortgagee and definitely did not send Plaintiff a Notice of Mediation as required by the Mediation Statute. This mortgagee had the obligation to mail a mediation notice pursuant to the clear and undisputed language of the statute. The mortgagee which seeks to

exercise nonjudicially must mail a Notice of Mediation as a precondition to the mailing of a Notice of Sale pursuant to R.I.G.L 34-27-4. This is a procedure which must be complied with by the mortgagee which seeks to avail itself and schedule a nonjudicial foreclosure. The language of the statute is undisputed that this is a prerequisite, which must be followed prior to mailing out such a notice of sale. Whatever a prior mortgagee did in the past has no relevance or bearing on this statute, which was amended effective July 1, 2018.

This statute mandates a procedure prior to the initiation of a nonjudicial foreclosure. The preface of the statute makes it clear what the legislative intent behind the statute is:

(a) *Statement of policy.* It is hereby declared that residential mortgage foreclosure actions, caused in part by unemployment and underemployment, have negatively impacted a substantial number of homeowners throughout the state, creating a situation that endangers the economic stability of many of the citizens of this state as the increasing numbers of foreclosures lead to increases in unoccupied and unattended buildings and the unwanted displacement of homeowners and tenants who desire to live and work within the state.

(b) *Purpose.* The statutory framework for foreclosure proceedings is prescribed under the provisions of chapter 27 of this title. As the need for a mortgage mediation process has evolved, it is important for the state to develop a standardized, statewide process for foreclosure mediation rather than a process based on local ordinances that may vary from municipality to municipality. By providing a uniform standard for an early HUD-approved, independent counseling process in owner-occupied principal residence mortgage foreclosure cases, the chances of achieving a positive outcome for homeowners and lenders will be enhanced.

(c) *Definitions.* The following definitions apply in the interpretations of the provisions of this section unless the context requires another meaning:

(1) "Default" means the failure of the mortgagor to make a timely payment of an amount due under the terms of the mortgage contract, which failure has not been subsequently cured.

(2) "Department" means the department of business regulation.

(3) "Good faith" means that **the mortgagor and mortgagee** deal honestly and fairly with the mediation coordinator with an intent to determine whether an alternative to foreclosure is economically feasible for the mortgagor and mortgagee, as evidenced by some or all of the following factors:

(i) **Mortgagee provided notice** as required by this section;

(ii) **Mortgagee designated an agent to participate in the mediation conference on its behalf and with the authority to agree to a work-out agreement on its behalf;**

(iii) Mortgagee made reasonable efforts to respond in a timely manner to requests for information from the mediation coordinator, mortgagor, or counselor assisting the mortgagor;

(iv) Mortgagee declined to accept the mortgagor's work-out proposal, if any, and the mortgagee provided a detailed statement, in writing, of its reasons for rejecting the proposal;

(v) Where a mortgagee declined to accept the mortgagor's work-out proposal, the mortgagee offered, in writing, to enter into an alternative work-out/disposition resolution proposal that would result in net financial benefit to the mortgagor as compared to the terms of the mortgage.

(4) "HUD" means the United States Department of Housing and Urban Development and any successor to such department.

(5) "Mediation conference" means a conference **involving the mortgagee and mortgagor**, coordinated and facilitated by a mediation coordinator whose purpose is to determine whether an alternative to foreclosure is economically feasible to both the mortgagee and the mortgagor, and if it is determined that an alternative to foreclosure is economically feasible, to facilitate a loan workout or other solution in an effort to avoid foreclosure.

(6) "Mediation coordinator" means a person employed by a Rhode Island-based, HUD-approved counseling agency designated to serve as the unbiased, impartial, and independent coordinator and facilitator of the mediation conference, with no authority to impose a solution or otherwise act as a consumer advocate, provided that such person possesses the experience and qualifications established by the department.

(7) "Mortgage" means an individual consumer first-lien mortgage on any owner-occupied, one (1)- to four (4)- unit residential property that serves as the mortgagor's primary residence.

(8) "Mortgagee" means the holder of a mortgage, or its agent or employee, including a mortgage servicer acting on behalf of a mortgagee.

(9) "Mortgagor" means the person who has signed a mortgage in order to secure a debt or other duty, or the heir or devisee of such person provided that:

(i) The heir or devisee occupies the property as his or her primary residence; and

(ii) The heir or devisee has record title to the property, or a representative of the estate of the mortgagor has been appointed with authority to participate in a mediation conference.

      This language indicates that the purpose of the statute is that a mortgagee cannot utilize the statutory power of sale without first mailing the mortgagor, who lives in the property, of the availability of mediation. There would be no logic to this statute if it meant that once a mortgagor has been provided a notice of mediation by another mortgagor, that the opportunity for mediation has ceased. Each mortgagee clearly must comply with the statute regardless of any prior mediation between the mortgagor and a prior mortgagee. There is no language in the statute which remotely indicates such an interpretation.

The Rhode Island Supreme Court in the case of *In Re BH* (No 2012-322, October 19, 2018) restated its long standing analysis for statutory construction:

> [W]e review questions of statutory interpretation *de novo*." State v. Hazard, 68 A.3d 479, 485 (R.I. 2013) (quoting Campbell v. State, 56 A.3d 448, 454 (R.I. 2012)). In so doing, our ultimate goal is to give effect to the purpose of the act as intended by the Legislature. State v. Santos, 870 A.2d 1029, 1032 (R.I. 2005). "[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Id.* (quoting Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996)). If, however, the language of a statute is ambiguous, this Court turns to "our well-established maxims of statutory construction in an effort to glean the intent of the Legislature."[11]

In *Lawless v. Steward Health Care System, LLC*, 894 F. 3d 9 (First Cir.,2018), the First Circuit cited similar principles:

> When statutory terms are "'plain and unambiguous' in their meaning, we view them as 'conclusive as to legislative intent.'" Dorrian v. LVNV Funding, LLC, 479 Mass. 265, 94 N.E.3d 370, 375 (2018) (quoting Water Dep't of Fairhaven v. Dep't of Envtl. Prot., 455 Mass. 740, 920 N.E.2d 33, 37 (2010)). If, however, the meaning of a statute is not readily apparent from its language, "[w]e look to the intent of the Legislature 'ascertained from all its words ... considered in connection with the cause of [the statute's] enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.'" Id. (quoting DiFiore v. Am. Airlines, Inc., 454 Mass. 486, 910 N.E.2d 889, 893 (2009)).

Case law in this Court has also made the same holding. In deciding the meaning of the statutory obligation in Rhode Island for disabled and

nondisabled students, this Court in H.S. et al v. R.I. Board of Education, 251 S. Supp. 3d (D.R.I., 2017), analyzed the statute in a similar manner :

> [A] statute ordinarily will be construed according to its plain meaning."[19] Courts "examin[e] the plain meaning of the statutory language and consider[ ] the language in the context of the whole statutory scheme."[2]

This statutory scheme is quite clear. A mortgagee must provide mediation prior to mailing a Notice of Sale, provided that the loan is not in default prior to May 15, 2013. There is no provision in this law, which provides that a prior mortgagee's compliance is somehow transferred to the mortgagee seeking to foreclose. The language is clear and ambiguous and is capable of only one interpretation:

Mediation is mandatory in this case and it was not afforded the Plaintiff by the mortgagee seeking to exercise the statutory power of sale.

The Plaintiff lives in the premises and the purported date of default on this loan is purportedly August, 2017.  Since March, 2018, Fay Loan Servicing, LLC has refused to accept any payments of the Plaintiff and has mailed all the payments that she has made back to her. The mortgagee clearly did not send a mediation notice as required prior to mailing the notice of sale, not once by twice. Plaintiff has a substantial likelihood of success in the pending  action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the

public interest if imposed. The failure of the Defendants to comply with the terms of the mortgage renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the statutory ability to conduct this foreclosure.

Fay, through its attorney Orlans PC, was notified of the defective nature of the foreclosure proceedings for failure to comply with the provisions of R.I.G.L 34-27-3.1 and R.I.G.L 34-27-3.2 but has refused to cancel this sale. These facts demonstrate that Plaintiff has a substantial likelihood of success. Likewise a foreclosure of her property by a party not entitled to foreclose on the property will cause Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by defendants. Such relief sought by Plaintiff will not disserve the public interest if imposed.Notice of this Motion has been sent to Defendants' attorney, Orlans, P.C.

For this reason this Court should grant a Temporary Restraining Order and Preliminary Injunction Restraining and Enjoining Wilmington Trust, Fay or any other entity acting on their behalf from conducting, advertising or continuing a foreclosure sale at 177 Dexter Street, Providence, Rhode Island on January 7, 2019 or at any other time until there

has been compliance the terms of the mortgage, R.I.G.L 34-27-3.2 and R.I.G.L 34-27-3.1, pending a hearing on a Permanent Injunction. The statutory scheme was not complied by the Defendant and the Plaintiff has a strong likelihood of success.

                                          DOLORES CEPEDA
                                          By her Attorney

January 3, 2019                          /s/ John B. Ennis

                                          JOHN B. ENNIS, ESQ. #2135
                                          1200 Reservoir Avenue
                                          Cranston, Rhode Island 02920
                                          (401) 943-9230
                                          Jbelaw75@gmail.com