2018 WL 4964545
Only the Westlaw citation is currently available.
United States District Court, D. Rhode Island.

James VIERA, Plaintiff,
v.
BANK OF NEW YORK MELLON, AS TRUSTEE FOR the CERTIFICATE HOLDERS OF CWALT, INC., Alternative Loan Trust 2005-86CB Mortgage Pass-Through Certificates, Series 2005-86B; and Bayview Loan Servicing, LLC, Defendants)

C.A. No. 17-0523-WES-PAS
|
Signed 10/12/2018

**Attorneys and Law Firms**

John B. Ennis, Cranston, RI, for Plaintiff.

Amy Magher, Pro Hac Vice, Michienzie & Sawin LLC, Boston, MA, for Defendant.

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

 *1  Before the Court is Defendants' Motion to Dismiss and Dissolve that entered on November 13, 2017 ("Defendants' Motion") (ECF No. 8), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. After carefully reviewing the written submissions of the parties, the Court grants Defendants' Motion in toto.

I. Background

This dispute arises out of foreclosure proceedings that Defendants commenced against Plaintiff in the fall of 2017. Plaintiff executed a mortgage agreement for his home in December of 2005; Defendant Bank of New York Mellon ("BNYM") is the current mortgagee and assignee of the Note associated with that mortgage; Defendant Bayview Loan Servicing, LLC ("Bayview") is the current loan servicer. In 2010, Plaintiff filed for bankruptcy and stopped making regular payments on the mortgage loan. (Compl. Ex. B at 1, ECF No. 1-4.)

Seven years later, on August 3, 2017, Defendant Bayview sent Plaintiff a letter entitled "Notice of Default and Intent to Accelerate" indicating that his mortgage loan was in default and that the loan would be accelerated on September 7, 2017 if he failed to pay the total amount due of $148,858.78. (See id.) Plaintiff does not claim to have cured the default or to have made any effort to cure the default after receiving that notice.

After Plaintiff failed to cure his default by September 7, 2017, Bayview invoked its statutory power of sale and scheduled a foreclosure sale of the property to take place on November 13. (See Mot. for TRO ¶ 6, ECF No. 2.) On November 12, Plaintiff filed a Complaint and an Emergency Motion for a Temporary Restraining Order to enjoin the scheduled foreclosure sale. (Compl. ECF No. 1; Mot. for TRO, ECF No. 2.) That motion was granted by text order following a telephonic hearing on November 13, at which all parties were represented.

On April 24, 2018, Defendants moved to dissolve the TRO and to dismiss Plaintiff's Complaint pursuant to Rules 4(m), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

II. Discussion

A. Motion to Dismiss Plaintiff's Complaint
The Complaint states five counts: (1) breach of contract; (2) violation of the covenant of good faith and fair dealing; (3) injunctive relief; (4) violation of the Rhode Island Fair Debt Collection Practices Act, R.I. Gen. Laws § 19-14.9-1 et seq., ("RIFDCPA"); and (5) violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"). [1]

In essence, Plaintiff claims that Defendants did not have authority to invoke their statutory power of sale because they never sent him a notice of default or a notice of acceleration, both of which Plaintiff contends were required by paragraph 22 of the mortgage agreement. Plaintiff alternatively contends that the notice of default he received on August 3, 2017 was substantively deficient. On these bases, Plaintiff claims that Defendants breached the terms of the mortgage agreement as well as the covenant of good faith and fair dealing, and contends that this breach of contract entitles him to injunctive relief permanently enjoining a foreclosure sale of his home. (Compl. ¶¶ 48, 55, 64, ECF No. 1.)

 *2  Plaintiff also alleges that Bayview's attempt to foreclose on the property violated RIFDCPA because Bayview "falsely stated the amount claimed to be due in past due interest

and charges, in every statement" sent to Plaintiff. (Id. at ¶ 71(c).) Lastly, Plaintiff claims that both Defendants violated TILA when they failed to send Plaintiff monthly mortgage statements and charged his mortgage loan account for costs and fees associated with their foreclosure attempts. (Id. at ¶ 93, 95.)

i. Dismissal for Failure to Effect Service in Accordance with Rule 4(m)

As a threshold matter, Plaintiff failed to properly serve Defendant Bank of New York under Rule 4 of the Federal Rules of Civil Procedure and, as such, the Court cannot exercise personal jurisdiction over that Defendant. Accordingly, the Court dismisses without prejudice all of Plaintiff's claims as they pertain to Bank of New York. See Fed. R. Civ. P. 4(m). Plaintiff's claims on the merits brought against both Defendants, however, survive only as to Bayview.[2]

ii. Count I - Breach of Contract

The crux of Plaintiff's breach-of-contract claim is that paragraph 22 of the mortgage agreement required Defendants to send Plaintiff a default notice as well as a notice of acceleration prior to commencing foreclosure proceedings. Plaintiff alleges that Defendants never sent him either notice and, therefore, did not satisfy the conditions necessary to invoke their statutory power of sale. (Compl. ¶¶ 7, 12, ECF No. 1.) Plaintiff alternatively contends that the notice he received on August 3, 2017 did not constitute a default notice as required under the mortgage agreement because it "did not state a specific amount due" to cure default. (Id. at ¶ 15.) Plaintiff's interpretation of the contract is flawed.

First, paragraph 22 did not require Defendants to send Plaintiff a notice of acceleration in addition to the notice of default that he received on August 3, 2017. paragraph 22 provides that "Lender shall give notice to Borrower prior to acceleration" and identifies the specific list of information that the notice must include. (Id. at 11.) It then states:

> If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument <u>without further demand</u> and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.

(Id. (emphasis added).) The emphasized language suggests that no secondary notice of acceleration is required before Defendants could properly accelerate the loan and commence foreclosure proceedings, because such additional notice would effectively be "further demand."

Second, the notice of default sent on August 3, 2017 complied with all of the substantive requirements set forth in paragraph 22, including the requirement to state the specific amount due to cure default.[3] The August 3 letter stated that "[t]his letter is formal notice ... that you are in default .... [T]he total amount required to cure the default is $148,858.78 .... The default above can be cured by payment of the total amount ... by 09/07/2017." (Compl. Ex. B at 2, ECF No. 1-4.) Despite Plaintiff's contention to the contrary, the notice of default clearly stated the "specific amount due" to cure default. (See Compl. ¶ 15.) Additionally, the notice of default complied with all of the other substantive requirements set forth in paragraph 22.

*3 In ruling on a motion to dismiss, the Court must "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff[ ]." Gargano v. Liberty Int'l Underwriters, 572 F.3d 45, 48 (1st Cir. 2009). A motion to dismiss will be granted "only if, when viewed in this manner, the pleading shows no set of facts which could entitle plaintiff to relief." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988).

Taking all of the facts alleged in the light most favorable to Plaintiff, it is clear that he has not stated a viable breach-of-contract claim. paragraph 22 entitled Plaintiff to receive a default notice that included specific information outlined in paragraph 22, which he received. Additionally, that paragraph plainly does not require Defendants to send Plaintiff a separate "notice of acceleration." As such, Plaintiff's claim is dismissed pursuant to Rule 12(b)(6).

i. Count II - Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff's claim for breach of the covenant of good faith and fair dealing cannot stand in the absence of a viable breach of an underlying contract. See McNulty v. Chip, 116 A.3d 173,

Case 1:19-cv-00005-MSM-PAS   Document 54-1   Filed 01/22/20   Page 3 of 6 PageID #: 829
Viera v. Bank of New York Mellon as Trustee for Certificate..., Slip Copy (2018)
2018 WL 4964545

185 (R.I. 2015) ("[A] claim for breach of the implied covenant of good faith and fair dealing does not create an independent cause of action separate and apart from a claim for breach of contract."). Because Plaintiff's breach-of-contract claim fails, the Court dismisses Plaintiff's claim for a breach of the covenant of good faith and fair dealing pursuant to Rule 12(b)(6).

ii. Count III - Injunctive Relief

Plaintiff requests both a preliminary and a permanent injunction to enjoin Defendants from foreclosing on his home. Presumably, the preliminary injunction related to the foreclosure proceedings that were scheduled for November 13, 2017. Plaintiff successfully obtained a TRO enjoining that foreclosure sale and there is no further relief the Court can grant as to that claim. Accordingly, Plaintiff's claim for preliminary injunctive relief is dismissed as moot. See Chafin v. Chafin, 568 U.S. 165, 172 (2013) ("[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.") (quotations omitted).

Plaintiff's claim for permanent injunctive relief is likewise dismissed because, as discussed throughout this Memorandum, Plaintiff will not succeed on the merits of his claims. See Largess v. Supreme Judicial Court for State of Massachusetts, 373 F.3d 219, 224 (1st Cir. 2004) (stating that the standard for granting a permanent injunction is "virtually identical [to the standard for granting preliminary] injunctive relief, except that the movant must show actual success on the merits of the claim, rather than a mere likelihood of such success.") (quotations omitted).

iii. Count IV - Violations of the Rhode Island Fair Debt Collection Practices Act

Count IV asserts the RIFDCPA claim against Bayview only, alleging that the monthly mortgage statements sent to Plaintiff were inaccurate because his mortgage loan account was "charged improper fees and costs relating to foreclosure attempts on his property." (Compl. ¶ 93.) Defendants argue that Count IV should be dismissed because the alleged violations of RIFDCPA either fall outside of the applicable statute of limitations or fail to articulate a concrete and particularized injury as required to establish standing.

*4 RIFDCPA's statute of limitations provides that "[a]n action to enforce any liability created by the provisions of this article may be brought in any court of competent jurisdiction within one year from the date on which the violation occurs."

R.I. Gen. Laws § 19-14.9-13(5) (emphasis added). Because Plaintiff filed his Complaint on November 12, 2017, he may only bring a RIFDCPA action for violations that occurred within one year of that date – i.e., violations that occurred on or after November 12, 2016.

The only charge Plaintiff points to that falls within the statute of limitations is a $300.00 charge allegedly incurred on November 15, 2016 for "legal fees for foreclosures without a default letter sent pursuant to the terms of the mortgage and without ever having sent an acceleration letter." (Compl. ¶ 96.) The RIFDCPA claim as it relates to the November 15 fees must likewise be dismissed in accordance with Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1549 (2016), because Plaintiff has alleged only a "bare procedural violation" and therefore has failed to allege an injury that is sufficiently concrete to confer Article III standing.

In Spokeo, the plaintiff claimed that the defendant violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"), by creating an online profile about him which contained inaccurate personal information. Id. at 1544. The Supreme Court observed that, while the injury that the plaintiff had alleged was sufficiently "particularized" (i.e., personal to that plaintiff) he had failed to establish that the injury was "concrete." Id. at 1548-49. The Court explained that "[a] 'concrete' injury must be 'de facto'; that is, it must actually exist. When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term–'real,' and not 'abstract.' " Id. at 1548 (citations omitted). The Supreme Court held that "not all inaccuracies cause harm or present any material risk of harm" and, therefore, a complaint based upon only a technical violation of a statutory right, without any explanation of how the violation actually harmed the plaintiff, failed to establish standing. Id. at 1548, 1550.

Like the plaintiff in Spokeo, here, Plaintiff has not explained how the inclusion of the allegedly improper fees and expenses charged to his account on November 15, 2016 caused him actual harm. There is no allegation in the Complaint that Plaintiff ever paid any of the allegedly improper charges and Plaintiff has not stated whether the November 15, 2016 charge currently appears on his mortgage loan account, or why the appearance of that charge would be wrongful. Moreover, Plaintiff seeks damages only for the costs he has incurred in prosecuting the RIFDCPA claim and attorney's fees. While these damages would be recoverable if Plaintiff had successfully established a RIFDCPA violation, see R.I. Gen. Laws § 19-14.9-13(2)(d), they are not a substitute

for the injury-in-fact requirement developed in Spokeo. See Pemental v. Bank of New York Mellon for Holders of Certificates, First Horizon Mortg. Pass-Through Certificates Series FHAMS 2004-AA5, No. CV 16-483S, 2017 WL 3279015 (D.R.I. May 10, 2017), report and recommendation adopted sub nom. Pemental v. Bank of New York Mellon, No. CV 16-483 S, 2017 WL 3278872 *8 (D.R.I. Aug. 1, 2017) (finding that attorneys' fees and costs incurred in asserting a TILA action were not a substitute for the injury-in-fact requirement because "apart from *pro se* claims, every TILA complaint requires the expenditure of attorneys' fees" and to hold otherwise would allow a claim for attorneys' fees to "subsume the injury-in-fact requirement.").

**\*5** As Plaintiff has failed to allege an injury that is sufficiently concrete to confer standing, his RIFDCPA claims are dismissed pursuant to Rule 12(b)(1).

iv. Count V - Violations of the Truth in Lending Act
Plaintiff alleges that Defendants violated TILA by (1) failing to send him required monthly mortgage statements and (2) by charging improper fees to his mortgage loan account for property inspections and foreclosure costs. The Court addresses each alleged violation in turn.

1. Failure to Send Monthly Mortgage Statements
Defendants contend that they were not required to send monthly mortgage statements to Plaintiff because Plaintiff's personal liability on the underlying mortgage loan was discharged in an October 2010 bankruptcy proceeding pursuant 11 U.S.C. § 727 and Defendant BNYM's predecessor in interest, Shamrock Corporation, was named as a creditor in that proceeding.[4] (See Mem. in Supp. of Defs.' Mot. to Dismiss 12, ECF No. 8-1.) Alternatively, Defendants argue that, even if they had a duty to send Plaintiff monthly statements, Plaintiff has pleaded only a technical violation of TILA and has failed to allege a concrete injury caused by Defendants' purported failure to send statements. (Id.)

Plaintiff does not contest that his personal liability on the mortgage was discharged in bankruptcy, but contends that an amendment to Regulation Z "changed the legal landscape" and imposed a duty upon Defendants to send Plaintiff monthly statements, despite his bankruptcy discharge. However, the amendment on which Plaintiff hangs his hat went into effect on April 29, 2018 - i.e., five months after Plaintiff filed his Complaint. As such, that amendment is not germane to this case.

12 C.F.R. § 1026.41, titled "Periodic statements for residential mortgage loans," discusses the formal and substantive requirements applicable to the monthly statements that mortgage lenders are required to send to borrowers. However, subsection (e)(5) provides that a lender is not required to send periodic statements if the loan was discharged in bankruptcy and one of four conditions is met. See 12 C.F.R. § 1026.41(e)(5)(i)(B)(1)-(4). While Defendants have established that Plaintiff's personal liability was discharged in bankruptcy, they have not submitted any evidence that Plaintiff meets any of the other four conditions. Accordingly, Defendants were not exempt from the duty to send Plaintiff periodic statements and they allegedly violated TILA by not sending those statements.

**\*6** However, Plaintiff has not alleged how Defendants' failure to send monthly mortgage statements has caused him any injury other than attorneys' fees and the costs of prosecuting his TILA claim. As with his RIFDCPA claim, these damages would be recoverable if the alleged TILA violation had caused actual harm, "they are not a substitute for the injury-in-fact required by Spokeo." Pementel, at \*8. See Spokeo, 136 S.Ct. at 1550; see also Davidson v. PNC Bank, N.A., CAUSE No. 1:16-cv-569-WTL-MPB, 2016 WL 7179371, \*2-4 (S.D. Ind. Dec. 9, 2016) (dismissing TILA claim despite potentially inaccurate mortgage payoff statement because no actual injury in light of prior letter with accurate information).

2. Charge of Improper Fees and Expenses to Plaintiff's Mortgage Account
Plaintiff also alleges that Defendants violated TILA by charging improper fees and expenses to his mortgage loan account. Pointing to the same fees and expenses he identified in Count IV, Plaintiff claims these improper charges caused the following damages: (1) costs for prosecuting the claim; (2) attorneys' fees; and (3) an increased cost for "any possible loan modification." (Compl. ¶ 101(c).)

None of these damages allege an injury sufficient to confer standing. TILA, like RIFDCPA, imposes a one-year statute of limitations. See 15 U.S.C.A. § 1640(e) ("any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation ...."). As such, only the alleged $300.00 charge from November 15, 2016 survives the statute of limitations.

Plaintiff has alleged that the November 15 charge will "raise the cost of any possible loan modification." (Compl. ¶ 101(c).) Arguably, this sufficiently alleges a concrete injury. However, even if this injury is sufficiently concrete, it is nonetheless too speculative to ultimately confer standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (holding that, to establish that he has standing, a plaintiff must demonstrate "an injury in fact ... [that is] actual or imminent, not conjectural or hypothetical") (citations and quotations omitted); see also Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017) (holding that "a future injury is too speculative for Article III purposes [if] no prosecution is even close to impending") (quotations omitted).

Although the Complaint twice references Plaintiff's attempt to start the loan modification process (see Compl. ¶¶ 32, 97), Plaintiff has not alleged that his loan modification process is "imminent" nor has he alleged how or why the presence of the fees/expenses would increase his future loan modification costs. Moreover, Plaintiff himself characterizes the prospect of his loan modification as only "possible," not "probable," and certainly not "imminent" as required to confer standing. (Id. at ¶ 101(c).) As such, Plaintiff's TILA claim does not allege a sufficiently imminent injury-in-fact and is therefore dismissed for lack of standing pursuant to Rule 12(b)(1).

A. Motion to Dissolve the TRO

Plaintiff filed his motion for TRO on Sunday, November 12, 2017, hoping to stop a foreclosure sale that was scheduled to take place the following afternoon. The hearing on that motion took place on Monday morning, mere hours before the foreclosure sale was scheduled to occur. (See Tr. of TRO Hr'g 13, ECF No. 12.) After acknowledging that its "review of the material [was] very cursory," given the extremely short amount of time it had to review those materials, the Court granted the TRO based on its understanding that paragraph 19 of the mortgage agreement entitled Plaintiff to receive a "notice of acceleration" in addition to the Default notice, which Plaintiff admitted to receiving on August 3, 2017. (Id.)

**\*7** Having had an opportunity to more closely review the mortgage agreement, the Court finds that its earlier reasoning was flawed and that the TRO must be dissolved. paragraph 19 is not the correct source for assessing what notice was required under the mortgage agreement prior to initiating a foreclosure because that paragraph merely outlines a borrower's right to reinstate after foreclosure proceedings have already commenced. (See Compl. Ex. A at 11, ECF No. 1-3.) Rather, as discussed in Section II.A.i supra, paragraph 22 lays out the notice reuirements necessary to commence foreclosure proceedings and plainly does not require Defendants to send a separate "notice of acceleration."

Temporary restraining orders, "through lapse of time, become preliminary injunctions." Prof'l Plan Examiners of N.J., Inc. v. Lefante, 750 F.2d 282, 288 (3d Cir. 1984) (citing Maine v. Fri, 486 F.2d 713, 715 (1st Cir. 1973) ). As such, in order to defeat a motion to dissolve the TRO, the party who obtained the TRO must prove the same elements he would be required to prove in order to obtain a preliminary injunction, namely: "(1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the plaintiff's favor, and (4) service of the public interest." Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 794 F.3d 168, 171 (1st Cir. 2015).

As discussed throughout this Memorandum, Plaintiff cannot succeed on the merits. Accordingly, Plaintiff is not entitled to injunctive relief and the TRO must be dissolved.

III. Conclusion

For all of the above-stated reasons, all of Plaintiff's claims against Defendant Bank of New York are dismissed without prejudice and Defendant Bayview's Motion to Dismiss and Dissolve (ECF No. 8) is GRANTED.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2018 WL 4964545

Footnotes

1 Although the Complaint mistakenly includes two Count IV's, this order will refer to Plaintiff's TILA claim as "Count V" for clarity.

2 That said, the Court notes that its analysis and conclusions would have applied equally to Bank of New York, had Plaintiff properly effected service upon it.

| | |
|---|---|
| 3 | In reaching its decision, the Court properly reviewed the mortgage agreement and the notice of default, both of which were attached to the Complaint and are incorporated by reference therein. See Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st Cir. 2005)(holding that, in ruling on a motion to dismiss, the court may "augment those facts [in the Complaint] with facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice."). |
| 4 | The Court considers the filings in Plaintiff's bankruptcy proceeding to be matters of public record and, as such, the Court may consider those documents in ruling on the instant motion without converting it into a motion for summary judgment. See Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)("Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.") (quotations omitted). |

**End of Document**                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.