2017 WL 3279015
Only the Westlaw citation is currently available.
United States District Court, D. Rhode Island.

Christopher PEMENTAL, Plaintiff,
v.
The BANK OF NEW YORK MELLON, as Trustee FOR the HOLDERS OF the CERTIFICATES, FIRST HORIZON MORTGAGE PASS-THROUGH CERTIFICATES SERIES FHAMS 2004-AA5, formerly known as The Bank of New York, and Nationstar Mortgage, LLC, and John Doe, Alias, Defendants.

C.A. No. 16-483S
|
Signed 05/10/2017

**Attorneys and Law Firms**

John B. Ennis, Cranston, RI, for Plaintiff.

David J. Pellegrino, Santiago H. Posas, Partridge, Snow & Hahn LLP, Providence, RI, Deborah Higashi Dodge, Partridge Snow & Hahn LLP, Needham, MA, for Defendants.

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge

*1 This matter is before the Court for report and recommendation on the motion to dismiss (ECF No. 2) the amended complaint of Plaintiff Christopher Pemental brought by Defendants, the Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Holders of the Certificates, First Horizon Mortgage Pass-Through Certificates Series FHAMS 2004-AA5, ("Mellon") and Nationstar Mortgage, LLC ("Nationstar") (collectively, the "named Defendants").

**I. INTRODUCTION**
To enjoin Mellon from foreclosing the mortgage on his residence at 17 and 19 Stanley Avenue, Barrington, Rhode Island, Plaintiff initiated this case on March 15, 2015, as a state-law-based action in Rhode Island Superior Court. On May 15, 2015, the Superior Court enjoined Plaintiff's foreclosure, as well as others, based on the failure of the mortgagee to comply with a then-applicable state law mediation requirement (R.I. Gen. Laws § 34-27-3.2).

Fontaine v. US Bank National Ass'n, No. PC 2015-1043, 2015 WL 2449536 (R.I. Super. May 15, 2015) ("Fontaine"). A year later, the Rhode Island General Assembly amended the mediation statute,[1] making clear that Plaintiff's mortgage was exempt and arguably mooting his mediation-based claim against Mellon. To avoid Mellon's summary judgment motion, Plaintiff amended his complaint; the amended pleading dropped the mediation-based claim and asserted new claims arising under state law (breach of contract and breach of the covenant of good faith and fair dealing) and under federal law (the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, ("FDCPA")). ECF No. 1-2.[2] The Complaint adds a new defendant, Nationstar, the servicer of the mortgage, and clarifies that the previously named John Doe, a purported unknown, is sued as "the actual owner of Plaintiff's mortgage and note." Id. ¶ 5. Based on the new federal claims, the named Defendants timely removed the case to this Court. 28 U.S.C. § 1446 (b)(2)(A).

*2 Drafted to conform to state law pleading requirements, the Complaint contains four Counts. The first two (Counts I and II) vaguely assert that Mellon, Nationstar and John Doe breached the contractual terms of the mortgage agreement, including its implied covenant of good faith and fair dealing, in connection with the now-enjoined foreclosure sale. ECF 1-2 ¶¶ 22-30. Count III invokes TILA against "John Doe and any other entity which claims to own and hold the Plaintiff's note and mortgage" for failing to send TILA-compliant monthly statements, while Count IV asserts an FDCPA claim against Nationstar, alleging that the monthly statements were inaccurate. Id. ¶¶ 34-56.

The named Defendants ask the Court to dismiss all four Counts for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, they move for a more definite statement on the federal claims in Counts III and IV pursuant to Fed. R. Civ. P. 12(e). Based on the finding that each Count of the amended complaint falls woefully short of plausibly laying out a viable claim and that Counts III and IV fail to plead injury-in-fact as required by Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549-50 (2016), I recommend that the named Defendants' motion to dismiss the Complaint in its present form be granted. However, mindful that the Complaint was crafted to conform to the more relaxed pleading requirements established in Conley v. Gibson, 355 U.S. 41, 45-48 (1957), and that no party briefed or argued what I have found to be a glaring Spokeo deficit, I further recommend that Plaintiff first be afforded thirty days from the date of the adoption of

this report and recommendation to amend the pleading to state a plausible cause of action with legally-cognizable damages, and with a legally cognizable injury-in-fact for the TILA and FDCPA claims, if such exist. Reilly v. Cox Enters., Inc., C.A. No. 13-785S, 2014 WL 4473772, at *12 (D.R.I. Apr. 16, 2014), adopted, 2016 WL 843268 (D.R.I. Mar. 1, 2016). If he fails to do so, I recommend that the amended complaint be dismissed. Alternatively, if the Court does not adopt my recommendation regarding Counts III and IV, the motion for more definite statement should be granted.

The analysis follows.

**II. BACKGROUND**

This motion to dismiss required the Court to struggle to understand a pleading so sparse, vague, conclusory, internally contradictory and confusing that both Plaintiff and the named Defendants were compelled to supplement it so as to tell a coherent story of the conceivably relevant events. This report and recommendation lays out the fruit of that struggle— it attempts to tell the tale of Plaintiff's mortgage, focusing first on the Complaint itself and then looking at information brought to the Court's attention by the parties from the public record and from documents referenced in the Complaint.[3] The Court's analysis of this jumble results in the conclusion that Plaintiff may have a plausible claim, but, if he does, it cannot be extracted from this pleading.

I begin with the facts as literally alleged in the Complaint.

The Complaint opens with the allegation that Plaintiff resides at 17 and 19 Stanley Avenue, in Barrington, Rhode Island[4] (the "Stanley Avenue property"). ECF No. 1-2 ¶ 1. On September 7, 2004, Plaintiff executed a mortgage in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for First Horizon Home Loan Corporation ("First Horizon") (hereinafter, the "mortgage"). An examination of the copy of the mortgage attached to the Complaint uncovers the additional facts that the mortgage was executed in connection with a note and was secured by the Stanley Avenue property. Id. ¶ 2.

*3 Without providing any factual foundation for the claim, Plaintiff alleges that Mellon claims to own this mortgage as a result of a "purported assignment ... to an entity which does not exist," although Plaintiff also purported to sue that entity in this case and to have obtained an injunction against it. See ECF No. 1-2 ¶¶ 3, 14. Plaintiff claims the mortgage is actually owned by someone unknown to him, named in the complaint as John Doe, although the pleading has no plausible facts to support that claim. Id. ¶ 5. It is impossible to tell from the Complaint whether Plaintiff seriously alleges that Mellon does not exist or is not the assignee of his mortgage with the legal right to foreclose.[5] The Complaint names Nationstar as the entity that began servicing the mortgage on April 1, 2014; it alleges that Nationstar acted on behalf of "an entity which does not exist in the name," which "also makes that action [presumably the foreclosure voided by Fontaine] void." Id. ¶ 4.

According to the Complaint, in February 2015, the Stanley Avenue property was scheduled for foreclosure sale by Nationstar, acting for Mellon. ECF No. 1-2 ¶¶ 6, 14. Plaintiff vaguely alleges, without any clear indication when, that his "mortgage loan account" was charged legal fees and expenses in connection with the foreclosure sale. Id. ¶¶ 16, 47(c). He claims that he did not receive a pre-foreclosure notice of mediation as then required by R.I. Gen. Laws § 34-27-3.2(d); he also claims that "[n]o default notice has been sent to Plaintiff pursuant to Paragraph 22 of the mortgage," as well as that "an acceleration notice [was] never sent." Id. ¶¶ 11-13. Accordingly, the Complaint concludes, the foreclosure initiated in February 2015 was void. Id. ¶ 14. Based solely on the failure to send the mediation notice, the Superior Court enjoined the foreclosure sale, effectively voiding it. See ECF No. 1-2 ¶ 15. Plaintiff claims that he incurred attorneys' fees and costs due to the failure of "Defendants" to provide the mediation notice, the default notice and the acceleration notice. Id. ¶ 19.

Based on sources which may be considered on a motion to dismiss, Plaintiff and the named Defendants point to additional facts that put some flesh on these meager bones. For starters, the named Defendants add the fact that, at the same time he signed the mortgage in 2004, Plaintiff also executed a promissory note for $315,000 to First Horizon.[6] ECF No. 2-2. Next, the public record[7] reveals that Plaintiff was granted a discharge in bankruptcy just three years later, under 11 U.S.C. § 727, and that First Horizon was listed as a creditor. In re Pemental, No. BR 07-11093-ANV (Chapter 7) (Bankr. D.R.I.) (ECF Nos. 59, 63). The Bankruptcy Court's docket further reveals an order that lifted the automatic stay to permit the mortgagee to "proceed to foreclose or accept a deed in lieu of foreclosure of the mortgage" on 17 and 19 Stanley Avenue. Id. (ECF No. 53 at 1) (Order entered August 30, 2007).

**\*4** The notice of default reveals that Plaintiff stopped making the monthly mortgage payments beginning on July 1, 2010.[8] ECF No. 2-1 at 2. Defendants assert that the notice of default was mailed to Plaintiff by certified mail on November 8, 2013. ECF No. 2-4. Confusingly, having pled that "[n]o default notice has been sent pursuant to Paragraph 22 of the mortgage," during argument in connection with this motion, Plaintiff now acknowledges that he got the notice proffered by Defendants. During briefing and argument on the motion to dismiss, he contends that the notice of default was sent but that it failed to comply with Paragraph 22 of the mortgage in ways that are not articulated in the Complaint.[9]

The docket in the case makes clear that the injunction has not been vacated as it applies to the 2015 attempt to foreclose on Plaintiff's Stanley Avenue property. Fontaine rendered the 2015 foreclosure attempt and the allegedly defective default notice void and a nullity. As a result of his Fontaine success, Plaintiff has continued as owner (and presumably resident) of the Stanley Avenue property despite being in default. If a foreclosure proceeding were to be initiated now, it would have to be an entirely new process, not based on any of the allegedly deficient steps used during the aborted 2015 effort. If Nationstar is still trying to add its 2015 foreclosure attorneys' fees and costs to the mortgage balance, that conceivably might state a claim; however, Plaintiff does not clearly allege that it is still doing so. The attorneys' fees Plaintiff himself incurred to obtain the Superior Court victory might be the basis for a viable claim, but the Complaint asserts no theory under which they are recoverable. In short, it is impossible to discern whether Plaintiff now has any plausible claim based on wrongful or injurious conduct.

### III. STANDARD OF REVIEW

As required by Fed. R. Civ. P. 12(b)(6), the Complaint must give Defendants fair notice of what the claim is and the grounds on which it rests, and allege a plausible entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007). The plausibility inquiry requires the Court to distinguish "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). The Court must then determine whether the factual allegations are sufficient to support "the reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted). The complaint should not be read "too mechanically"; rather, it should be considered holistically with a heavy dose of common sense. Rodriguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278, 283 (1st Cir. 2014). All well-pled facts must be taken as true and all reasonable inferences drawn in Plaintiff's favor. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). This standard applies equally to cases filed initially in federal court and to cases removed to federal court from Rhode Island Superior Court. See Reilly, 2014 WL 4473772, \*3. The "mere recitation of an essential element, sans factual allegations, misses the boat." R.I. Recycled Metals, LLC v. Conway Marine Constr., Inc., C.A. No. 16-cv-607-M-PAS, 2017 WL 1831089, at \*1 (D.R.I. May 4, 2017).

**\*5** In analyzing Counts III and IV, Spokeo requires the Court to consider the pending motion as a challenge to subject matter jurisdiction based on lack of standing, which may be raised at any time under Fed. R. Civ. P. 12(b)(1). 136 S. Ct. at 1547; Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); see Fed. R. Civ. P. 12(h)(3). In considering whether to dismiss a complaint for lack of standing, the court must "accept as true all well-pleaded factual averments in the plaintiff's complaint and indulge all reasonable inferences therefrom in his favor." Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012) (internal quotations omitted). The plaintiff has the burden to plead facts to demonstrate standing; the plausibility standard under Rule 12(b)(6) applies to standing determinations at the pleadings stage. Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016). The court may consider exhibits and other documents outside the pleadings on a Rule 12(b)(1) motion. Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

### IV. ANALYSIS

#### A. Breach of Contract and Covenant of Good Faith and Fair Dealing

In Counts I and II, Plaintiff asserts contract claims against Mellon, Nationstar and John Doe. Count I claims breach of Paragraph 22 of the mortgage based on the allegation that he "never received any a default letter, pursuant to the terms of the mortgage." ECF No. 1-2 ¶¶ 23-26. Seeking punitive damages, as well as the fees he incurred to obtain the Superior Court injunction, Count II claims breach of the covenant of good faith and fair dealing against all three Defendants based on both the failure to send the default letter and the failure to provide a mediation notice as then required by Rhode Island law; both failures are allegedly contrary to the

"contractual obligations" of all three Defendants.[10] Id. ¶ 31. The Complaint does not explain how Plaintiff can have a contract claim against entities (Mellon and Nationstar) that he alleges are not parties to the mortgage. The Complaint does not explain how Plaintiff plausibly asserts a claim for punitive damages. Nor does it plausibly explicate a basis for recovery of attorneys' fees based on breach of a contract that does not provide for recovery of attorneys' fees by the mortgagor. And it does not plausibly explain how Plaintiff can claim the right to recover his own attorneys' fees based on non-compliance with a now-repealed state law that did not provide for recovery of attorneys' fees.

In argument, despite a Complaint that states, "[n]o default notice has been sent to Plaintiff pursuant to Paragraph 22 of the mortgage," ECF No. 1-2 ¶ 11, Plaintiff now contends that he did get the default notice mailed on November 8, 2013, ECF No. 2-4, but that it failed to comply with the mortgage contract. Citing In re Demers, 511 B.R. 233, 238 (Bankr. D.R.I. 2014), he argues that the notice does not comply with Paragraph 22 because it failed to provide a final date on which the default could be cured and failed to provide adequate information about his right to assert defenses to the foreclosure action. See Martins v. Fed. Hous. Fin. Agency, C.A. No. 15-235-M-LDA, 2016 WL 5921770 (D.R.I. 2016) (mortgagee failed to satisfy conditions precedent to foreclosure when it failed to provide the borrower with Paragraph 22-compliant notice); Hedco, Ltd. v. Blanchette, 763 A.2d 639 (R.I. 2000) (eviction notice that threatened termination of tenancy "within ten days" failed to precisely specify date). The problem is that none of this is in the Complaint. Nor does Plaintiff's argument explain how these defects continue to be actionable when the default notice is a nullity as a result of Fontaine.[11]

 *6  Plaintiff's contract claims also focus on attorneys' fees. First, Counts I and II both advert to the factual allegation that the "mortgage loan account has been charged legal fees and expenses for postage and advertising for a foreclosure sale without providing for mediation as required by statute." ECF No. 1-2 ¶ 16. However, Counts I and II do not explain how this breaches the mortgage; to the contrary, by its terms, the mortgagee is permitted to recover such fees. ECF No. 2-3 ¶ 14. Second, Plaintiff seeks his own legal fees incurred in defending against the 2015 foreclosure. ECF No. 1-2 ¶ 26. But they are not recoverable without some contractual or statutory authority, neither of which is plausibly stated in either Count I or Count II. Shine v. Moreau, 119 A.3d 1, 8 (R.I. 2015); see In re: Janet S. Bagdis Living Trust Agreement, 136 A.3d 1122, 1129 (R.I. 2016) (under American Rule, each litigant must pay his or her own attorneys' fees); Blue Cross & Blue Shield of R.I. v. Najarian, 911 A.2d 706, 711 n.5 (R.I. 2006) (same). For example, fees may be awarded when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Blue Cross, 911 A.2d at 711 n.5 (quoting Chambers v. Nasco, Inc., 501 U.S. 32, 45-6 (1991)). However, Plaintiff has failed to allege any facts that come close to hitting that high standard.

At bottom, Plaintiff's contract claims fail because he has not plausibly alleged how he has been damaged by claimed breaches all of which have been rendered moot by Fontaine. Chrabaszcz v. Johnston Sch. Comm., 474 F. Supp. 2d 298, 309 (D.R.I. 2007) ("an element of a breach of contract claim is proof of damages"). Counts I and II do not make sense because they do not reveal why the case is not moot or how the Court's judgment could provide relief to the prevailing party. See Martins, 2016 WL 5921770, *3-4 ("Ms. Martins has won her battle by having the non-judicial foreclosure vacated."); Bangs v. Quality Loan Servs. Corp., No. 6:12-cv-1543-AA (D. Or. Mar. 8, 2013) (with foreclosure enjoined, case deemed moot and dismissed; under totality of circumstances, including plaintiff's default, no attorneys' fees awarded); Nash v. GMAC Mortg., LLC, C.A. No. 10-493S; 2011 WL 2470645, *13-14 (D.R.I. May 18, 2011) (with auction cancelled and no new auction date scheduled, foreclosure action is moot).

Based on the foregoing, I recommend that Counts I and II be dismissed. However, because it remains conceivable that Plaintiff can articulate plausible facts sufficient to state a breach of contract or of the covenant of good faith and fair dealing, I recommend that he be afforded thirty days from the date of the adoption of this report and recommendation to amend. If he fails to do so or if the amended complaint is still deficient, I recommend that it be dismissed.

### B. Violation of the Truth in Lending Act

In Count III, Plaintiff alleges that the three Defendants failed to send him periodic monthly statements as required by TILA for residential mortgage loans, including during the one-year period prior to the amendment of the complaint. ECF No. 1-2 ¶ 40; 15 U.S.C. § 1640(e). Somewhat inconsistently, the complaint alleges that "[n]one of these statements have been sent to the Plaintiff in conformity with [TILA] in the past year." ECF No. 1-2 ¶ 40. Then, in direct contradiction to this claim of no statements in the relevant time period, Count III asserts the conclusory charge that "each of the

twelve statements sent to Plaintiff ... in the year prior to the filing of the amended complaint" stated an inaccurate amount of principal, interest, and escrow. Id. ¶¶ 43, 45. While the Complaint sets out the TILA requirements at some length, id. ¶¶ 41-42, beyond the conclusory allegation that the statements were "inaccurate," the nature of the TILA violation within the relevant time period is left to the reader's imagination. [12] Id. ¶ 41.

**\*7** Probably because the Complaint omits any reference to the fact that the loan in issue was discharged in bankruptcy, the Complaint does not explain how the TILA claim of no periodic statements is viable when the law is clear that periodic statements are not required for a discharged loan. [13] See 12 C.F.R. § 1026.41(e)(5) (servicer exempt from requirements if consumer "on the mortgage loan is a debtor in bankruptcy"); In re McConnie Navarro, 563 B.R. 127, 146 (Bankr. D.P.R. 2017) ("The periodic statement is not required for any portion of the mortgage debt that is discharged under applicable provisions of the U.S. Bankruptcy Code."). For TILA remedies, Plaintiff seeks statutory TILA damages; he claims that he has an actual injury but does not explain what it may be, apart from the attorneys' fees and expenses he incurred as a result of asserting the TILA violation during this litigation. ECF No. 1-2 ¶ 47. Despite making the claim that it was Mellon and Nationstar that failed to send statements or sent inaccurate statements, Count III seeks judgment only from "John Doe and the actual owner of the mortgage loan."

Plaintiff's TILA claims are doomed by their vague and conclusory nature and their lack of plausibility, particularly in light of the reality that the loan has long since been discharged. 12 C.F.R. § 1026.41(e)(5). They also should be dismissed (with leave to amend) because they are asserted only against John Doe. [14] Each of these deficits is an independent reason why I recommend that the TILA claims be dismissed. However, arcing over all is Plaintiff's failure to allege actual, imminent, concrete and particularized injury-in-fact. This deficit requires dismissal because Plaintiff's Complaint fails to establish Article III standing. Spokeo, 136 S. Ct. at 1549-50 (plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.... [N]ot all inaccuracies cause harm or present any material risk of harm."). Post-Spokeo decisions make clear that this requirement applies to TILA; that is, a complaint that alleges a technical TILA violation, but fails to allege a concrete or particularized injury, must be dismissed. Davidson v. PNC Bank, N.A., CAUSE No. 1:16-cv-569-WTL-MPB, 2016 WL 7179371, \*1 n.1 (S.D. Ind. Dec. 16, 2016) (citing Spokeo but relying on Twombly, TILA claim dismissed despite potentially inaccurate mortgage payoff statement because no actual injury in light of prior letter with accurate information); see Zia v. Citimortgage, Inc., Case No. 15-cv-23-26, 2016 WL 5369316 (S.D. Fla. 2016) (based on Spokeo, consumer claim dismissed based on technical violation of New York statute prohibiting delay in recording of mortgage discharge).

**\*8** According to the Complaint, Plaintiff's only injury is the attorneys' fees, costs and expenses he incurred in asserting his TILA claim. [15] While these would be recoverable if there has been a TILA violation, 15 U.S.C. § 1640(a)(3), they are not a substitute for the injury-in-fact required by Spokeo. If they were, they would subsume the injury-in-fact requirement since, apart from *pro se* claims, every TILA complaint requires the expenditure of attorneys' fees. See Zia, 2016 WL 5369316, at \*7 (if claim for statutory remedies enough to establish injury-in-fact, "Spokeo would be meaningless"). With no plausible injury-in-fact other than the attorneys' fees and costs in prosecuting the TILA claim alleged as his only actual injury, it is clear that Plaintiff's TILA claims are barred by Spokeo.

For these reasons, pursuant both to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(1), I recommend that Count III be dismissed, provided that Plaintiff should be afforded thirty days from the adoption of this report and recommendation to file an amended TILA claim. If he fails to do so, or if the amended claim is still deficient, the TILA claim should be dismissed. [16]

### C. Violation of Fair Debt Collection Practices Act

In Count IV, Plaintiff makes the conclusory claim that Nationstar, alleged to be a "debt collector," committed an FDCPA violation by sending Plaintiff periodic statements and payoff statements that misstated the amount of the debt within the year preceding the filing of the Complaint, which is the relevant FDCPA time period. ECF No. 1-2 ¶¶ 51, 54; 15 U.S.C. § 1692k(d). The Complaint clarifies that the inaccuracy in the monthly statements (but not the payoff statements) results from the inclusion of Nationstar's "legal fees and costs and other expenses." However, the Complaint does not clearly allege that the challenged statements were sent in the relevant period. ECF No. 1-2 ¶¶ 54-55.

For an actual injury, Plaintiff vaguely claims that his "mortgage account has been charged for improper legal fees,

expenses and costs"; he does not elucidate whether those fees and expenses currently appear on the mortgage account, nor does the Complaint explain why the appearance of such fees and costs on the mortgage account is wrongful [17] nor why their inclusion has caused him a concrete and particularized injury. There is no suggestion in the Complaint that Plaintiff ever paid the improper charges. Otherwise, like the TILA claim, Plaintiff's FDCPA claim seeks statutory damages and the attorneys' fees and expenses incurred in making the FDCPA claim. ECF No. 1-2 ¶ 56.

**\*9** I find that Count IV's vagueness and reliance on conclusions without plausible facts to support them renders it insufficient to cross the Twombly/Iqbal threshold. In addition, like the TILA claims, Plaintiff's FDPCA claims are subject to the Spokeo injury-in-fact requirement. Prindle v. Carrington Mortg. Servs., LLC, Case No. 3:13-cv-1349-J-34PDB, 2016 WL 4369424, at \*16-17 (M.D. Fla. Aug. 16, 2016) (FDCPA claim dismissed despite claim that mortgagee sent inaccurate statements). As crafted, it is impossible for the Court (or the named Defendants) to ascertain what is the real FDCPA claim or what the actual FDCPA injury might be. [18] If Plaintiff intends to allege that, during the relevant period, Nationstar wrongfully tried to add the attorneys' fees incurred during the abandoned foreclosure process to the mortgage balance, he must say so clearly and articulate how that causes injury.

Accordingly, pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(1), I recommend that Count IV be dismissed, but that Plaintiff first may have thirty days to amend his FDCPA claim. If he fails to do so, or if the amended claim remains deficient, it should be dismissed. [19]

## V. CONCLUSION

Based on the foregoing, I recommend that the motion to dismiss (ECF No. 2) brought by Defendants Mellon and Nationstar be granted, provided that Plaintiff Christopher Pemental first be afforded thirty days from the adoption of this report and recommendation to amend his Complaint. If he fails to do so; or to the extent that any claim in his amended pleading still fails to state a claim; or, as to his claims arising under TILA and FDCPA, to the extent that he fails plausibly to allege injury-in-fact as required by Spokeo, I recommend that the Court enter an order of dismissal. Alternatively, if the Court does not adopt my recommendation regarding Counts III and IV, I recommend that the motion for more definite statement should be granted.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 3279015

## Footnotes

1. The on-again, off-again status of the mediation requirement as applicable to Plaintiff is material to the issues in this case. The mediation statute, R.I. Gen. Laws § 34-27-3.2, was adopted in 2013 in response to the residential mortgage foreclosure surge in the wake of the 2008 economic crisis. The first iteration required mediation conferences prior to foreclosure in the cases of mortgagors who were in default for less than four months. At the time of Plaintiff's default notice, this was the effective version; therefore, the requirement did not apply because Plaintiff had been in default since 2010. ECF No. 2-4 at 4 (notice of default provides: "date of default 07/01/2010"). In 2014, the General Assembly amended the statute to cover all foreclosures. R.I. Gen. Laws § 34-27-3.2, as amended by P.L. 2014, ch. 543, § 1. Fontaine interpreted the amendment as applicable to Plaintiff, holding that the default notice did not initiate the foreclosure; rather, the court held that a mortgagee does not "initiate foreclosure" until notice of the sale is sent. Fontaine, 2015 WL 2449536, \*4. Since Plaintiff's notice of sale was sent after the amendment, it was deemed applicable. Id. In 2015, the General Assembly amended the statute yet again; the third version excludes all mortgages that were in default prior to May 16, 2013, including Plaintiff's mortgage. R.I. Gen. Laws § 34-27-3.2, as amended by P.L. 2015, ch. 155, § 1. None of the three iterations of the mediation statute provided for the recovery of attorneys' fees.

2. In this report and recommendation, the amended complaint dated August 26, 2016, which is the target of Defendants' motion to dismiss, will be referred to as the "Complaint."

3   Defendants also presented, but the Court did not consider in connection with the 12(b)(6) motion, other documents that are not mentioned in the Complaint. See Fed. R. Civ. P. 12(d); see nn.17-18, *infra*.

4   While not pertinent to the issues presented by this motion to dismiss, the Court observes that Plaintiff is named in two other cases pending in this Court arising from the failure to pay mortgages in connection with other properties in Barrington, Rhode Island. He is named as a defendant in a case brought by Mellon, one of the Defendants in this case, captioned The Bank of New York Mellon f/k/a The Bank of New York, as trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 v. Pemental, C.A. No. 17-31S (pertains to 66 and 68 County Road, Barrington, Rhode Island). Plaintiff himself recently filed Pemental v. U.S. Bank Nat'l Ass'n, et al., C.A. No. 17-39M (pertains to 193 Sowams Road, Barrington, Rhode Island).

5   Since the original complaint was filed in 2015, Plaintiff has consistently alleged that the Mellon entity he named in his complaint does not exist and only "claims to own my mortgage." See ECF No. 1-1 at 4 ¶ 3. Yet it does not appear that he relied on these allegations as a basis for seeking to block the foreclosure nor has he marshaled them as the foundation for stating a plausible claim. In the current version of the Complaint, these allegations float unresolved in the background. Based on the pleading, it is impossible to tell whether they are a mere distraction or purport to be part of the foundation of a plausible claim.

6   The note is mentioned in the mortgage, which is attached to the Complaint. Accordingly, the Court may consider this document without converting this motion to one for summary judgment. In re Demers, 511 B.R. 233, 237 (Bankr. D.R.I. 2014) ("the Note and the Mortgage constitute one agreement and must be read and construed together."); see Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).

7   In re Mailman Steam Carpet Cleaning Corp., 196 F.3d 1, 8 n.2 (1st Cir. 1999) (in deciding 12(b)(6) motion to dismiss, court may refer to matters of public record).

8   The date of default appears in the 2013 default notice, to which the Complaint obliquely refers. ECF No. 2-4 at 4-6. As noted in the text, Plaintiff has clarified that the Complaint's confusing reference to "[n]o default notice" is meant to refer to the copy of the notice of default proffered by the named Defendants. Accordingly, I consider that default notice to be incorporated by reference in the Complaint in connection with this motion to dismiss. Beddall, 137 F.3d at 17.

9   In briefing and argument, the parties devoted substantial energy to discussing all the ways in which the 2013 default notice might or might not be flawed. With nothing plausible in the Complaint to explain how a moot notice of default in connection with an enjoined foreclosure can be the basis for a breach of contract claim and nothing beyond the conclusory assertion that the notice failed to comply with Paragraph 22, I will not address these arguments in this report and recommendation.

10  Under Rhode Island law, a claim for breach of the implied covenant of good faith and fair dealing may stand on its own as long as there is also a viable claim for breach of contract. T.G. Plastics Trading Co. Inc. v. Toray Plastics (Am.), Inc., 958 F. Supp. 2d 315, 326 (D.R.I. 2013). The implied covenant is the commitment of the parties to a contract to deal fairly and in good faith so that the contractual objectives may be achieved. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 66 F. Supp. 2d 317, 329 (D.R.I. 1999). Count II, which relies on the implied covenant, appears to be based on little more than a relitigation of the now moot failure to send the mediation notice that was addressed and resolved by Fontaine.

11  Reaching back to the nineteen and early twentieth centuries, e.g., Fenley v. Cassidy, 43 A. 296 (R.I. 1899), and relying on cases involving serious inequities such as malfeasance by the mortgagee at the foreclosure sale, e.g., Kebabian v. Shinkle, 59 A. 743, 744 (R.I. 1904) (mortgagee persuaded buyers not to attend sale), Plaintiff argues that his mortgagee owed him "an extreme duty of good faith," which was breached by the void default notice. The named Defendants correctly point out that, while such a duty may have been recognized in a previous era in limited circumstances, it has long since been subsumed by the twenty-first century obligation of the mortgagee strictly to comply with the notice requirements of the mortgage. See Martins v. Fed. Hous. Fin. Agency, C.A. No. 15-235-M-LDA, 2016 WL 5921770 (D.R.I. 2016). The analysis in this report and recommendation is based on Martins, not on Fenley or Kebabian.

12  Elsewhere the pleading complains of the addition of Nationstar's attorneys' fees and unspecified costs in connection with the now-abandoned foreclosure effort. ECF No. 1-2 ¶ 55. That allegation is missing from the TILA Count.

13  To address this deficit, Plaintiff points to his inconsistent claim that the statements were sent but were inaccurate. The law is unsettled on whether TILA applies in such a circumstance, that is, when statements not required by TILA are sent but do not properly reflect the TILA-required information. Compare Roth v. Nationstar Mortg., LLC, Case No: 2:15-cv-783-FtM-29MRM, 2016 WL 3570991, at *7 (M.D. Fla. July 1, 2016) (even though TILA did not require statement because of bankruptcy discharge, TILA claim not dismissed), with Marley v. Bank of Am., Civil Action No. 10-10885-GAO, 2012 WL 4461132, at *1 (D. Mass. Sept. 25, 2012) (after discharge, there is no mortgage loan and no borrower so TILA is not applicable). The confusion is exacerbated by an amendment to the relevant section of Regulation Z, which was promulgated as the events relevant to this case were unfolding. Resolution of this legal question would require this Court

14  to wade into murky waters. If Plaintiff restates Count III so that it is clear that he has a plausible TILA claim based on materially (in the TILA sense) inaccurate periodic statements in the year preceding the amendment of the Complaint that cause injury-in-fact, the Court will be required to do so. As drafted, the Complaint is too vague to squarely frame the issue.

14  The naming of a John Doe defendant is disfavored. Under Rhode Island law, a plaintiff has a duty of diligence to identify, name and serve any Doe defendants. Grossi v. Miriam Hosp., 689 A.2d 403, 404 (R.I. 1997). In cases arising under federal law, courts should dismiss the claim against a Doe defendant if a plaintiff has failed to make reasonable inquiry regarding the identity of the Doe despite an opportunity to do so. Stratton v. City of Boston, 731 F. Supp. 42, 45 (D. Mass. 1989) (although Federal Rules do not explicitly prohibit fictitious names for defendants, action dismissed with leave to amend because ignorance results from lack of reasonable inquiry); see Chute v. City of Cambridge, 201 F.R.D. 27, 29 (D. Mass. 2001) (critical that parties be properly identified to provide complete clarity as to who they are and in what capacity they are being sued). This case has been pending against John Doe since March 2015, yet Plaintiff still purports to be unable to name and serve the entity or person who owns his mortgage. This alone is enough to require dismissal with leave to amend the TILA claim as to which John Doe is the only defendant from whom Plaintiff is seeking judgment. It must also be noted that, although the First Circuit has yet to rule definitively on the issue, most circuit courts of appeal have held "that Rule 15(c)'s relation back provisions do not apply where a plaintiff seeks to amend a complaint to identify 'John Doe' defendants." Thompson v. Glodis, No. CIV.A. 10-40126-TSH, 2013 WL 5524807, at *2 (D. Mass. Oct. 2, 2013). Thus, Plaintiff may have statute of limitations problems if he tries now to amend Count III to state the TILA claim against Nationstar, or some other entity.

15  Plaintiff claims that actual TILA damages arise from the addition of "improper legal fees, expenses and costs" at some unspecified point in time to the mortgage account. ECF No. 1-2 ¶ 47(c). As a TILA injury, this claim is not plausible— the alleged TILA misconduct is focused on the periodic statements sent during the year prior to the amendment to the Complaint, not what appeared at some time in the past on the "mortgage loan account."

16  The named Defendants alternatively seek a more definite statement to require Plaintiff to clarify his TILA claim, by supplying the dates of the erroneous statements, as well as by identifying how they violate TILA so as to cause injury. If the District Court disagrees with my recommendation that the TILA claim be dismissed with leave to amend, the motion for more definite statement should be granted.

17  The named Defendants argue that the mortgage permitted every cost and expense charged on the statements and that the Complaint's vagueness makes it impossible for them to ascertain what he alleges is wrongful, except for the attorneys' fees in connection with the abandoned 2015 foreclosure. See Demers, 511 B.R. at 239 (mortgagee not entitled to charge its legal fees where it failed to satisfy condition precedent to its right to foreclose). As to the latter charge, Defendants have submitted documents that they contend establish that the fees were removed from the account; they argue that the Complaint fails clearly to assert that those charges were still present in the relevant period. While these documents may not be considered on a 12(b)(6) motion to dismiss, Defendants argue, and I agree, that the vagueness of Count IV makes it impossible for them to ascertain what are the charges in issue so that they can marshal the appropriate defense. When a complaint is too vague to afford "fair notice of what the claim is and the grounds on which it rests," it must be dismissed. Iqbal, 556 U.S. at 678.

18  The Court observes that a Spokeo dismissal is based on Fed. R. Civ. P. 12(b)(1), which does not limit the Court to consideration only of the content of the pleadings. Fed. R. Civ. P. 12(d) ("matters outside the pleadings" may not be considered on 12(b)(6) and 12(c) motions). Therefore, while the documents referenced in note 17, *supra*, may not be credited as authentic or accurate, Katz, 672 F.3d at 70, the Court may consider the issue they raise—that the named Defendants have submitted documents that they claim are sufficient to show that the attorneys' fees were permitted by Paragraph 22 when they first appeared on the mortgage account, that they were arguably rendered improper by Fontaine, and that they were deleted from the mortgage account, leaving Plaintiff with no plausible claim of actual injury-in-fact. For the FDCPA claim in this Complaint to avoid Spokeo, it must be amended to state a claim with sufficient specificity to overcome this problem.

19  As with the TILA claim, the named Defendants alternatively seek a more definite statement to require Plaintiff to restate his FDCPA claim, by specifically identifying what it is that he claims was done improperly and how it caused injury. If the District Court disagrees with my recommendation that the FDCPA claim be dismissed with leave to amend, the motion for more definite statement should be granted.

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.