**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**DOLORES CEPEDA**

     **VS**                    **CA: 19-cv-5 WES-PAS**

**BANK OF AMERICA, N.A.**
**FAY SERVICING, LLC**
**WILMINGTON TRUST NATIONAL ASSOCIATION**
**SOLEY AS TRUSTEE FOR THE MFRA TRUST 2014-2 , ALIAS**


## MEMORANDUM OF LAW IN SUPPORT OF OBJECTIONTO MOTION FOR SUMMARY JUDGMENT

     This matter is before the Court on the Defendant's Motion to Summary Judgment. The Plaintiff has alleged claims for Breach of Contract, Breach of R.I.G.L 34-27-3.1 for failure to provide a Notice of Foreclosure Counseling at least 45 days prior to a Notoice of Sale, Violation of the Fair Debt Collection Practices Act and Violation of theTruth in Lending Act by failing to provide the Plaintiff accurate statements. The Defendants have filed a Memorandum of Law and an affidavit of a purported servicing employee which Plaintiff contends should be stricken as unsupported hearsay. Plaintiff has submitted an affidavit which raises genuine issues of material fact as to the default notices. For the reasons which follow, the Motion should be denied.


**THE DEFENDANT DID NOT COMPLY WITH THE TERMS OF PARAGRAPH 22 OF THE MORTGAGE**

     Orlans PC ("Orlans") without signing the letter, on November 15, 2018, indicated in the attached Exhibit B that Wilmington Trust was bringing a foreclosure proceeding and that it had scheduled a public auction foreclosure sale for 7th day of January, 2019 at

3:00 PM.  Neither Orlans, Fay, Bank of America nor Wilmington Bank  Plaintiff  a notice pursuant to the provisions of paragraph 22 of the mortgage and have not accelerated the note.  Plaintiff has never been sent a default notice from the owner of the note or mortgage.

The provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage.  There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above.  Any alleged exercise of the statutory power of sale to Plaintiff was defective because a default notice and a valid acceleration notice were never sent as required by paragraph 22 of the mortgage.       Fay mailed Plaintiff  a letter dated December 12, 2017, which it claimed to be a default notice.  A copy is attached as Exhibit C. This letter did not comply with Paragraph 22 of my mortgage. Paragraph 22 (c) of the mortgage required a default notice which specified:

**(c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured**

However this letter did not specify a particular date for the cure date.

Instead it stated:

To cure the default, you must pay the full amount of the default on this loan by 01/19/2018(or if said date falls on a Saturday, Sunday or legal holiday, then on the first business day thereafter.

Plaintiff was not provided a specific and unequivocal  date to cure the loan. The mortgage required that Plaintiff be provided the following information:

**that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.**

2

This letter instead stated:

Failure to cure the default on or before this date may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding where applicable, and sale of the property.

The reference to foreclosure by judicial procedure indicates that Fay would commence a legal action against Plaintiff as provided by Rhode Island law.          Later in the letter, Fay again indicated that the purpose of the letter was to eventually commence a foreclosure proceeding:

If foreclosure proceedings are undertaken, we may pursue a deficiency judgment

This notice referenced that failure to cure a default would result in a foreclosure proceeding, not an action in which the mortgagee could exercise the statutory power of sale. It was not strictly compliant with the terms of the mortgage for several reasons, thus rendering any nonjudicial foreclosure void.

The affidavit of the Plaintiff establishes a genuine issue of material fact regarding the validity of the purported default letters mailed to the her. If these letters did not strictly comply with the terms of the mortgage, the Defendant could not accelerate and exercise the statutory power of sale. she established genuine issues  by stating:

13.      Paragraph 22 (c) of my mortgage required a default notice which specified:

**(c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured**

14.       However this letter did not specify a particular date for the cure date. Instead it stated:

To cure the default, you must pay the full amount of the default on this loan by 01/19/2018(or if said date falls on a Saturday, Sunday or legal holiday, then on the first business day thereafter.

3

15.    I was not provided a specific and unequivocal  date to cure the loan.

16.    The mortgage required that I be.provided the following information:

**that    failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.**

17.    This letter instead stated:

Failure to cure the default on or before this date may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding where applicable, and sale of the property.

18.    The reference to foreclosure by judicial procedure indicates to me that Fay would commence a legal action against me as provided by Rhode Island law.

19.    Later in the letter, Fay again indicated that the purpose of the letter was to eventually commence a foreclosure proceeding:

If foreclosure proceedings are undertaken, we may pursue a deficiency judgment

20.    This letter indicated that I owed a Corporate Advance Balance of $67.50.

21.    These fees consisted of property preservation fees.

22.    No persons came to my house to preserve the property.

22.    I had consistently contacted Bank of America and Fay Servicing, through my attorney and by submitting a loan modification package to Rhode Island Housing.

23.    At all times after August 1, 2017 I was in regular contact with Bank of America and Fay Servicing, through letters by my attorney. These letters made it clear to Fay that I was living in my home.

24.    These fees for property preservation were charged to my mortgage loan account despite the fact that no property preservation occurred at my home and no work was done at my home . Thus this purported default letter was not accurate by including these fees.

25.    This letter did not specify an exact payment to be made. Instead it also stated:

Please note any additional monthly payments, late charges and other charges that may be due under the Note, Security Instrument and applicable law after the date of this

notice must also be paid to bring your account current. You may contact our Loss Mitigation Department at 8004957166 to obtain updated payment information.

26.     Nothing in my mortgage requires that I had to call Fay to obtain an accurate payment for the arrearage.

27.     The letter from Fay indicated where I had to send the arrearage.

28.     It indicated that I had the right to reinstate after acceleration.

29.     However it deceptively did not state that this right would expire five days prior to the date of the sale, as indicated in my mortgage.

30.     I saved the money that Fay stated that I owed due to the fact that Fay refused to accept payments from me shortly after it commenced servicing.

31.     The letter from Bank of America dated September 14, 2017 was not a default letter mailed pursuant to the terms of my mortgage.

32.     The mortgage provided that I had to be mailed a default letter with a specific date to cure.

30.     However this letter did not provide me a specific date to cure.  Instead it stated:

You have the right to cure the default. To cure the default, on or before October 24, 2017, Bank of America, N.A. must receive the amount of $5287.20 plus any additional regular monthly payments

31.     This was not a specific date to cure because it stated that I had to cure on or before October 24, 2017, which included every date from the date I received the letter until October 24, 2017.

32     This letter thus included dates within thirty days of the date of the letter.

33.     The mortgage provided that I had to be provided a specific date to cure which was at least thirty days from the date that the letter was deposited in the mail.

34.     This letter also deceptively stated that I could not cure this arrearage unless I made the payment of $5287.20 plus any additional regular monthly payment or payments, late charges, fees and charges which become due on or before October 24, 2017. It stated:

**Please contact the Home Loan Team at 800.669.1904 to verify the amount necessary to cure the default and bring your loan current.**

5

35.     This letter deceptively did not provide me an actual amount to cure and deceptively indicated that I could not cure the loan without calling Bank of America, N.A. to obtain the correct amount.

36.     This letter included two property inspection fees which were charged to my loan account.

37.     No person came to my house to inspect the property.  I requested verification of any property inspection fees, through a letter by my attorney.

38.     Thus this letter was not an accurate default letter pursuant to the terms of the mortgage.

39.     This letter indicated that an unidentified noteholder was authorized to collect fees and expenses from me.

40      Bank of America identified the owner of the mortgage note as Bank of America, California, as indicated by Exhibit D.

41.     This letter deceptively did not advise me that I could cure the mortgage arrearage no later than 5 days before the sale.

42.     Bank of America never accelerated my mortgage loan.

Thus in view of the case law regarding mortgage defaults, the Plaintiff has raised genuine issues of material fact regarding the default letter, its accuracy and the amounts due alleged to be in arrears.

Strict compliance with the terms of the contract, is a condition precedent at indicated in the case of *Cinq-Mars v. Travelers Ins. Co.,* 218 A.2d 467, 471(R.I. 1966). In that case, the Court interpreted an insurance contract and held:

It is, of course accepted law that compliance with such a policy condition is a condition precedent to an insurer's liability. Sherwood Ice Co. v. U.S. Casualty Co., 40 R.I. 268; 8 Appleman, Insurance Law & Practice, § 4732, p. 7.

In the case of *Haviland v. Simmons,* 45 A.3d 1246 (R.I., 2012), the Rhode Island Supreme Court decided that if there was any ambiguity in a contract, that such issue had to be resolved at trial:

Where an ambiguity exists in a provision of a contractual 1259*1259 document, the construction of that provision is a question of fact." *Fryzel v. Domestic Credit Corp.,* 120 R.I. 92, 98, 385 A.2d 663, 666 (1978) (citing *Geary v. Hoffman,* 98 R.I. 413, 417, 204 A.2d 302, 305 (1964); *Russolino v. A. F. Rotelli & Sons,* 85 R.I. 160, 163, 128 A.2d 337, 340 (1957)). We are of the opinion that, although an express
agreement was entered into, based on our review of the contract in its entirety, an ambiguity exists concerning the terms of the agreement relative to the standard under which Haviland's reappointment is to be evaluated.

*Haviland*, at pp. 1258-1259 The language in the mortgage, which was a condition precedent was not complied with by the Defendants.

In the case of *Abbenante v. Giampietro,* 75 R.I. 349, 353, 66 A.2d 501, 503

(1949), the Supreme Court review a notice case in which a specific date was not provided

for a Notice to Quit. A question existed as whether the tenant had to quit on the next day

after his tenancy terminated on February 29, 1949. The Court held:

We are unable to agree with this contention. If plaintiffs were demanding the premises freed of the existing tenancy at $25 a month defendant was entitled to an **unequivocal** notice to quit on the day next succeeding the last day of such tenancy.

Thus the Court held that in a Notice case, for a notice to be effective it had to be

unequivocal as to the time of compliance, which did not occur in this case.

In the case of *Hedco v. Blanchette*, 763 A. 2d 639 (R.I., 2000), the Rhode Island

Supreme Court upheld this principle when it held:

In considering the sufficiency of a termination notice, we have repeatedly stated [**8] that "the important factor is whether the statute has been complied with and not whether the tenant has been misled by the notice given." *Tate v. Peter Charles Reynolds, Inc.,* 622 A.2d 449, 450 (R.I. 1993) (per curiam) (citing *De Luca v. Cinima,* 72 R.I. 346, 350, 51 A.2d 369, 370-71 (1947)). Although a tenant may be clearly apprised of the termination of his lease, we have determined a notice to be fatally defective when it ordered the tenant to quit on the last day of his term instead of the first day following it, *Industrial Trade Unions of America v. Metayer,* 69 R.I. 199, 203, 32 A.2d 789, 790-91 (1943), or when it did not clearly indicate that an agent was acting on behalf of the landlord. *Tate,* 622 A.2d at 450.

The Court held:

7

Because service of a valid and proper notice to quit is a condition precedent to maintaining a trespass and ejectment action, plaintiff failed to properly invoke the jurisdiction of the court. *See Abbenante v. Giampietro,* 75 R.I. 349, 353, 66 A.2d 501, 503 (1949) (holding that *HN8* tenancy is not terminated without proper notice, regardless of landlord's intention).

Thus the Court held that in a Notice case, for a notice to be effective it had to be unequivocal as to the time of compliance, which did not occur in this case.

A review of this notice indicates that it was defective.  It did not reference a specific date for the Defendant to cure the arrearage. Rather the letter stated that the arrearage had to be cured on or before October 24, 2017. Thus there was no specific date to cure as the phrase on or before includes every date from the date of the letter until October 24, 2017.  The notice did not specify a particular date, by which the cure amount had to be paid or face acceleration by Bank of America and sale of the mortgaged premises. No person could determine from the letter the actual date on which to cure. This letter was deceptive because it did not specify an exact date to cure, only a range of dates from the date of the letter until October 24, 2017.  Thus there was not strict compliance with the terms of the mortgage as required by Rhode Island as developed in regard to contracts and notices, which are conditions precedent to the exercise of certain contractual rights.

This Court, in *Martins v. Federal Housing Finance Agency*, No. 15-cv-235-M-LDA followed established Rhode Island law and held that strict compliance was required for paragraph 22 notices just like any other contracts. *Martin s*involved a Judicial Foreclosure in Federal Court. The Court held:

In Rhode Island, if a contract contains a notice requirement, then a court construes that notice requirement as a condition precedent, which requires strict compliance. *Cinq-Mars v. Travelers Ins. Co.,* 218 A.2d 467, 471 (R.I.

1966) (requirement of written notice for a claim by the insured is a "condition precedent to the insurer's liability."); *Ins. Co. of N. Am. v. Kayser-Roth Corp.,* No. C.A. PC 92-5248, 1999 WL 81366, at *22 (R.I. Super. July 29, 1999) (stating that notice requirements are a condition precedent in insurance contracts); *Dyer v.Ryder Student Transp. Servs., Inc.,* No. 98-4489, 1999 WL 395417, at *2 (R.I.Super. June 7, 1999) ("If notice by a tenant is not given to a landlord in accordance with the terms of the lease, the right to renew has been lost or has lapsed. . . .").

Furthermore, Paragraph 22 of the Mortgage is a condition precedent, which requires strict compliance, when a mortgagee seeks acceleration and foreclosure. *In re Demers,*511 B.R. 233, 238, 239 (Bankr. D.R.I. 2014) (holding that a notice omitting a borrower's right to go to court to contest acceleration was fatal, and that even if notice to go to court was ambiguously provided, that ambiguity must be construed against the drafter).

*Martins* was quite specific:

Defendants now seek to foreclose on the Property through an order from this Court, instead of non-judicially. The change of process for the foreclosure, however, does not alleviate compliance with the agreement they made in the Mortgage, including the Paragraph 22 notice requirements. Despite the fact that the judicial foreclosure statute, R.I. GEN. LAWS § 34-11-22, does not expressly require compliance with the Mortgage document, the Rhode Island Supreme Court has stated that "the right to exercise the power of sale in a mortgage is derived from contract, not statute," and that the power of sale "does not exist independently" from the mortgage agreement. *Bucci v. Lehman Bros. Bank,FSB,* 68 A.3d 1069, 1084, 1085 (R.I. 2013). Simply put, if a mortgagee agrees togive a certain notice before a foreclosure, it does not matter whether it is a judicial or non-judicial foreclosure. The mortgagee must do that which it agreed. Thus, this Court must review compliance with Paragraph 22 of the Mortgage as a matter of contract law, irrespective of whether Defendants are seeking judicial or nonjudicial foreclosure.

This Court granted Summary Judgment to the homeowner stating:

There is no genuine issue as to any material fact concerning whether Fannie Maecomplied with the Mortgage Agreement. It did not. At the least, the notices failed, on their face, to specify an exact date by which Ms. Martins could cure default, that she could reinstate the loan after acceleration, and that she has a right to bring court action. With respect to these elements of the notice, there is no plausible way that a jury could find for Defendants, and the notice is indeed material, as it determines whether Defendants have complied with the Mortgage Agreement.

The Court also stated:

In real estate contracts, when required notice fails to specify particular dates, inform the borrower of his or her right to reinstate a loan after acceleration, or inform the borrower of the ability to bring a court action to contest acceleration or foreclosure, that

9

notice is insufficient. *In re Demers,* 511 B.R. at 239; *Hedco, Ltd. v. Blanchette,* 763 A.2d 639, 642, 643 (R.I. 2000) (failing to specify the termination date in a lease by providing the exact date by which tenant could pay was fatal to required notice); *see also* 55 Am. Jur. 2d Mortgages § 539 ("Because .. . power to sell . . . by foreclosure sale is derived from the deed of trust and statute, strict compliance with the notice requirements is considered a prerequisite . . . and noncompliance with these requirements can render a foreclosure sale void.").

This Memorandum of law also addresses issues raised by the recent First Circuit case of *Thompson v. JPMorgan Chase Bank, N.A.* CA. No. 18-1559, which was decided on February 8, 2019 and set forth relevant requirements for strict compliance with the terms of the mortgage, which were not complied with in this case.   The  First Circuit in  *Thompson v. JPMorgan Chase Bank, N.A.* CA. No. 18-1559 was decided on February 8, 2019  set forth relevant requirements for strict compliance with the terms of the mortgage, which were not complied with in this case.  In *Thompson*, the First Circuit reversed the dismissal by the District Court and reversed a foreclosure sale due to the fact that the purported default notice failed to notify the mortgagor of the limitations of the right to reinstate. The Court held that due to the strict compliance required under Massachusetts law and the obligation not to provide language in the notice which was deceptive, the failure to advise the mortgagor that reinstatement could occur no later than five days before the scheduled sale was fatally defective. It also held that there was no need to demonstrate prejudice arising from said failure to notify the mortgagor.

The vacating of *Thompson,* however was an indication by the Court that it was concerned that the general principle advanced in *Thompson* might run counter to Massachusetts law. This notice did not contain the language, which evidently was mandated by Massachusetts regulations.   The Order vacated the original Opinion due to a concern that due to the fact that for the first time in the case, Chase and other

intervenors from the banking industry raised the existence of a regulation which required

a form to be mailed, which the First Circuit had found deceptive. However the Court

expressed skepticism about this issue which was raised for the first time after the opinion:

> Chase then filed a petition for panel rehearing or rehearing en banc, claiming for the first time that a state banking regulation, 209 C.M.R. § 56.04, required Chase to use the precise language it had used in its notice to the Thompsons. This is a debatable position: the form notice that follows in section 56.04 also includes language apprising homeowners that "[e]nclosed with this notice, there may be additional important disclosures related to applicable laws and requirements that you should carefully review." Id.

It should be noted that the reason for the distress among the Massachusetts banking

industry was the mandatory use of the Banking Regulation form 209 C.M.R. § 56.04,

which is attached to this Memorandum. There is no similar regulation in Rhode Island.

In fact the First Circuit in the original *Thompson* opinion did not have any reference to

the regulation and issued an opinion which applied to any mortgages to which strict

compliance was mandated by state law.

> It should be noted that in the Order the Court reaffirmed its holding in the original

Opinion that in the event of Strict Compliance with the language of the mortgage there is

no need to demonstrate prejudice by the mortgagor. The opinions of this Court in

*Martins*, *Boynton* and *Dan-Harry* have clearly stated that Rhode Island requires strict

compliance with the terms of the mortgage. In *Thompson*, the First Circuit stated:

> At no time did the Thompsons argue that they had been misled by the inaccuracy or had in any way been prejudiced by it; but under binding state precedent **it is enough that some hypothetical mortgagor could have been misled** by the inaccurate pre-foreclosure notice. (emphasis added)

Thus either of the two defective default notices render purported foreclosure void and

Summary Judgment should be denied as they were not in compliance with the terms of

the mortgage.

**PLAINTIFF WAS NOT PROVIDED A NOTICE OF FORECLOSURE COUNSELING 45 DAYS PRIOR TO THE MAILING OF THE NOTICE OF SALE**

As indicated by the Plaintiff's affidavit, no earlier than September 27, 2018, a

purported Notice of Foreclosure Counseling was mailed to Plaintiff pursuant to R.I.G.L.

34-27-3.1. Thus thePlaintiff has not been provided a Notice of Foreclosure Counseling

pursuant to the provisions of R.I.G.L 34-27-3.1, which states:

## § 34-27-3.1. Foreclosure counseling.

(a) No less than forty-five (45) days prior to initiating any foreclosure of real estate pursuant to subsection 34-27-4(b), the **mortgagee shall provide to an individual consumer mortgagor** written notice of default and the mortgagee's right to foreclose by first class mail at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices.

(b) The written notice required by this section shall be in English and Spanish and, provided the same is then available, shall advise the mortgagor of the availability of counseling through HUD-approved mortgage counseling agencies and, the toll-free telephone number and website address maintained to provide information regarding no-cost HUD-approved mortgage counseling agencies in Rhode Island. The written notice may also contain any other information required under federal law. A form of written notice meeting the requirements of this section shall be promulgated by the department of business regulation for use by mortgagees at least thirty (30) days prior to the effective date of this section. Counseling shall be provided at no cost to the mortgagee.

(c) Failure of the mortgagee to provide notice to the mortgagor as provided herein shall render the foreclosure void, without limitation of the right of the mortgagee thereafter to reexercise its power of sale or other means of foreclosure upon compliance with this section. The mortgagee shall include in the foreclosure deed an affidavit of compliance with this section.

(d) As used herein and in this chapter, the term "HUD" means the United States Department of Housing and Urban Development and any successor to such department.

The Plaintiff's affidavit states:

43.     No earlier than September 27, 2018, two purported Notices of Foreclosure Counseling were deposited in the mail to be mailed to me.

12

44.     A copy of each letter and each envelope for each letter is attached as Exhibit E and Exhibit E-1.

45.     Each letter was a letter mailed to me from Troy Michigan, which were provided to me on  October 2, 2018  by regular mail.

46.      October 2, 2018 was a Monday and was the 44th day prior to the November 15, 2018 Notice of Sale which was mailed to me.

47.     The September 27, 2018 date on the envelopes for these letters indicates that these letters were mailed using the Neopost mailing system as indicated on the envelope.

48.     The postage which was printed is dated September 27, 2018, not September 26, 2018.

49.     These letters were not deposited in the United States mail on September 26, 2018.

50.     The earliest that these letters were deposited in the United States mail was September 27, 2018..

51.     I did not receive this letter until  October 2, 2019.

52.     I was not provided these letters or any other letters at least 45 days prior to the purported Notice of Sale, which was dated November 15, 2018.

53.     The statute provides that failure to provide me with this letter at least forty five days before the Notice of Sale will render the sale void.

The statute requires that the notice be provided at least 45 days before the notice

of sale is mailed, not that it be mailed.          Exhibit E  is a letter mailed to Plaintiff from

Troy Michigan, which was provided to her after October 1, 2018  by regular mail.  This

letter as indicated by her affidavit was provided too late as it at the best was received on

October 2, which was 44 days before the November 15, 2018 Notice of Sale.

Plaintiff was not provided this letter at least 45 days prior to the purported Notice

of Sale, which was dated November 15, 2018.  The statute provides that failure to

**provide** the homeowner/Plaintiff with this letter at least forty five days before the Notice

of Sale will render the sale void.          Under Rhode Island law, she would thus be able to

file an action to set aside the sale.

The word "provide" is defined by Black's Law Dictionary as follows:

**PROVIDE**

**1. An act of furnishing or supplying a person with a product. 2. The allocation of resources, being money or goods, to allow a project to proceed to completion or the next stage.**

The "provide" is also defined by MacMillian's Dictionary as "to give

someone something that they want or need". Provide is not synonymous with deposit into

the mail as in R.I.G.L. 34-11-22, which allows the statutory power of sale to be exercised

by mailing:

But if default shall be made in the performance or observance of any of the foregoing or other conditions, or if breach shall be made of the covenant for insurance contained in this deed, then it shall be lawful for the mortgagee or his, her or its executors, administrators, successors or assigns to sell, together or in parcels, all and singular the premises hereby granted or intended to be granted, or any part or parts thereof, and the benefit and equity of redemption of the mortgagor and his, her or its heirs, executors, administrators, successors and assigns therein, at public auction upon the premises, or at such other place, if any, as may be designated for that purpose in this deed, or in the published notice of sale first **by mailing** written notice of the time and place of sale by certified mail, return receipt requested, to the mortgagor, at his or her or its last known address, at least twenty (20) days for mortgagors other than individual consumer mortgagors, and at least thirty (30) days for individual consumer mortgagors, prior to first publishing the notice, including the day of the mailing in the computation (emphasis added)

This statute clearly requires that there be proof that the mortgagor receive this

Notice.  Defendants suggest that the dictionary definition of provide means deposit in the

mail. However the Rhode Island Supreme Court has clearly interpreted the phrase

"provide to" as meaning actual delivery within the time limits.  In *City of Pawtucket v. Laprade*, 94 A. 3rd 503 (R.I., 2014), the Court reviewed an action under the Law Enforcement Officers Bill of Rights. That statute specifically states:

**§ 42-28.6-5. Conduct of hearing.**

(a) The hearing shall be conducted by the hearing committee selected in accordance with § 42-28.6-4 of this chapter. Both the law enforcement agency and the law enforcement officer shall be given ample opportunity to present evidence and argument with respect to the issues involved. Both may be represented by counsel.

(b) The hearing shall be convened at the call of the chair; shall commence within thirty (30) days after the selection of a chairperson of the hearing committee; and shall be completed within sixty (60) days of the commencement of the hearing. The hearing committee shall render a written decision within thirty (30) days after the conclusion of the hearing. The time limits established in this subsection may be extended by the presiding justice of the superior court for good cause shown.

(c) Not less than ten (10) days prior to the hearing date, the charging law enforcement agency shall provide to the law enforcement officer:

(i) A list of all witnesses, known to the agency at that time, to be called by the agency to testify at the hearing;

(ii) Copies of all written and/or recorded statements by such witnesses in the possession of the agency; and

(iii) A list of all documents and other items to be offered as evidence at the hearing.

(d) Not less than five (5) days prior to the hearing date, the law enforcement officer shall provide to the charging law enforcement agency a list of all witnesses, known to the officer at that time, to be called by the officer to testify at the hearing.

(e) Failure by either party to comply with the provisions of subsections (c) and (d) of this section shall result in the exclusion from the record of the hearing of testimony and/or evidence not timely disclosed in accordance with those subsections.

The Court clearly held that the term provide for the purposes of the statute

required actual delivery before a particular date:

On July 11, 2011—nine days before the scheduled hearing **and one day after** the statutory deadline set forth in § 42-28.6-5(c)—the city provided Laprade with a list of

15

witnesses and evidence that the city planned to present at the hearing.[3] That same day, Moreau returned from vacation and discovered that he had a conflict with the July 20 hearing date. Moreau also learned that a medical issue had arisen with a family member of the city's legal counsel that also conflicted with the hearing date. Finally, Moreau was notified that the city's delivery of the witness and evidence list would not comply with LEOBOR unless the hearing date was continued. Based on these circumstances, Moreau contacted the committee chair and requested that the hearing date be continued "a day or two" to avoid any conflicts. Moreau further stated that, if the hearing committee could not meet on one of those days, Lee should "consider drafting a letter to the [Presiding Justice] requesting an extension of time." Lee, however, responded that legal counsel for Laprade had objected to changing the hearing date, but had offered to hold the meeting on July 20 anytime between 6 a.m. and 9 p.m. As a result, Lee confirmed that, while the timing was subject to change, the hearing would proceed on July 20 as originally scheduled.

The Supreme Court  granted the Petition for Certioria and reversed the trial Justice because the evidence had not been provided at least 10 days prior to the hearing. Thus the term provide to was interpreted by the Supreme Court as to give to a person, not to mail to a person.

The Plaintiff's affidavit establishes that she did not receive a Notice of Foreclosure Counseling at least 45 days before the Notice of Sale, dated November 15, 2018. Provide is synonymous with delivery. If the General Assembly had wanted to start the 45 day period upon mailing it would have indicated the term "mailed" instead of provide.  The Defendant cites the mail box rule without citing proper Rhode Island cases. There is no suggestion by the Plaintiff that she did not receive the notice. Rather the mailing of the letter did not establish the date that it was received or provided to the Plaintiff. In Larocque v. Rhode Island Joint Insurance Company, 536 A.2d 529, 531-2 (1988)the Supreme Court distinguished between "giving" notice and "mailing" notice. Giving requires actual notice whereas mailing requires only the act of depositing into the mail. The Court held:

The distinction between the requirements of giving notice and mailing notice has been stated by one court:

532*532 "`"[G]iving notice' is not the same requirement as `mailing notice' and demands more. Even where facts show that a cancellation notice was mailed to the insured, if the policy demands that notice be `given' and the notice was never received, the notice is ineffective as a valid cancellation." *Rocque,* 140 Vt. at 325, 438 A.2d at 386.

Here there is a temporal requirement of 45 days prior to the Notice of Sale of November 15, 2018. The presumption of receipt after mailing does not create any presumption as to the date of delivery. The affidavit of the Plaintiff establishes that this letter was received on October 2, 2018 which was less than 45 days prior to the Notice of Sale. Thus the Plaintiff has raised a genuine issue of material fact rendering summary judgment inappropriate.

## THE PLAINTIFF WAS NOT MAILED A NOTICE OF MEDIATION AS REQUIRED BY THE PROVISIONS OF R.I.G.L. 34-27-3.2

As indicated by her affidavit, Plaintiff was not sent a Notice of Mediation from the purported mortgagor, Wilmington Trust pursuant to R.I.G.L 34-27-3.2. This statute provides:

(d) The mortgagee shall, **prior to initiation of foreclosure of real estate pursuant to § 34-27-4(b),** provide to the mortgagor written notice at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices, that **the mortgagee may not foreclose on the mortgaged property without first participating in a mediation conference**. Notice addressed and delivered as provided in this section shall be effective with respect to the mortgagor and any heir or devisee of the mortgagor.. .

(m) No deed offered by a mortgagee as a result of a mortgage foreclosure action under power of sale shall be submitted to a city or town recorder of deeds for recording in the land evidence records of the city or town until and unless the requirements of this

17

section are met. **Failure of the mortgagee to comply with the requirements of this section shall render the foreclosure voidable, without limitation of the right of the mortgagee thereafter to re-exercise its power of sale or other means of foreclosure upon compliance with this section.** The rights of the mortgagor to any redress afforded under the law are not abridged by this section. (emphasis added)

Wilmington Trust claims to be the mortgagee and definitely did not send Plaintiff a Notice of Mediation as required by the Mediation Statute. This mortgagee had the obligation to mail a mediation notice pursuant to the clear and undisputed language of the statute. The mortgagee which seeks to exercise nonjudicially must mail a Notice of Mediation as a precondition to the mailing of a Notice of Sale pursuant to R.I.G.L 34-27-4. This is a procedure which must be complied with by the mortgagee which seeks to avail itself and schedule a nonjudicial foreclosure. The language of the statute is undisputed that this is a prerequisite, which must be followed prior to mailing out such a notice of sale. Whatever a prior mortgagee did in the past has no relevance or bearing on this statute, which was amended effective July 1, 2018.

This statute mandates a procedure prior to the initiation of a nonjudicial foreclosure. The preface of the statute makes it clear what the legislative intent behind the statute is:

(a) *Statement of policy.* It is hereby declared that residential mortgage foreclosure actions, caused in part by unemployment and underemployment, have negatively impacted a substantial number of homeowners throughout the state, creating a situation that endangers the economic stability of many of the citizens of this state as the increasing numbers of foreclosures lead to increases in unoccupied and unattended buildings and the unwanted displacement of homeowners and tenants who desire to live and work within the state.

(b) *Purpose.* The statutory framework for foreclosure proceedings is prescribed under the provisions of chapter 27 of this title. As the need for a mortgage mediation process has evolved, it is important for the state to develop a standardized, statewide process for foreclosure mediation rather than a process based on local ordinances that may vary from municipality to municipality. By providing a uniform standard for an early HUD-

approved, independent counseling process in owner-occupied principal residence mortgage foreclosure cases, the chances of achieving a positive outcome for homeowners and lenders will be enhanced.

(c) *Definitions.* The following definitions apply in the interpretations of the provisions of this section unless the context requires another meaning:

(1) "Default" means the failure of the mortgagor to make a timely payment of an amount due under the terms of the mortgage contract, which failure has not been subsequently cured.

(2) "Department" means the department of business regulation.

(3) "Good faith" means that **the mortgagor and mortgagee** deal honestly and fairly with the mediation coordinator with an intent to determine whether an alternative to foreclosure is economically feasible for the mortgagor and mortgagee, as evidenced by some or all of the following factors:

(i) **Mortgagee provided notice** as required by this section;

(ii) **Mortgagee designated an agent to participate in the mediation conference on its behalf and with the authority to agree to a work-out agreement on its behalf;**

(iii) Mortgagee made reasonable efforts to respond in a timely manner to requests for information from the mediation coordinator, mortgagor, or counselor assisting the mortgagor;

(iv) Mortgagee declined to accept the mortgagor's work-out proposal, if any, and the mortgagee provided a detailed statement, in writing, of its reasons for rejecting the proposal;

(v) Where a mortgagee declined to accept the mortgagor's work-out proposal, the mortgagee offered, in writing, to enter into an alternative work-out/disposition resolution proposal that would result in net financial benefit to the mortgagor as compared to the terms of the mortgage.

(4) "HUD" means the United States Department of Housing and Urban Development and any successor to such department.

(5) "Mediation conference" means a conference **involving the mortgagee and mortgagor**, coordinated and facilitated by a mediation coordinator whose purpose is to determine whether an alternative to foreclosure is economically feasible to both the mortgagee and the mortgagor, and if it is determined that an alternative to foreclosure is economically feasible, to facilitate a loan workout or other solution in an effort to avoid foreclosure.

(6) "Mediation coordinator" means a person employed by a Rhode Island-based, HUD-approved counseling agency designated to serve as the unbiased, impartial, and independent coordinator and facilitator of the mediation conference, with no authority to impose a solution or otherwise act as a consumer advocate, provided that such person possesses the experience and qualifications established by the department.

(7) "Mortgage" means an individual consumer first-lien mortgage on any owner-occupied, one (1)- to four (4)- unit residential property that serves as the mortgagor's primary residence.

(8) "Mortgagee" means the holder of a mortgage, or its agent or employee, including a mortgage servicer acting on behalf of a mortgagee.

(9) "Mortgagor" means the person who has signed a mortgage in order to secure a debt or other duty, or the heir or devisee of such person provided that:

(i) The heir or devisee occupies the property as his or her primary residence; and

(ii) The heir or devisee has record title to the property, or a representative of the estate of the mortgagor has been appointed with authority to participate in a mediation conference.

This language indicates that the purpose of the statute is that a mortgagee cannot utilize the statutory power of sale without first mailing the mortgagor, who lives in the property, of the availability of mediation. There would be no logic to this statute if it meant that once a mortgagor has been provided a notice of mediation by another mortgagor, that the opportunity for mediation has ceased. Each mortgagee clearly must comply with the statute regardless of any prior mediation between the mortgagor and a prior mortgagee. There is no language in the statute which remotely indicates such an interpretation.

The Rhode Island Supreme Court in the case of *In Re BH* (No 2012-322, October 19, 2018)  restated its long standing analysis for statutory construction:

[W]e review questions of statutory interpretation *de novo*." *State v. Hazard,* 68 A.3d 479, 485 (R.I. 2013) (quoting *Campbell v. State,* 56 A.3d 448, 454 (R.I. 2012)). In so doing, our ultimate goal is to give effect to the purpose of the act as intended by the Legislature. *State v. Santos,* 870 A.2d 1029, 1032 (R.I. 2005). "[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must

give the words of the statute their plain and ordinary meanings." *Id.* (quoting *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I. 1996)). If, however, the language of a statute is ambiguous, this Court turns to "our well-established maxims of statutory construction in an effort to glean the intent of the Legislature."[11]

In *Lawless v. Steward Health Care System, LLC*, 894 F. 3d 9 (First Cir.,2018), the

First Circuit cited similar principles:

When statutory terms are "`plain and unambiguous' in their meaning, we view them as `conclusive as to legislative intent.'" Dorrian v. LVNV Funding, LLC, 479 Mass. 265, 94 N.E.3d 370, 375 (2018) (quoting Water Dep't of Fairhaven v. Dep't of Envtl. Prot., 455 Mass. 740, 920 N.E.2d 33, 37 (2010)). If, however, the meaning of a statute is not readily apparent from its language, "[w]e look to the intent of the Legislature `ascertained from all its words ... considered in connection with the cause of [the statute's] enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.'" Id. (quoting DiFiore v. Am. Airlines, Inc., 454 Mass. 486, 910 N.E.2d 889, 893 (2009)).

Case law in this Court has also made the same holding. In deciding the meaning

of the statutory obligation in Rhode Island for disabled and nondisabled students, this

Court in *H.S. et al v. R.I. Board of Education*, 251 S. Supp. 3d (D.R.I., 2017), analyzed

the statute in a similar manner :

[A] statute ordinarily will be construed according to its plain meaning."[19] Courts "examin[e] the plain meaning of the statutory language and consider[ ] the language in the context of the whole statutory scheme."[2]

This statutory scheme is quite clear. A mortgagee must provide mediation prior to

mailing a Notice of Sale, provided that the loan is not in default prior to May 15, 2013.

There is no provision in this law, which provides that a prior mortgagee's compliance is

somehow transferred to the mortgagee seeking to foreclose. The language is clear and

ambiguous and is capable of only one interpretation:

Mediation is mandatory in this case and it was not afforded the Plaintiff by the

mortgagee seeking to exercise the statutory power of sale.The Plaintiff lives in the

premises and the purported date of default on this loan is purportedly August, 2017. Since March, 2018, Fay Loan Servicing, LLC has refused to accept any payments of the Plaintiff and has mailed all the payments that she has made back to her. The mortgagee clearly did not send a mediation notice as required prior to mailing the notice of sale, not once but twice.

The suggestion that the assignment of mortgage assigned to the Defendant a grandfather right for mediation which Bank of America had possessed is belied by the clear language of the statute.  Mediation is not a right or power, but instead is an obligation placed by the General Assembly.  The case of *Ingram v.Mortg. Elec Registration Systems, Inc,* 94 A. 2d 523 (R.I., 2014)  merely held that when a mortgage was assigned, the assignee possessed the statutory power of sale, which was assigned to it. The General Assembly held that prior to mailing a Notice of Sale, a mortgagee had to provide the mortgagor the opportunity to mediate as a condition precedent to the exercise of the statutory power of sale.  The right to ignore a statute is not something that can be assigned. The clear language of the statute must be followed as it is there for a reason, namely to protect a homeowner when a mortgagee seeks to exercise the statutory power of sale.

Plaintiff has raised a genuine issue of material fact by  her affidavit. The failure of the Defendants to comply with the terms of the mortgage renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the statutory ability to conduct this foreclosure.

**THE FDCPA ACTION HAS NOT BEEN ADDRESSED BY THE SUMMARY JUDGMENT MOTION AND THAT PORTION OF THE MOTION SHOULD BE DENIED**

The Plaintiff alleged that Fay Servicing, LLC violated the Fair Debt Collection

Practices Act by using unfair means to collect a debt against the Plaintiff. The Defendant

has denied in its answer all but one of the allegations of this  count of the complaint:

112.    Fay  is a debt collector as defined by 15 USC 1692 et seq.  since January 5, 2018
has committed several violations of the Fair Debt Collection Practices Act ("FDCPA")
and is liable to the Plaintiffs for compensatory damages, statutory damages, and attorney
fees and costs for violations.

113.    The primary business of Fay is the collection of debts.

115    Fay  has used unfair and unconscionable means to collect or attempt to collect a
debt against the Plaintiff.

116.    Fay, through its attorney,   has threatened to commence and has claimed to have
commenced a non-judicial foreclosure to effect dispossession of the Plaintiff  of her
property  even though Deutsche Bank had  no present right to possession of the property
claimed as collateral through an enforceable security interest.

117.     It also made a threat to take legal action which could not legally be taken.
Specifically it stated, through its attorney, by the letter dated November 15, 2018  that a
Mortgage Foreclosure sale of the Plaintiff's property by statutory power of sale would
occur on  January 7, 2019.

118.     It also made a threat to take legal action which could not legally be taken.
Specifically it stated, through its attorney, by the letter dated July 23, 2018  that a
Mortgage Foreclosure sale of the Plaintiff's property by statutory power of sale would
occur on  September 23, 2018.

119.    The November 15, 2018 threat to conduct a Mortgage Foreclosure Sale on
January 7, 2018 was a deceptive action on the part of Fay due to the failure to provide an
accurate default notice and due to the fact the Plaintiff was not mailed a Notice of
Mediation nor was provided a Notice of Foreclosure Counseling at least 45 days prior to
the date the purported Notice of Sale dated November 15, 2018 was mailed to the
Plaintiff.

120.    The July 23, 2018 threat to conduct a Mortgage Foreclosure Sale on September
23, 2018 was a deceptive action on the part of Fay due to the failure to provide an
accurate default notice and due to the fact the Plaintiff was not mailed a Notice of
Mediation nor was provided a Notice of Foreclosure Counseling at any time prior to the
date the purported Notice of Sale dated July 23, 2018 was mailed to the Plaintiff.

121.    Each of these actions of Fay  was a  violation of 15 U.S.C. 1692e(5).

122.    The facts alleged in this complaint establish that Wilmington Trust did not have the present right to possession of the property claimed as collateral through an enforceable security interest.

123.    As alleged above, Fay violated 15 U.S.C 1692e(5) by threatening to take legal action which it could not take.

124.    Fay  also violated section 1692e of the FDCPA by using false deceptive and misleading representations or means in connection with the collection of this alleged debt. Fay  made false representations regarding the character and legal status of the debt, namely that the loan had been accelerated and that Wilmington could exercise the statutory power of sale.

125.    All the actions of Fay,  alleged in this complaint, were designed to compel the Plaintiff to pay monies to Fay on behalf of Wilmington Trust,  individually and through its attorney, on behalf of the alleged owner of the note and mortgage under the false threat of foreclosure of their home unless they made such a payment to Fay, through its attorney on behalf of  the  entity, which claimed to own the  note.

126.    15 U.S.C. § 1692(f) provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

127.     15 U.S.C. § 1692(d) provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

128    Fay violated 15 U.S.C. § 1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

129.    Fay  violated 15 U.S.C. § 1692(d) by employing an unfair and unconscionable means to collect the subject debt.

130.    Fay conduct  has caused Plaintiff to suffer great emotional distress driven by the fear that she might lose hereir  home which has resulted in loss of sleep, anxiety, depression, and embarrassment.

131.    Fay's conduct was outrageous, willful, and wanton, and it showed a reckless disregard for Plaintiff's rights.

132.    The Plaintiff has incurred  actual damages as a result of the violations of the FDCPA:

    a.    She has  incurred costs of mailing and postage and attorney fees and costs to respond to these false communications.

b.      Her mortgage loan account has been charged unreasonable fees
and expenses

c.      She has suffered emotional damages for embarrassment and
humiliation by two advertisings of a foreclosure of her home.

d.      She has incurred legal fees to communicate with Fay's attorney to
cancel both improper attempted sales.

e.      Her  mortgage loan account has been charged unreasonable fees
and costs for uncorroborated and unreasonable and unnecessary property
inspections and improper legal fees and costs. Such costs have rendered a
modification of the mortgage loan or reinstatement of the mortgage loan
more expensive to the Plaintiff, who submitted a loan modification
application to Fay.

133.    As a result of the above described acts of Fay it  is liable to the Plaintiff for actual
damages, statutory damages, attorney's fees and costs.

134.    Plaintiff has incurred legal fees in this action.

The Defendant did not deny the allegation of paragraph 114 which stated:

114.    At the time Fay commenced servicing Plaintiff's  mortgage loan account, Plaintiff
was delinquent on her mortgage.

Its answer was:

114. Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations contained in this paragraph.

If the Defendant could in state the status of the Plaintiff's loan at the time that it

commenced servicing, then it clearly did not accurately state the amount due when it took

over from Bank of America as servicer. This would render all its statements and

purported default letter inaccurate.

Recently the First Circuit Court of Appeals analyzed the Business Records

exception in  the *US Bank National Association v. Jones*, 18-1719(May 30, 2019)

references FRE 803(6) and records of prior mortgage services and  is the basis for

Defendant's Motion to Strike the Affidavit of Joseph K. Scully, the purported affiant in

the Summary Judgment motion in this case and is a basis for the Summary Judgement

defense.  In *Jones*, the Court analyzed the hearsay rule and whether the testimony of a

Caliber Loan Servicing employee and an exhibit referencing the status of the loan after

two prior servicers was properly admitted under the hearsay rule business record's

exception FRE 803(6).  The issue in *Jones* was whether there was a sufficient foundation

under 803(6) for the current loan servicer employee to testify about the status of the

mortgage loan account and how it was boarded into the electronic system of record of the

current servicer.  In *Jones*, there was live testimony of a witness at a foreclosure trial. The

Court set forth the criteria for the admission of records of another servicer.  The Court

held:

[W]hether a third party's records . . . can be integrated into the records of the offering entity . . . for purposes of admission under the business records exception **is not an issue upon which this circuit has reached a uniform conclusion**" covering every instance. United States v. Savarese, 686 F.3d 1, 12 (1st Cir. 2012). **Rather, the admissibility of the evidence turns on the facts of each case.**

Thus, we have affirmed the admission of business records containing third-party entries without third-party testimony where the entries were **"intimately integrated**" into the business records, FTC v. Direct Marketing Concepts, Inc., 624 F.3d 1, 16 n.15 (1st Cir. 2010), or where the party that produced the business records "**relied on the [third-party] document and documents such as those[] in his business,**" United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992) (internal quotation marks omitted). Conversely, in the absence of third-party evidence**, we have rejected the admission of business records containing or relying on the accuracy of third-party information integrated into the later record where, for example, the later business did not "use[] a procedure for verifying" such information, lacked a "self-interest in assuring the accuracy of the outside information,**" United States v. Vigneau, 187 F.3d 70, 77 & n.6 (1st Cir. 1999) (emphasis omitted), or sought admission of third-party statements made "by a stranger to it," Bradley, 891 F.3d at 35 (quoting Vigneau, 187 F.3d at 75 (alterations omitted)). The key question is whether the records in question are "reliable enough to be admissible." Direct Marketing Concepts, 624 F.3d at 16 n.15..

The Court reviewed the testimony of the trial witness and noted:

In answering that question, we are mindful that the "**reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation**." Fed. R. Evid. 803 advisory committee's note to 1972 proposed rules. The rule seeks "to capture these factors and to extend their impact" by applying them to a "regularly conducted activity." Id (emphasis added).

The District Court had received testimony from a loan servicer employee who had

testified that:

 **Caliber incorporated the previous servicer's records into its own database and "plac[ed] its own financial interest at stake by relying on those records," and that "Caliber's acquisition department took steps to review the previous servicer's records in a way that assured itself of the accuracy of the records**." 330 F. Supp. 3d 530, 543 (D. Me. 2018); see Trial Tr. 28:3-6, 60:17-19.

(emphasis added)

The Court also noted that the mortgagor did not dispute the transaction history by

claiming overbilling or unrecorded payments not contested the findings of the District

Court that there were no discrepancies.

In view of *Jones*, the affidavit of Stephane Cejas should be disregarded

and stricken by the Court. She has merely performed a formulaic recitation of the

business records e Recently the First Circuit Court of Appeals analyzed the Business

Records exception in  the *US Bank National Association v. Jones*, 18-1719(May 30,

2019) references FRE 803(6) and records of prior mortgage services and  is the basis for

Defendant's Motion to Strike the Affidavit of Joseph K. Scully, the purported affiant in

the Summary Judgment motion in this case and is a basis for the Summary Judgement

defense.  In *Jones*, the Court analyzed the hearsay rule and whether the testimony of a

Caliber Loan Servicing employee and an exhibit referencing the status of the loan after

two prior servicers was properly admitted under the hearsay rule business record's

exception FRE 803(6).  The issue in *Jones* was whether there was a sufficient foundation

under 803(6) for the current loan servicer employee to testify about the status of the

mortgage loan account and how it was boarded into the electronic system of record of the

current servicer.  In *Jones*, there was live testimony of a witness at a foreclosure trial. The

Court set forth the criteria for the admission of records of another servicer.  The Court

held:

[W]hether a third party's records . . . can be integrated into the records of the offering
entity . . . for purposes of admission under the business records exception **is not an issue
upon which this circuit has reached a uniform conclusion**" covering every
instance. United States v. Savarese, 686 F.3d 1, 12 (1st Cir. 2012). **Rather, the
admissibility of the evidence turns on the facts of each case.**

Thus, we have affirmed the admission of business records containing third-party entries
without third-party testimony where the entries were "**intimately integrated**" into the
business records, FTC v. Direct Marketing Concepts, Inc., 624 F.3d 1, 16 n.15 (1st Cir.
2010), or where the party that produced the business records "**relied on the [third-party]
document and documents such as those[] in his business**," United States v. Doe, 960
F.2d 221, 223 (1st Cir. 1992) (internal quotation marks omitted). Conversely, in the
absence of third-party evidence**, we have rejected the admission of business records
containing or relying on the accuracy of third-party information integrated into the
later record where, for example, the later business did not "use[] a procedure for
verifying" such information, lacked a "self-interest in assuring the accuracy of the
outside information,**" United States v. Vigneau, 187 F.3d 70, 77 & n.6 (1st Cir.
1999) (emphasis omitted), or sought admission of third-party statements made "by a
stranger to it," Bradley, 891 F.3d at 35 (quoting Vigneau, 187 F.3d at 75 (alterations
omitted)). The key question is whether the records in question are "reliable enough to be
admissible." Direct Marketing Concepts, 624 F.3d at 16 n.15..

The Court reviewed the testimony of the trial witness and noted:

In answering that question, we are mindful that the "**reliability of business records is
said variously to be supplied by systematic checking, by regularity and continuity
which produce habits of precision, by actual experience of business in relying upon
them, or by a duty to make an accurate record as part of a continuing job or
occupation**." Fed. R. Evid. 803 advisory committee's note to 1972 proposed rules. The

rule seeks "to capture these factors and to extend their impact" by applying them to a "regularly conducted activity." Id (emphasis added).

The District Court had received testimony from a loan servicer employee who had

testified that:

 **Caliber incorporated the previous servicer's records into its own database and "plac[ed] its own financial interest at stake by relying on those records," and that "Caliber's acquisition department took steps to review the previous servicer's records in a way that assured itself of the accuracy of the records**." 330 F. Supp. 3d 530, 543 (D. Me. 2018); see Trial Tr. 28:3-6, 60:17-19.

(emphasis added)

The Court also noted that the mortgagor did not dispute the transaction history by

claiming overbilling or unrecorded payments not contested the findings of the District

Court that there were no discrepancies.

In view of *Jones*, the affidavit of Stephanie Cejas should be stricken and

disregarded. She has not provided any documents which indicated which records of Bank

of America, Fay orOrlans PC she reviewed. She has merely recited the business records

exception without indicating which records she reviewed and how she was able to verify

the records of Bank of America or Orlans. The assertion that the letter was mailed on

September 26, 2018 is belied by the postage for this letter indicating September 27, 2018

as the date the postage was created. It could not have been mailed on September 26, 2018

without postage.

The gist of this complaint is that twice the Defendant threatened to non-judicially

threaten to foreclose. The Plaintiff has clearly established a genuine issue of material fact

as to the July 23, 2018 threat to foreclose which caused her damages. The Defendant did

29

not address this allegation in its memorandum and thus this claim is not the subject of the

motion for summary judgment and should be denied as to that claim. The November 15,

2018 threat to foreclose undergoes the same analysis for the default notice, the failure to

provide a timely Notice of Foreclosure Counseling and a Notice of Mediation. The

Plaintiff has raised genuine issues of material fact in her affidavit and in her legal

argument and as a result summary judgment should be denied on that ground as well.

**SUMMARY JUDGMENT SHOULD BE DENIED ON THE TRUTH IN LENDING COUNT**

The Plaintiff has demonstrated in her affidavit that each of the monthly statements

contained inaccurate amounts and charges. Defendant has merely stated without any

supporting backup or evidence that the fees were reasonable and necessary to protect its

interest in the property. The affidavit indicates that the statements of the amount due

each month were all inaccurate due to the fact that Plaintiff held $3400.20 in suspense for

one year without applying it to the mortgage. She has indicated in her affidavit multiple

inappropriate legal fees derived from the two Notices of Sale by Orlans PC.

Defendant did not provide any evidence indicating whether these fees were in fact

paid, nor did it address the issue of how it determined whether these fees were

reasonable. Plaintiff's attorney states that these fees were reasonable without any

support. He also states that the property preservation fees were assessed to endure the

Property was occupied and appropriately maintained. However the Plaintiff in her

affidavit established a genuine issue of material fact when she testified that no person

came to the property and did anything to preserve the property or maintain the property.

The Truth In Lending Statute requires that accurate statements be provided to a borrower

with a penalty for failure to provide such statements. The affidavit contains no testimony

30

or records as to the reasonableness of the fees or expenses or charges or whether these charges have actually been paid. Invoices were not provided to determine the basis for the fees and charges. At least half of the legal fees were attributable to the July Notice of Sale which was not allowed by law for failure to provide a Notice of Foreclosure Counseling. The fees and records attributable to the Bank of America records were not verified by Fay. In its answer to allegation114, it stated that "Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph." If it had no knowledge or information regarding the status of the loan and whether it was in arrears, when it commenced servicing, then how could the status of the arrearage be determined in the default letter or the monthly statements? The answer simply is that it could not do so.

CONCLUSION

The Defendant's memorandum is full of conclusory assertions such as the Plaintiff's claims are" patently false, rely on defunct law and lack any legal merit" . It did not state under oath what was false and its memorandum failed to state what defunct law the Plaintiff was relying. The generalities of "lack legal merit" when unsupported by affidavit or any case law discussion render a summary judgment motion subject to dismissal. The standard of Summary Judgment is a high burden for the moving party:

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court "construe[s] the record in the light most favorable to the nonmovant and resolv[es] all reasonable inferences in that party's favor[,] . . . we can safely ignore conclusory allegations, improbable inferences, and unsupported speculation." Mulloy v. Acushnet Co., 460 F.3d 141, 145 (1st Cir. 2006), quoting Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002).

The First Circuit in the recent case of *Zeigler v Rater*, No. 18-2150 (First Cir,.

October 1, 2019) addresses Summary Judgment, which can be granted only if "the

record, construed in the light most congenial to the nonmovant, presents no genuine issue

as to any material fact and reflects the movant's entitlement to judgment as a matter of

law." McKenney v. Mangino, 873 F.3d 75, 80 (1st Cir. 2017), cert. denied, 138 S. Ct.

1311 (2018); see Fed. R. Civ. P. 56(a). ). The Plaintiff has presented evidence in this case

which raises genuine issues of material fact and challenge the unsworn assertions of the

Defendants' attorney in his memorandum. For these reasons Summary Judgment should

be denied.

DOLORES CEPEDA
By her Attorney

October 28, 2019                    /s/ John B. Ennis

JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com
CERTIFICATE OF SERVICE

I hereby certify that I emailed a copy of this Memorandum to the following on October
28, 2019:

Patrick T. Uiterwyk
Justin Shireman

/s/ John B. Ennis