UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DOLORES CEPEDA

    VS

BANK OF AMERICA, N.A.
FAY SERVICING, LLC
WILMINGTON TRUST NATIONAL ASSOCIATION
SOLEY AS TRUSTEE FOR THE MFRA TRUST 2014-2 , ALIAS

## AFFIDAVIT IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

I, Dolores Cepeda, being duly sworn, state the following:

1. I am a resident of the State of Rhode Island and formerly lived at 177 Dexter Street, Providence, Rhode Island until after the property was purportedly foreclosed on by the Defendants.

2. I executed a mortgage to Bank of America, N.A. on December 22, 2006. A copy is attached as Exhibit A.

3. Defendant, Fay Servicing, LLC ("Fay") is a limited liability company, organized pursuant to the laws of Delaware.

4. Fay is a debt collector and asserts that it is the loan servicer for the Plaintiff's mortgage

5. Defendant, Bank of America, N.A. is a National Bank. It was the former loan servicer for the Plaintiff's mortgage loan.

5. Orlans PC ("Orlans") without signing the letter, on November 15, 2018, indicated in the attached Exhibit B that Wilmington Trust was bringing a foreclosure proceeding and that it had scheduled a public auction foreclosure sale for 7th day of January, 2019 at 3:00 PM.

1

6.  Neither Orlans, Fay, Bank of America nor Wilmington Bank have sent me a notice pursuant to the provisions of paragraph 22 of our mortgage and have not accelerated the note. I have never been sent a default notice from the owner of the note or mortgage.

7.  Before an acceleration of the loan was declared, the Lender was required to send me a notice to my home address which specified:

   a.  the default;

   b.  the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

   c.  that failure to cure the default on or before the date specified in the Notice may result in the acceleration and sale of my home

   d.  the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

8.  Paragraph 22 of my mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

   **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies**

2

provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

9. The provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage. There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above.

10. Any alleged exercise of the statutory power of sale to me was defective because a default notice and a valid acceleration notice were never sent as required by paragraph 22 of the mortgage.

11. Fay mailed me a letter dated December 12, 2017, which it claimed to be a default notice. A copy is attached as Exhibit C.

12. This letter did not comply with Paragraph 22 of my mortgage.

13. Paragraph 22 (c) of my mortgage required a default notice which specified:

**(c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured**

14. However this letter did not specify a particular date for the cure date. Instead it stated:

To cure the default, you must pay the full amount of the default on this loan by 01/19/2018(or if said date falls on a Saturday, Sunday or legal holiday, then on the first business day thereafter.

3

15. I was not provided a specific and unequivocal date to cure the loan.

16. The mortgage required that I be provided the following information:

> that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.

17. This letter instead stated:

> Failure to cure the default on or before this date may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding where applicable, and sale of the property.

18. The reference to foreclosure by judicial procedure indicates to me that Fay would commence a legal action against me as provided by Rhode Island law.

19. Later in the letter, Fay again indicated that the purpose of the letter was to eventually commence a foreclosure proceeding:

> If foreclosure proceedings are undertaken, we may pursue a deficiency judgment

20. This letter indicated that I owed a Corporate Advance Balance of $67.50.

21. These fees consisted of property preservation fees.

22. No persons came to my house to preserve the property.

22. I had consistently contacted Bank of America and Fay Servicing, through my attorney and by submitting a loan modification package to Rhode Island Housing.

23. At all times after August 1, 2017 I was in regular contact with Bank of America and Fay Servicing, through letters by my attorney. These letters made it clear to Fay that I was living in my home.

24. These fees for property preservation were charged to my mortgage loan account despite the fact that no property preservation occurred at my home and no work was done at my home . Thus this purported default letter was not accurate by including these fees.

25. This letter did not specify an exact payment to be made. Instead it also stated:

> Please note any additional monthly payments, late charges and other charges that may be due under the Note, Security Instrument and applicable law after the date of this notice must also be paid to bring your account current. You may contact our Loss Mitigation Department at 8004957166 to obtain updated payment information.

26. Nothing in my mortgage requires that I had to call Fay to obtain an accurate payment for the arrearage.

27. The letter from Fay indicated where I had to send the arrearage.

28. It indicated that I had the right to reinstate after acceleration.

29. However it deceptively did not state that this right would expire five days prior to the date of the sale, as indicated in my mortgage.

30. I saved the money that Fay stated that I owed due to the fact that Fay refused to accept payments from me shortly after it commenced servicing.

31. The letter from Bank of America dated September 14, 2017 was not a default letter mailed pursuant to the terms of my mortgage.

32. The mortgage provided that I had to be mailed a default letter with a specific date to cure.

30. However this letter did not provide me a specific date to cure. Instead it stated:

> You have the right to cure the default. To cure the default, on or before October 24, 2017, Bank of America, N.A. must receive the amount of $5287.20 plus any additional regular monthly payments

31. This was not a specific date to cure because it stated that I had to cure on or before October 24, 2017, which included every date from the date I received the letter until October 24, 2017.

32. This letter thus included dates within thirty days of the date of the letter.

33. The mortgage provided that I had to be provided a specific date to cure which was at least thirty days from the date that the letter was deposited in the mail.

34. This letter also deceptively stated that I could not cure this arrearage unless I made the payment of $5287.20 plus any additional regular monthly payment or payments, late charges, fees and charges which become due on or before October 24, 2017. It stated:

**Please contact the Home Loan Team at 800.669.1904 to verify the amount necessary to cure the default and bring your loan current.**

35. This letter deceptively did not provide me an actual amount to cure and deceptively indicated that I could not cure the loan without calling Bank of America, N.A. to obtain the correct amount.

36. This letter included two property inspection fees which were charged to my loan account.

37. No person came to my house to inspect the property. I requested verification of any property inspection fees, through a letter by my attorney.

38. Thus this letter was not an accurate default letter pursuant to the terms of the mortgage.

39. This letter indicated that an unidentified noteholder was authorized to collect fees and expenses from me.

40. Bank of America identified the owner of the mortgage note as Bank of America, California, as indicated by Exhibit D.

41. This letter deceptively did not advise me that I could cure the mortgage arrearage no later than 5 days before the sale.

42. Bank of America never accelerated my mortgage loan.

43. No earlier than September 27, 2018, two purported Notices of Foreclosure Counseling were deposited in the mail to be mailed to me.

44. A copy of each letter and each envelope for each letter is attached as Exhibit E and Exhibit E-1.

45. Each letter was a letter mailed to me from Troy Michigan, which were provided to me on October 2, 2018 by regular mail.

46. October 2, 2018 was a Monday and was the 44th day prior to the November 15, 2018 Notice of Sale which was mailed to me.

47. The September 27, 2018 date on the envelopes for these letters indicates that these letters were mailed using the Neopost mailing system as indicated on the envelope.

48. The postage which was printed is dated September 27, 2018, not September 26, 2018.

49. These letters were not deposited in the United States mail on September 26, 2018.

50. The earliest that these letters were deposited in the United States mail was September 27, 2018..

51. I did not receive this letter until October 2, 2019.

52. I was not provided these letters or any other letters at least 45 days prior to the purported Notice of Sale, which was dated November 15, 2018.

53. The statute provides that failure to provide me with this letter at least forty five days before the Notice of Sale will render the sale void.

7

53. Thus I was not provided a Notice of Foreclosure Counseling in compliance with the provisions of R.I.G.L 34-27-3.1, which states:

### § 34-27-3.1. Foreclosure counseling.

(a) No less than forty-five (45) days prior to initiating any foreclosure of real estate pursuant to subsection 34-27-4(b), the **mortgagee shall provide to an individual consumer mortgagor** written notice of default and the mortgagee's right to foreclose by first class mail at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices.

(b) The written notice required by this section shall be in English and Spanish and, provided the same is then available, shall advise the mortgagor of the availability of counseling through HUD-approved mortgage counseling agencies and, the toll-free telephone number and website address maintained to provide information regarding no-cost HUD-approved mortgage counseling agencies in Rhode Island. The written notice may also contain any other information required under federal law. A form of written notice meeting the requirements of this section shall be promulgated by the department of business regulation for use by mortgagees at least thirty (30) days prior to the effective date of this section. Counseling shall be provided at no cost to the mortgagee.

(c) Failure of the mortgagee to provide notice to the mortgagor as provided herein shall render the foreclosure void, without limitation of the right of the mortgagee thereafter to reexercise its power of sale or other means of foreclosure upon compliance with this section. The mortgagee shall include in the foreclosure deed an affidavit of compliance with this section.

(d) As used herein and in this chapter, the term "HUD" means the United States Department of Housing and Urban Development and any successor to such department.

54. The November 15, 2018 Notice of Sale was not the first Notice of Sale mailed to me by Orlans on behalf of Fay and Wilmington Trust.

55. I was mailed a Notice of Sale by Orlans dated July 23, 2018. A copy is attached as Exhibit F.

56. Neither Orlans nor Fay mailed or provided me a Notice of Foreclosure Counseling prior to mailing me this Notice of Sale.

57. No such letter was mailed at any time prior to July 23, 2018 at any time.

58. Despite this failure to mail me or provide me a Notice of Foreclosure Counseling at least forty five days prior to the July 23, 2018 Notice of Sale, Fay charged me legal fees and costs for this foreclosure threat on July 23, 2018 for the following amounts, which were reflected on the monthly statement dated July 10, 2018:

Forecl/Bankr Expenses of $225.00
Forecl/Bankr Expenses of $25.00
Attorney Advances of $517.50

59. This Notice of Sale was mailed to my tenants, which caused them to refuse to pay any rent after this Notice was mailed to them Fay charged me legal fees and costs for this foreclosure threat on November 15, 2018 for the following amounts, which were reflected on the monthly statement dated December 10, 2018:

Additional improper fees were charged to me on August 15, 2018 as indicated on the September 14, 2018 statement. These fees were as follows:

    Forecl/Bankr Expenses of $53.95
    Forecl/Bankr Expenses of $25.00
    Forecl/Bankr Expenses of $300.00
    Forecl/Bankr Expenses of $48.00

60. Additional improper fees were charged to me on November 10, 2018 as indicated on the November 10, 2018 statement. These fees were as follows:

    Forecl/Bankr Expenses of $55.00
    Forecl/Bankr Expenses of $11.78

61. Despite this failure to provide me a Notice of Foreclosure Counseling at least 45 days prior to the November 15, 2018 Notice of Sale, and despite the failure to mail me a Notice of Mediation prior to this Notice of Sale, Fay charged me legal fees and costs for this foreclosure threat on

November 15, 2018 for the following amounts, which were reflected on the monthly statement dated December 10, 2018:

Forecl/Bankr Expenses of $30.00
Forecl/Bankr Expenses of $12.00

62. I was not sent a Notice of Mediation from the purported mortgagee, Wilmington Trust pursuant to R.I.G.L 34-27-3.2.

63. This statute provides:

(d) The mortgagee shall, prior to initiation of foreclosure of real estate pursuant to § 34-27-4(b), provide to the mortgagor written notice at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices, that the mortgagee may not foreclose on the mortgaged property without first participating in a mediation conference. Notice addressed and delivered as provided in this section shall be effective with respect to the mortgagor and any heir or devisee of the mortgagor...

(m) No deed offered by a mortgagee as a result of a mortgage foreclosure action under power of sale shall be submitted to a city or town recorder of deeds for recording in the land evidence records of the city or town until and unless the requirements of this section are met. Failure of the mortgagee to comply with the requirements of this section shall render the foreclosure voidable, without limitation of the right of the mortgagee thereafter to re-exercise its power of sale or other means of foreclosure upon compliance with this section. The rights of the mortgagor to any redress afforded under the law are not abridged by this section.

64. Wilmington Trust did not send me a Notice of Mediation as required by the Mediation Statute.

65. The statute provides that prior to commencing a foreclosure by statutory power of sale, the mortgagee which seeks to exercise the statutory power of sale by mailing a Notice of Sale, must first provide me a Notice of Mediation.

66. I did not receive a Notice of Mediation from Rhode Island Housing in regard to this Notice of Sale by Wilmington Trust.

10

67. Fay Servicing has not accelerated my mortgage loan by a letter to me and has not indicated in my mortgage statements that the loan has been accelerated.

68. For example on the last statement that I received, the December 10, 2018 statement, there was no indication that the loan was accelerated.

69. This statement attached to the Motion for Summary Judgement indicates that the amount due was $29,611.46 not the total amount due on the loan.

70. I did not allege in my complaint that I did not receive any periodic statements. Rather I alleged that I did not receive accurate periodic statements.

71. The December 10, 2018 periodic statement contained inaccurate charges for $1510.37 of legal fees and total fees charged of $249.47.

72. This amount included a purported property preservation fee of $14.25. No one came to my house to do any property preservation at my home on November 30, 2018 or at any other date in November or December, 2018.

73. $3400.20 was held in my mortgage loan account for suspense even though my mortgage payment was $1834.22.

74. The November 10, 2018 periodic statement contained inaccurate charges for $1453.73 of legal fees and total fees charged of $249.47.

75. This amount included a purported property preservation fee of $14.25. No one came to my house to do any property preservation at my home on October 29, 2018 or at any other date in October, 2018.

76. The October 10, 2018 periodic statement contained inaccurate charges for $1374.45 of legal fees and total fees charged of $249.47.

11

77. This amount included a purported property preservation fee of $14.25. No one came to my house to do any property preservation at my home on September 18, 2018 or at any other date in September 18, 2018.

78. The September 14, 2018 periodic statement contained inaccurate charges for $1361.95 of legal fees and total fees charged of $249.47.

79. This amount included a purported property preservation fee of $14.25. No one came to my house to do any property preservation at my home on August 14, 2018 or at any other date in August, 2018.

80. The August 11, 2018 periodic statement contained inaccurate charges for $922.50 of legal fees and total fees charged of $249.47.

81. The July 10, 2018 periodic statement contained inaccurate charges for total fees charged of $249.47.

82. This amount included a purported property preservation fee of $14.25. No one came to my house to do any property preservation at my home on July 5, 2018 or at any other date in July, 2018.

83. The June 11, 2018 periodic statement contained inaccurate charges for total fees charged of $249.47.

84. This amount included a purported property preservation fee of $14.25. No one came to my house to do any property preservation at my home on May 29, 2018 or at any other date in June or May, 2018.

85. The May 10, 2018 periodic statement contained inaccurate charges for total fees charged of $249.47.

86. This amount included a purported property preservation fee of $14.25. No one came to my house to do any property preservation at my home on April 30, 2018 or at any other date in April, 2018.

87. The April 10, 2018 periodic statement contained inaccurate charges for total fees charged of $249.47.

98. Starting in March 2018, all the monthly payments made to Fay, were returned to me.

99. I understand that the computer system of Fay is a system called MSP or Black Knight, which automatically orders and charges a property preservation fee to the mortgage loan account, if a payment is not made without any involvement from an employee. This happened in this case because even though I made payments, the system ordered these fees when the payments were not applied.

100. No reference was made in the affidavit in support of Summary Judgment, which contradicted my allegation that the primary business of Fay is the collection of debts.

101. My tenants stopped paying rent in the amount of $750.00 per month starting in September, 2018. The monthly rent was $750.00.

102. The tenants received the first Notice of Sale. They called me and said that they did not want to pay rent due to the pending foreclosure. They paid August, 2018 but did not pay any more rent.

103. At the time that Fay Servicing began servicing, I was in arrears of the mortgage.

104. My property was foreclosed on January 7, 2019 by Orlans on behalf of Fay. A foreclosure deed was recorded.

105. This affidavit has been translated to me by my son, Carlos Vasquez.

_____
DOLORES CEPEDA

Subscribed and sworn to before me on this 28th day of October, 2019.

_____
Notary Public

14