UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DOLORES CEPEDA

    VS                                                                 C.A.2019-CV-5

BANK OF AMERICA, N.A.
FAY SERVICING, LLC
WILMINGTON TRUST NATIONAL ASSOCIATION
SOLEY AS TRUSTEE FOR THE MFRA TRUST 2014-2 ,ALIAS

### REPLY MEMORANDUM OF LAW

Plaintiff, by her attorney, has moved this Court to allow her to file a Supplemental Memorandum of Law in view of the Rhode Island Supreme Court case of *Woel v. Christiana Trust,* which was decided June 2, 2020.This case extensively discusses Rhode Island contract and foreclosure law and specifically holds that strict compliance without a demonstration of prejudice applies to any mortgage foreclosure cases.   The Defendants have objected suggesting that the Woel case can only be applied prospectively. However a review of that case makes it clear that Woel's prospectiveness is limited to situations in which no case was pending and if a case was not pending to issues which had not been previously decided by case law.

The Supreme Court held in *Woel*:

The potential impact this new rule of law could have on the finality of foreclosures has not escaped us. **To the extent that this opinion is viewed as a new rule of law**, it is to be given prospective effect. See *State v.*

1

*Arpin,* 122 R.I. 643, 657, 410 A.2d 1340, 1347 (1980) (explaining that, in the past, the Court "has chosen to apply new rules of law in the manner best suited to serve the interests of justice and to avoid hardship"). Specifically, the pronouncement in this opinion applies to the case at bar **and to cases pending in the Superior Court in which this specific issue has been, or may be, raised.**

The Court cited *State v. Arpin,* in which the Supreme Court decided in 1980. In *Arpin* the Court noted that the legal test for insanity in criminal cases had been abrogated in 1979:

On February 9, 1979, after the rehearing this court abrogated the *M'Naghten* rule and formally adopted the ALI Model Penal Code test. State v. Johnson, R.I., 399 A.2d 469, 476 (1979) (Johnson II). *Arpin,* p.1347

There was United States Supreme Court constitutional support for certain criminal procedure rules to be applied prospectively. Thus the Court had applied the case prospectively *in Johnson*:

At the conclusion of *Johnson II,* this court stated that the ALI test "shall apply to all trials commenced after the date of this opinion," expressing our opinion that prospective application of the rule would best serve the interests of the criminal justice system. 399 A.2d at 478.*Johnson* at p. 1347.

No such similar limitation on applicability of the holding was made in *Woel.* In fact the Court indicated that it would apply to any cases pending in which the specific issue has been **or may be raised**. Thus to the extent that *Woel* did not create a new rule of law, it was applicable to any cases. To the

2

extent that a new rule of law was created, *Woel* applies to any pending cases in which the issues raised in *Woel* may be raised.

The Supreme Court limited *Johnson* to trials which occurred after Johnson was enacted. The Court did not want to open up the doors to a floodgate of criminal cases and which had already been adjudicated under the *M'Naghten* test for insanity. However for pending cases, in which no trial had occurred, *Johnson* and the new test for insanity was applicable, since the issues had not yet been decided by a jury. Woel did not set forth such a limitation and in fact clearly applied any new principal of law to any pending cases in the Superior Court.

To the extent that *Woel* would be considered as not applicable to Federal Court cases, Plaintiff has filed an action, after the purported sale occurred, in case number PC2019-11759 in the Superior Court pursuant to the provisions of R.I.G.L 34-27-3.2 and R.I.G.L 34-27-3.1 out of an abundance of caution in the order to file a state action pursuant to the provisions of R.I.G.L 34-27-3.2. This case could be amended to cover any of the issues which had been restated by *Woel*.

Plaintiff seeks to raise the issues referenced in *Woel*, namely that there is a distinction between cure a default and reinstate after acceleration. The Plaintiff's note specified that the default letter could only incorporate the

amount due for principal and interest up to the cure date certain specified in the default letter. However this language was not complied with because the December 15, 2017 purported default letter also included charges for escrow and fees and costs which were not authorized by the Note. The other charges are more appropriately included in an acceleration notice, not a default notice.

*Woel's* mandate of strict compliance requires that all aspects of the notices mailed to the Plaintiff must strictly comply with the terms of the mortgage and cannot be deceptive:

As a matter of contract law, strict compliance with the requirements contained in paragraph 22 is a condition precedent to acceleration and a valid foreclosure sale.

*Woel* indicated that strict compliance with all aspects of the mortgage was required, which includes an accurate amount of default. In *Woel* at page 11, the Court indicated its concern that the homeowner not be misled by the mortgagee:

Because mortgagees in Rhode Island may accelerate the mortgage and conduct a foreclosure sale without immediate judicial oversight, a strict compliance standard concerning the notice requirements prevents mortgagees from accelerating and foreclosing without first providing a notice of default that adequately informs the mortgagor of his or her rights under the mortgage contract. Strict compliance with paragraph 22 is

essential to ensuring that mortgagors are fully informed of their rights and **will not be misled** by a default notice provided by a mortgagee.

The Plaintiffs in this case were misled as to the amount of the obligation and as a result this purported default letter was defective. *Woel* distinguished between cure and reinstate:

> The language in paragraphs 19 and 22 illustrates the distinction between curing the default after acceleration and reinstating the mortgage after acceleration. Paragraph 22 explains that "the right to cure" is the mortgagor's right to pay the pre-acceleration default amount owed and thus be protected from acceleration. If the mortgagor fails to cure, then the mortgagee may accelerate the note, with the entire amount of the note immediately due and owing-not just the pre-acceleration default amount. The mortgagor may reinstate the mortgage-which would return the mortgage to its pre-acceleration status with monthly payments-by satisfying the four conditions set out in paragraph 19. Under paragraph 19, to reinstate the mortgage after acceleration, the mortgagor must: (1) cure the default; (2) cure any default of any other covenant or agreement in the mortgage; (3) **pay any expenses incurred in enforcing the security instrument, including, for example, reasonable attorneys' fees and property inspection and valuation fees**
> ; and (4) take any action as reasonably required by the mortgagee to protect its interest in the mortgage.

Thus in *Woel,* the Court noted that expenses charged to the mortgage loan account are not the proper subject of a Default Notice, pursuant to paragraph 22. Only the principal and interest due on the note are appropriate subjects of a default notice. Other fees and expenses are the subject of an acceleration notice.

The language of the note indicates in paragraph 1 of the note, attached to this Memorandum, that the Note is protected by a mortgage or Security Instrument, and which authorizes acceleration:

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

The Supreme Court in *Woel* recognized this established provision of mortgage law by noting the difference between cure the default and reinstate after acceleration. The mortgage is the security instrument, which provides collateral for a note. However the obligation arises from the Note, not the mortgage and the Note specifically requires that after acceleration, the mortgagor has an additional thirty days prior to invoking any remedy under the Security Instrument, which these defendants claim was the exercise of the statutory power of sale. The Court made it clear that acceleration had to be followed by a demand for all sums secured by the Security Instrument, the Court stated:

Paragraph 22 of the mortgage contract clearly and unambiguously required that, "prior to acceleration[, ]" the mortgagee must provide notice of default to the mortgagor and include certain information within that notice,

6

including informing the mortgagor of "the right to reinstate after acceleration[.]" As a matter of contract law, strict compliance with the requirements contained in paragraph 22 is a condition precedent to acceleration and a valid foreclosure sale.

What is more, strict compliance with the notice requirements in a mortgage is especially important given that Rhode Island is a nonjudicial foreclosure state. Because mortgagees in Rhode Island may accelerate the mortgage and conduct a foreclosure sale without immediate judicial oversight, a strict compliance standard concerning the notice requirements prevents mortgagees from accelerating and foreclosing without first providing a notice of default that adequately informs the mortgagor of his or her rights under the mortgage contract. Strict compliance with paragraph 22 is essential to ensuring that mortgagors are fully informed of their rights and will not be misled by a default notice provided by a mortgagee.[11]

Thus in addition to the requirements to cure the arrearage, before Defendants could send a Notice of Sale on behalf of the mortgagee, the Supreme Court has held that strict compliance with the mortgage and the note required the following:

1. A default letter with a specific amount of principal and interest due along with a certain date to cure and other specific language in the mortgage which was not deceptive.

2. A notice accelerating the mortgage loan, pursuant to paragraph 10 of the note providing the borrower thirty days from the date the notice is given pursuant to paragraph 15 of the mortgage to pay all sums secured by the mortgage.

7

3. This second thirty day period provided the borrower the opportunity not to cure the default of principal and interest which the default letter was limited to cure, but the other components of the sums secured by the mortgage.

4. Only after this acceleration notice was mailed and thirty days had passed could the note holder exercise the statutory power of sale.

The Supreme Court in *Woel* clearly recognized these numerous steps prior to mailing a Notice of Sale or any other action permitted by the mortgage, when it stated:

In this case, the default notice failed to inform plaintiff of the right to reinstate the mortgage after acceleration. Paragraph 22 provides that the default notice "shall" inform plaintiff "of the *right to reinstate* after acceleration[.]" (Emphasis added.) The default notice in this case, however, provided: "You have the *right to cure* the default after acceleration[.]" (Emphasis added.) These terms are not synonyms; yet a fair reading of the default notice suggests that, if plaintiff cured the default after acceleration, the mortgage would be reinstated. This is misleading, inaccurate, and, at best, incomplete.

The Defendant has not denied that an acceleration notice was not mailed. Thus Plaintiff raised this issue in the complaint as a defect in the foreclosure process and Defendants never provided an acceleration but instead in its reply to the Response to the Motion for Summary Judgment cited the case of Viera v. Bank of New York Mellon, CA. No 17-cv-523 for

8

the proposition that no secondary notice of acceleration is required to foreclose. However the Rhode Island Supreme Court in *Woel* emphasized that a separate notice of acceleration, as to which the Plaintiff has thirty days to reinstate under the terms of the note and paragraph 19 of the mortgage, is required in order exercise the statutory power of sale under Rhode Island law. Since the Court in diversity must follow Rhode Island law, *Woel* supports the Plaintiff's position on this issue.

Finally, the Court's concern for innocent purchasers for value with no knowledge of the defects in the foreclosure process are not implicated in this case. The purported purchaser is a an entity affiliated with the Defendant Trust and shares the same address.  Defendant, Wilmington Trust National Association solely as Trustee for the MFRA Trust 2014-2 ("Wilmington Trust")  claims to own Plaintiff's mortgage.  Wilmington Trust has a primary business address of 350 Park Ave, 20th Floor, New York, NY 10022 The purchaser, Sahara Property Management, LLC ("Sahara") is a limited liability company, organized pursuant to the laws of Delaware, with an address of 350 Park Avenue, 20th Floor, New York, NY 10222.

For these reasons the Motion to File a Supplemental  Memorandum in this case should be allowed.

DOLORES CEPEDA<br>
By her attorney,

July 9, 2020                               /s/ John B. Ennis
                                           JOHN B. ENNIS, ESQ. #2135
                                           1200 Reservoir Avenue
                                           Cranston, Rhode Island 02920
                                           (401) 943-9230
                                           Jbelaw75@gmail.com

**Certificate of Service**

I hereby certify that I emailed a copy of this Motion to Patrick T. Uiterwyk on July 9, 2020 and by electronic filing.

/s/ John B. Ennis