UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DOLORES CEPEDA

    VS                                       C.A.2019-CV-5

BANK OF AMERICA, N.A.
FAY SERVICING, LLC
WILMINGTON TRUST NATIONAL ASSOCIATION
SOLEY AS TRUSTEE FOR THE MFRA TRUST 2014-2 ,ALIAS

## MEMORANDUM OF LAW

This Court has allowed Plaintiff to file a Supplemental Memorandum of Law in view of the Rhode Island Supreme Court case of *Woel v. Christiana Trust,* 228 A. 3rd 339 (R.I., 2020), which was decided June 2, 2020. *Woel* extensively discusses Rhode Island contract and foreclosure law and specifically holds that strict compliance without a demonstration of prejudice applies to any mortgage foreclosure cases.

**WOEL RELIED ON EXISTING CONTRACT LAW**

In Woel, the Supreme Court noted that there is a distinction between cure a default and reinstate after acceleration. The Plaintiff's note specified that the default letter could only incorporate the amount due for principal and interest up to the cure date certain specified in the default letter. However this language was not complied with because the December 15, 2017 purported default letter also included charges for escrow and fees and

1

costs which were not authorized by the Note. The other charges are more appropriately included in an acceleration notice, not a default notice.

*Woel's* mandate of strict compliance requires that all aspects of the notices mailed to the Plaintiff must strictly comply with the terms of the mortgage and cannot be deceptive:

As a matter of contract law, strict compliance with the requirements contained in paragraph 22 is a condition precedent to acceleration and a valid foreclosure sale.

*Woel* indicated that strict compliance with all aspects of the mortgage was required, which includes an accurate amount of default. In *Woel* at page 11, the Court indicated its concern that the homeowner not be misled by the mortgagee:

Because mortgagees in Rhode Island may accelerate the mortgage and conduct a foreclosure sale without immediate judicial oversight, a strict compliance standard concerning the notice requirements prevents mortgagees from accelerating and foreclosing without first providing a notice of default that adequately informs the mortgagor of his or her rights under the mortgage contract. Strict compliance with paragraph 22 is essential to ensuring that mortgagors are fully informed of their rights and **will not be misled** by a default notice provided by a mortgagee.

The Plaintiffs in this case were misled as to the amount of the obligation and as a result this purported default letter was defective. *Woel* distinguished between cure and reinstate:

The language in paragraphs 19 and 22 illustrates the distinction between curing the default after acceleration and reinstating the mortgage after acceleration. Paragraph 22 explains that "the right to cure" is the mortgagor's right to pay the pre-acceleration default amount owed and thus be protected from acceleration. If the mortgagor fails to cure, then the mortgagee may accelerate the note, with the entire amount of the note immediately due and owing-not just the pre-acceleration default amount. The mortgagor may reinstate the mortgage-which would return the mortgage to its pre-acceleration status with monthly payments-by satisfying the four conditions set out in paragraph 19. Under paragraph 19, to reinstate the mortgage after acceleration, the mortgagor must: (1) cure the default; (2) cure any default of any other covenant or agreement in the mortgage; (3) pay any expenses incurred in enforcing the security instrument, including, for example, reasonable attorneys' fees and property inspection and valuation fees
; and (4) take any action as reasonably required by the mortgagee to protect its interest in the mortgage.

Thus in *Woel,* the Court noted that expenses charged to the mortgage loan account are not the proper subject of a Default Notice, pursuant to paragraph 22. Only the principal and interest due on the note are appropriate subjects of a default notice. Other fees and expenses are the subject of an acceleration notice.

The Supreme Court in *Woel* recognized this established provision of mortgage law by noting the difference between cure the default and reinstate after acceleration. The mortgage is the security instrument, which provides collateral for a note.  However the obligation arises from the Note, not the mortgage and the Note specifically requires that after acceleration, the mortgagor has an additional thirty days prior to invoking any remedy under

3

the Security Instrument, which these defendants claim was the exercise of the statutory power of sale. The Court made it clear that acceleration had to be followed by a demand for all sums secured by the Security Instrument, the Court stated:

> Paragraph 22 of the mortgage contract clearly and unambiguously required that, "prior to acceleration[, ]" the mortgagee must provide notice of default to the mortgagor and include certain information within that notice, including informing the mortgagor of "the right to reinstate after acceleration[.]" As a matter of contract law, strict compliance with the requirements contained in paragraph 22 is a condition precedent to acceleration and a valid foreclosure sale.
> What is more, strict compliance with the notice requirements in a mortgage is especially important given that Rhode Island is a nonjudicial foreclosure state. Because mortgagees in Rhode Island may accelerate the mortgage and conduct a foreclosure sale without immediate judicial oversight, a strict compliance standard concerning the notice requirements prevents mortgagees from accelerating and foreclosing without first providing a notice of default that adequately informs the mortgagor of his or her rights under the mortgage contract. Strict compliance with paragraph 22 is essential to ensuring that mortgagors are fully informed of their rights and will not be misled by a default notice provided by a mortgagee.[11]

Thus in addition to the requirements to cure the arrearage, before Defendants could send a Notice of Sale on behalf of the mortgagee, the Supreme Court has held that strict compliance with the mortgage and the note required the following:

4

1. A default letter with a specific amount of principal and interest due along with a certain date to cure and other specific language in the mortgage which was not deceptive.
2. A notice accelerating the mortgage loan, pursuant to paragraph 10 of the note providing the borrower thirty days from the date the notice is given pursuant to paragraph 15 of the mortgage to pay all sums secured by the mortgage.
3. This second thirty day period provided the borrower the opportunity not to cure the default of principal and interest which the default letter was limited to cure, but the other components of the sums secured by the mortgage.
4. Only after this acceleration notice was mailed and thirty days had passed could the note holder exercise the statutory power of sale.

The Supreme Court in *Woel* clearly recognized these numerous steps prior to mailing a Notice of Sale or any other action permitted by the mortgage, when it stated:

## ANALYSIS OF NOTE AND MORTGAGE WHICH ARE REQUIRED TO BE READ TOGETHER PURSUANT TO ESTABLISHED PROVISIONS OF RHODE ISLAND LAW

State law clearly holds that any ambiguities in a contract are to be interpreted against the party which addressed the contract. The mortgagee and note owner prepared this document and it is to be construed against the maker under Rhode Island law. Thus any ambiguities are to be construed against it, not the mortgagors. Rhode Island law is quite specific that when a note and mortgage are executed at the same time they had to be read together as integrated documents as stated in *Rhode Island DEPCO v. Coffey & Martinelli et al* 821 A.2d 222 (R.I., 2003):

We also have held, in *Rotelli v. Cantanzaro,* 686 A.2d 91, 94 (R.I.1996), that instruments executed in the course of a single transaction at the same time and to accomplish the same purpose should be read and construed together.

 In *Rotelli*, the Supreme Court stated:


  It has long been a general rule in this jurisdiction that instruments executed "at the same time, for the same purpose and in the course of the same transaction * * * are to be considered as one instrument and are to be read and construed together."[1] *Old Kentucky Distributing Corp. v. Morin,* 50 R.I. 163, 165, 146 A. 403, 404 (1929); *see also Maderios v. Savino,* 418 A.2d 839, 842 (R.I.1980) (promissory notes executed as part of single transaction construed together to determine the mutual rights and obligations of the parties)

Thus not only the mortgage must be reviewed to determine strict compliance, but also the provisions of the promissory note, since it was executed at the same time as the mortgage.

## THE PROMISSORY NOTE READ TOGETHER WITH THE MORTGAGE REQUIRES THAT THE DEFAULT LETTER CAN ONLY CONTAIN A DEMAND FOR PAST DUE PAYMENTS OF PRINCIPAL AND INTEREST

The terms of the promissory note clearly limited a default notice to past due payments of principal and interest. The note references the obligation to pay monthly payments. The note references periodic payments. Paragraph 6 (C) of the note specifically states the rights of the note holder to demand payment of past due principal and interest:

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount **by a certain date,** the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

Paragraph 3 of the note specifically limited the definition of monthly payments to principal and interest. The remainder of the note contains no language whatsoever as to escrow. Paragraph 6(B) also specifically defines Default as "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default." The note thus defines the default

obligation to past due payments of principal and interest. Nowhere in the note does the term "monthly payment" include any other obligation.

Paragraph 3(A) further defines monthly payments as:

I will pay principal and interest by making a payment every month"

There is no other definition of monthly payment in either the note or the mortgage, which includes within that definition as anything other than past due payments of principal and interest This definition created by the note and not the mortgage created the distinction in *Woel*. The Court held that to cure a default after acceleration was not synonymous with reinstatement after acceleration because the latter included more than mere repayment of past due principal and interest:

In this case, the default notice failed to inform plaintiff of the right to reinstate the mortgage after acceleration. Paragraph 22 provides that the default notice "shall" inform plaintiff "of the *right to reinstate* after acceleration[.]" (Emphasis added.) The default notice in this case, however, provided: "You have the *right to cure* the default after acceleration[.]" (Emphasis added.) These terms are not synonyms; yet a fair reading of the default notice suggests that, if plaintiff cured the default after acceleration, the mortgage would be reinstated. This is misleading, inaccurate, and, at best, incomplete.

The Supreme Court recognized the significant difference between curing a default and reinstating after acceleration. It noted that reinstating after acceleration involved more obligations than were contained in the curing of the default as defined in the note. The Court in *Woel* recognized the public

8

policy concerns and the contractual obligations to preclude the borrower from being misled by a deceptive reference to cure a default after acceleration by stating:

The language in paragraphs 19 and 22 illustrates the distinction between curing the default after acceleration and reinstating the mortgage after acceleration. **Paragraph 22 explains that "the right to cure" is the mortgagor's right to pay the pre-acceleration default amount owed and thus be protected from acceleration.** *Woel* pp. 346-7. (emphasis added).

The Court specified the distinction by looking at the requirements of Paragraph 19 to reinstate:

If the mortgagor fails to cure, then the mortgagee may accelerate the note, with the entire amount of the note immediately due and owing—not just the pre-acceleration default amount. The mortgagor may reinstate the mortgage—which would return the mortgage to its pre-acceleration status with monthly payments—by satisfying the four conditions set out in paragraph 19. Under paragraph 19, to reinstate the mortgage after acceleration, the mortgagor must: (1) cure the default; (2) cure any default of any other covenant or agreement in the mortgage; (3) pay any expenses incurred in enforcing the security instrument, including, for example, reasonable attorneys' fees and property inspection and valuation fees; and (4) take any action as reasonably required by the mortgagee to protect its interest in the mortgage.

Fay did not comply with the terms of the integrated note and mortgage, by including obligations for taxes and insurance in the December 15, 2017 letter, which with the payment of principal and interest computed at $1855.50 per month for the months of August 1, 2017 through December 1, 2017. However the note provided that the monthly payment due for the

9

principal and interest payment was $1488.17. This letter also made a demand not permitted by the note and mortgage, which demanded corporate advances of $67.50. It also demanded that additional monthly payments, late charges and other charges incurred after the date of the letter also had to be paid in order to bring the loan current. This letter deceptively told the Plaintiff to call Fay at a particular number, to get the exact amount of the fees, charges and other payments not appropriately in a default letter contrary to the terms of the note and the mortgage.

Fay also referenced the September 14, 2017 Bank of America letter which stated that the Plaintiff owed three monthly payments for July, August and September of 2017 of $1488.11 plus three monthly payments of escrow in the amount of $367.39 plus prior unpaid late charges of $138.15 along with total other charges and fees of $30.00. Thus this default letter included items not permitted by the note and mortgage as strictly construed. It also did not specify a specific date to cure, but instead contrary to paragraph 22(b) of the mortgage demanded a cure on or before October 24, 2017. This was not an unequivocal specific date as required by paragraph 22(B) of the mortgage. Thus this letter was defective in addition to being superceded by December 15, 2017 Fay letter.

**AN IMPROPER APPLICATION OF PLAINTIFF'S PAYMENTS TO LATE FEES IN VIOLATION OF THE TERMS OF THE MORTGAGE AND AS A RESULT THE FAY DEFAULT STATEMENT WAS NOT ACCURATE AND DIS NOT STRICTLY COMPLY WITH THE TERMS OF THE MORTGAGE**

The Bank of America default letter improperly demanded late charges of $138.15 in order to cure the default. However these charges were not included in the Fay letter. Instead Fay received a payment from Plaintiff which should have been used for the August 1, 2017 payment. Instead Fay applied $1797.45 to suspense and reduced the $138.15 late fee to $0.00 and increased the $30.00 charge to $$67.50.  This application of payments was contrary to the terms of paragraph 2 of the mortgage which states:

Thus Fay used payments from Plaintiff to improperly pay the $138.15 late charge and applied the balance of Plaintiff's payment for August 1, 2017 to suspense. This improper payment of late charges was done contrary to the terms of paragraph 3 of the mortgage, which provides that late charges can only be paid after all past due payments of principal, interest and escrow have been made. Fees and charges can only be paid after late charges.   Thus the Fay default letter, by its inaccuracy  did not strictly comply with the terms of the mortgage and was defective.

## WOEL EMPHAZIED PARAGRAPH 19 OF THE MORTGAGE

In *Woel*, the Court recognized that the note and mortgage make it clear that fees, expenses and escrow are not components of the default notice and that Paragraph 19 allows those items to be recouped if the borrower does not cure the default and seeks to reinstate after acceleration. The Court in *Woel* interpreted it this way stating that the original Motion Justice had denied an earlier motion by determining:

that the "right to reinstate after acceleration" is not equivalent to the "right to cure the default after acceleration," because curing the default is only one of multiple steps that must be taken to reinstate after acceleration.

Those additional steps necessary to reinstate after acceleration pursuant to Paragraph 19 were:

Under subParagraph (2) a borrower must after acceleration " cure any default of any other covenant or agreement in the mortgage". What were those covenants or agreement in the mortgage? The mortgage specifically requires payment of escrow on the date that periodic payments are due. These obligations are due after acceleration, under paragraph 19, not to cure the default. These included fees, which Defendants erroneously included in the default notice.

12

Under subparagraph (3) the borrower had to "pay any expenses incurred in enforcing the security instrument, including, for example, reasonable attorneys' fees and property inspection and valuation fees. These charges were also referenced in paragraph 6(E) of the Note, which states:

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include for example reasonable attorneys' fees.

Under subparagraph (4) the borrower had to "take any action as reasonably required by the mortgagee to protect its interest in the mortgage." These would include paying any obligations which came ahead of the mortgage such as housing code violations or any liens which could obtain priority to the mortgage.

Since this is a diversity case, Rhode Island law must govern the analysis, not any Federal law.  Before Fay could send a Notice of Sale on behalf of the mortgagee, *Woel* made it clear that strict compliance with the mortgage and the note required a particular procedure. Plaintiff had to be provided a default letter in strict compliance with the note and mortgage which was not deceptive and included an accurate statement of the amount due for principal and interest providing her an opportunity to cure on a

13

particularly specified date. If she did not cure, Paragraph 10 of the Note required the mortgagee or servicer acting on its behalf to send a notice accelerating the mortgage note, providing them thirty days from the date the notice was given pursuant to paragraph 15 of the mortgage to reinstate, which included all sums secured by the mortgage, not just the past amount due for principal and interest. The note provided that if she did not reinstate the note after receipt of an accurate Notice of Acceleration detailing the included the amount needed to reinstate, including the amount to cure the default, all subsequent payments and all other sums secured by the mortgage, including reasonable fees and expenses as specified in paragraph 19 of the mortgage, the mortgagee could then either exercise the statutory power of sale or seek other relief under the Security Instrument, without further demand.

### RHODE ISLAND LAW UNDER WOEL STATES THAT ACCELERATION OF THE NOTE IS A CONDITION PRECEDENT TO EXERCISE OF THE STATUTORY POWER OF SALE

The Summary Judgement Motion of Defendants, did not address the failure of Fay and Wilmington to comply with the note and mortgage, which required acceleration before exercising the statutory power of sale. The April 26, 2020 affidavit of Stephanie Cejas erroneously stated that Exhibit E, the December 15, 2017 letter, was an acceleration letter. A review of this letter

clearly establishes that it is not an acceleration letter and nowhere in this record is there any indication of the amount of the accelerated loan. Defendants have not denied that an acceleration notice was not mailed, which Plaintiff raised as a defect in the foreclosure process. They did not provide an acceleration notice, but instead cited the case of *Viera v. Bank of New York Mellon*, CA. No 17-cv-523 for the proposition that no secondary notice of acceleration is required to foreclose. However the Rhode Island Supreme Court in *Woel* emphasized that a separate notice of acceleration, as to which the Plaintiff has thirty days to reinstate under the terms of the note and paragraph 19 of the mortgage, is required in order to exercise the statutory power of sale under Rhode Island law. Since the Court in diversity must follow Rhode Island law, *Woel* supports the Plaintiff's position on this issue and made it clear of the procedural requirement of an acceleration notice before any notice of sale:

As a matter of contract law, strict compliance with the requirements contained in paragraph 22 is a condition precedent to acceleration and a valid foreclosure sale.

Fay, by not mailing a default notice, also ignored the provisions of paragraph 10 of the note which stated:

If Lender exercises the option to require immediate payment in full, **Lender shall give Borrower notice of acceleration**. The notice shall provide a period of not less than 30 days from the date the notice is given in

15

accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

In *Viera*, referenced by Defendants, the Court applied the "without further notice or demand" language was applied to post default notices and not post acceleration notices contrary to the terms of the note and contrary to the holding of the Rhode Island Supreme Court in *Woel*. This analysis states the logical order of the default and acceleration process set forth in the note an the mortgage. The note defines monthly payments as principal and interest. Failure to pay these after a default letter requires an acceleration letter to be sent in order to accelerate the loan and subsequently to exercise the statutory power of sale. The Note and Mortgage do not provide for automatic acceleration following the failure to cure past due principal and interest. Strict compliance with Paragraph 22 requires a notice which informs the borrower that failure to cure the default may result in acceleration and sale. This warning is designed to advise the borrower that if he or she does not cure the default of monthly payments of principal and interest under the terms of the note.

For these reasons, this Court is respectfully respected to review this case in view of *Woel,* which was not available when the briefing originally

16

occurred. The issue of a lack of an acceleration notice mailed to the Plaintff alone precludes Summary Judgment. In addition, the defective default notice under *Woel* and established contract law did not strictly comply with the terms of the mortgage. Thus Summary Judgement should be denied.

                                                          DOLORES CEPEDA
                                                          By her attorney,

September 9, 2020                          /s/ John B. Ennis
                                                          JOHN B. ENNIS, ESQ. #2135
                                                          1200 Reservoir Avenue
                                                          Cranston, Rhode Island 02920
                                                          (401) 943-9230
                                                          Jbelaw75@gmail.com

**Certificate of Service**

I hereby certify that I emailed a copy of this Motion to Patrick T. Uiterwyk on September 9, 2020 and by electronic filing.

/s/ John B. Ennis