UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DOLORES CEPEDA, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) C.A. No. 1:19-CV-00005-MSM-PAS <br> ) |
| BANK OF AMERICA, N.A.; FAY SERVICING, LLC; and WILMINGTON TRUST NATIONAL ASSOCIATION SOLELY AS TRUSTEE FOR THE MFRA TRUST 2014-2, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court are two dispositive motions in this action involving alleged breach of contract and statutory violations concerning the plaintiff, Dolores Cepeda's, mortgage. The defendant Bank of America, N.A. ("Bank of America") has filed a Motion to Dismiss under Fed R. Civ. P. 12(b)(6) on Ms. Cepeda's claim that it violated 12 C.F.R. § 1024.36(c) and 12 C.F.R. § 1024.36(d)(2)(i)(A) of the Real Estate Settlement Procedures Act (Regulation X). (ECF No. 31.) Additionally, the defendants Fay Servicing, LLC ("Fay") and Wilmington Trust National Association Solely as Trustee for the MFRA Trust 2014-2 ("Wilmington") have filed a Motion for Summary Judgment with respect to their alleged breach of contract, violation of various notice requirements under Rhode Island law, and violations of the Fair Debt

1

Collection Practices Act, 15 U.S.C. § 1692, and the Truth in Lending Act, 15 U.S.C. § 1601. (ECF No. 50.)

For the following reasons, the Court GRANTS both Motions.

## I. BACKGROUND

On December 22, 2006, Ms. Cepeda granted a mortgage to Bank of America, N.A. ("Bank of America") for a residential property at 177 Dexter Street, Providence, Rhode Island. (ECF No. 53-1.) At all relevant times, the defendants issued monthly mortgage statements to the plaintiff. (ECF No. 53-8.)

In or around August 2016, Ms. Cepeda defaulted on the mortgage. (ECF No. 53 ¶ 9.) On October 3, 2016, Bank of America sent the plaintiff a notice of mediation Conference. (ECF No. 53-2.) On January 4, 2017, the Mediation Coordinator issued a Certificate of Compliance with the Mediation Requirement, certifying that Bank of America provided the notice of mediation pursuant to R.I.G.L. § 34-27-3.2. (ECF No. 53-3.)

On September 14, 2017, Bank of America sent Ms. Cepeda a notice of intent to accelerate. (ECF No. 53-4.) On September 29, 2017, Bank of America assigned the mortgage to Wilmington. (ECF No. 53 ¶ 7.) Fay took over as the service of the mortgage on November 1, 2017. *Id.* ¶ 8.

On December 15, 2017, Fay sent Ms. Cepeda a second notice of intent to accelerate.[1] (ECF No. 53-5.) This second Notice stated, in relevant part:

---

[1] Ms. Cepeda had received two notices of intent to accelerate; the one from Fay, at issue here, was the second. The first, sent by Bank of America when it was the servicer of the mortgage, is not at issue on the instant motions.

2

> This letter is formal notice by Fay Servicing, LLC, the Servicer of the above-referenced loan, on behalf of Wilmington Trust National Association not in its individual capacity but solely as trustee for MFRA Trust 2014-2, that you are in default under the terms of the documents creating and securing your Loan … including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"), for failure to pay amounts due.
>
> You have a right to cure your default. To cure the default, you must pay the full amount of the default on this loan by 01/19/2018 (or if said date falls on a Saturday, Sunday or legal holiday, then on the first business day thereafter). Failure to cure the default on or before this date may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding where applicable, and sale of the property.
>
> As of the date of this notice, the total amount required to cure the default is $7,504.99….
>
> You can cure this default by making a payment of $7,504.99 by 01/19/2018. Please note any additional monthly payments, late charges or other charges that may be due under the Note, Security Instrument and applicable law after the date of this notice must also be paid to bring your account current. …
>
> You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale.
> *Id.*

Ms. Cepeda does not dispute that Fay mailed, and the plaintiff received, this second Notice.

On September 27, 2018, Wilmington and Fay mailed Ms. Cepeda a notice of availability of mortgage counseling services pursuant to § 34-27-3.2. (ECF No. 53-6.) On November 15, 2018, Wilmington and Fay sent Ms. Cepeda a notice of foreclosure sale, identifying the sale date as January 7, 2019. (ECF No. 53-7.)

Ms. Cepeda filed suit against Bank of America, Fay, and Wilmington on January 3, 2019.

Against Fay and Wilmington, she has alleged the following claims:

- Failure to provide proper notice pursuant to Paragraph 22 of the mortgage (breach of contract)
- Failure to provide notice of foreclosure counseling pursuant to R.I.G.L. § 34-27-3.1
- Failure to provide notice of mediation pursuant to R.I.G.L. § 34-27-3.2
- Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*
- Failure to provide monthly mortgage statements pursuant to the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*

Against Bank of America, Ms. Cepeda alleges that it violated 12 C.F.R. § 1024.36(c) and 12 C.F.R. § 1024.36(d)(2)(i)(A) when it failed to properly respond to notices of error she sent on October 29, 2018.

Additional facts specific to the motions at issue are included, as necessary, below.

## II.   DISCUSSION

### A. Bank of America's Motion to Dismiss

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl.*

4

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The relevant question … in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007)).

Ms. Cepeda alleges that Bank of America violated "12 C.F.R. § 1024.36(c) and 12 C.F.R. § 1024.36(d)(2)(i)(A) of Regulation X." (ECF No. 1 ¶ 137.) Section 1024.36(c) provides that within five days of receiving a request for information from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the information request. Section 1024.36(d)(2)(i)(A) provides that "[n]ot later than 10 days … after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignees of a mortgage loan," the servicer must comply with 1024.36(d)(1) by providing the borrower with the requested information and contact information.

In support of her claim, Ms. Cepeda alleges that Bank of America failed to respond to her October 29, 2017, notice of errors, which she alleges is attached as Exhibit F to her Complaint. Ms. Cepeda further alleges that Bank of America's response is attached as Exhibit F-1 to the Complaint. However, there is no "Exhibit F" to the Complaint and the documents included as Exhibit F-1 are letters from Bank of America dated October 22, 2018 and November 2, 2018, responding to plaintiff's correspondence dated October 9, 2018 and October 29, 2018, not a notice of errors

5

dated October 29, 2017. This pattern continues throughout Ms. Cepeda's Complaint. Bank of America therefore argues that Ms. Cepeda cannot state a claim for relief in relation to a nonexistent October 29, 2017, notice of errors.

Ms. Cepeda responds that the references to October 29, 2017, in the Complaint is a typographical error and the actual date of the notice of errors (which was attached to the Complaint at Exhibits F,G,H,I,J,K and L) was October 29, 2018.[2] It is clear this was a clerical error in the Complaint's drafting and for purposes of this motion the Court will consider all references to October 29, 2017 to instead refer to the letter sent on that date in 2018.

The documents demonstrate that Bank of America complied with Regulation X. For instance, while Ms. Cepeda argues that Bank of America's November 2, 2018, response to the October 29, 2018, "Notice of Error 1" violated Regulation X by "failing to correct an error by which Defendant had failed to provide the contractual status of the mortgage loan when [Bank of America] transferred ownership of the mortgage loan," Bank of America previously had provided this information. On January 12, 2018, Bank of America responded to a prior qualified written request ("QWR") from Ms. Cepeda dated December 7, 2017, in which Bank of America informed her that the "servicing of the loan was transferred from Bank of America, N.A. to Fay Servicing on November 1, 2018" and that "at the time the account was transferred, the account

---

[2] Because the documents at issue in Bank of America's motion were attached to the plaintiff's Complaint, the Court may consider them on a motion to dismiss. *See Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 68 (1st Cir. 2014).

was delinquent and due for the August 2017 through October 2017 installments…."[3]

The January 12, 2018, letter from Bank of America also included a copy of the "Loan Transaction History Statement."

> Section 1024.36(f)(1)(i) of Regulation X provides that:
>
> A servicer is not required to comply with the requirements of paragraphs (c) and (d) of this section if the servicer reasonably determines that any of the following apply:
>
> …
>
> (i)   Duplicative Information. The information requested is substantially the same as information previously requested by the borrower for which the servicer has previously complied with its obligation to respond pursuant to paragraphs (c) and (d) of this section.
>
> …
>
> (iv)  Overbroad or unduly burdensome information request. The information request is overbroad or unduly burdensome. An information request is overbroad if a borrower requests that the servicer provide an unreasonable volume of documents or information to a borrower. An information request is unduly burdensome if a diligent servicer could not respond to the information request without either exceeding the maximum time limit permitted by paragraph (d)(2) of this section or incurring costs (or dedicating resources) that would be unreasonable in light of the circumstances. To the extent a servicer can reasonably identify a valid information request in a submission that is otherwise overbroad or unduly burdensome, the servicer shall comply with the requirements of paragraphs (c) and (d) of this section with respect to that requested information.

Because Bank of America previously provided information to Ms. Cepeda regarding "the contractual status" of her loan in response to a December 7, 2017 QWR, Bank of America was not required to provide the same information in its

---

[3] It is undisputed that Bank of America ceased servicing the plaintiff's loan on November 1, 2017. (ECF No. 1 ¶ 138.)

November 2, 2018, response to the October 29, 2018, notice of errors. That letter requested "duplicative information" which Bank of America had provided in prior letters, including those dated January 18, 2018 and October 22, 2018—copies of which were enclosed with its November 2, 2018 response. Accordingly, Bank of America's response that "no corrections are required in response to your initial request" did not violate Regulation X.

This pattern continued with each of Ms. Cepeda's notices of error. That is, for each one, Ms. Cepeda sought information previously provided in response to her earlier QWRs and was therefore duplicative of information previously requested and provided. (Or, in the case of "Notice of Error 6," which requested all periodic statements prepared and mailed during an eleven-year period, was both overly broad and unduly burdensome and duplicative of other information already provided.) Ms. Cepeda therefore cannot state a plausible claim that Bank of America violated Regulation X.

### B. Fay and Wilmington's Motion for Summary Judgment

Summary judgment is granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R.*

*Wireless Corp.,* 217 F.3d 46, 52 (1st Cir. 2000).

### 1. Failure to Provide Proper Notice Pursuant to Paragraph 22 of the Mortgage (Breach of Contract)

Ms. Cepeda asserts that Fay's December 15, 2017, notice of intent to accelerate did not comply with Paragraph 22 of the mortgage, which is a condition precedent, requiring strict compliance, when a mortgagee seeks acceleration and foreclosure. *See Woel v. Christiana Tr. as Tr. for Stanwich Mortg. Loan Tr. Series 2017-17*, 228 A.3d 339, 345 (R.I. 2020); *Martins v. Fed. Hous. Fin. Agency*, 214 F. Supp. 3d 163, 169 (D.R.I. 2016).

Paragraph 22 of the mortgage provides as follows:

> 22. Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default on any other defense of Borrower to acceleration and sale.

Fay's notice of intent to accelerate included the following:

(a) "you are in default under the terms of the documents creating and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"), for failure to pay amounts due;

(b) "You can cure this default by making a payment of $7,504.99"

(c)  "by 1/19/2018"

9

    (d) "Failure to cure the default on or before this date may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding where applicable, and sale of the property."

    (e) "You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration ad sale."

The notice complied with all the substantive requirements set forth in Paragraph 22. This matter therefore is distinguishable from the defective notice in *Martins*, where the notice was sent *after* acceleration, did not include a date by which to cure, or did not state that the plaintiff had "a right to bring court action to assert the non-existence of default or any other defense." 214 F. Supp. 3d at 169. Similarly, the notice here is distinguishable from the notice in *Woel*, which did not inform the plaintiff of his right to reinstate the mortgage after acceleration, instead informing of the inequivalent right to cure. 228 A.3d at 347.

The Court finds that Fay's notice strictly complied with Paragraph 22. Ms. Cepeda's breach of contract claim therefore cannot be sustained as a matter of law.

### 2. Failure to Provide Notice of Foreclosure Counseling (R.I.G.L. § 34-27-3.1)

Pursuant to R.I.G.L. § 34-27-3.1, "[n]o less than forty-five (45) days prior to initiating any foreclosure of real estate … the mortgagee shall provide to an individual consumer mortgagor written notice of default and the mortgagee's right to foreclose by first class mail at the address of the real estate…." *See* § 34-27-3.1. The notice in this case was in the form prescribed by the Rhode Island Department of Business Regulation (Banking Bulletin 2018-2).

Fay has provided an affidavit stating that this notice was mailed to Ms. Cepeda on September 26, 2018 (the date the letter was dated), approximately 50 days prior to defendants' mailing of the November 15, 2018, notice of sale. Ms. Cepeda, however, asserts that she did not receive the notice of foreclosure counseling until October 2, 2018, and that it actually was postmarked September 27, 2018. Under Rhode Island law, the date of postmark is "conclusive (albeit not exclusive) evidence of the date mailing." *Rivera v. Employees' Ret. Sys. of R.I.,* 70 A.3d 905, 2011 (R.I. 2013).

In any event, regardless of the exact date of mailing, the question is whether the notice is considered to have been provided on the date Fay mailed it or on the date Ms. Cepeda received it. Ms. Cepeda primarily cites to *City of Pawtucket v. Laprade*, 94 A.3d 503 (R.I. 2014), an action under the state's Law Enforcement Officer Bill of Rights Act. That statute had a requirement that "[n]ot less than ten (10) days prior to the hearing date, the charging law enforcement agency shall provide to the law enforcement officer" evidence to be used at the hearing. The law enforcement agency provided the evidence one day late.

Here, Ms. Cepeda argues that the *Laprade* court interpreted "provide" to mean actual receipt and not a deposit on the mail. But that case includes no discussion of mail at all nor of any distinction between methods of delivery for that matter. Additionally, the statute at issue in *Laprade*, which of course involved a much different subject matter, did not, like the statute here, require that the notice must be provided "by first class mail." Moreover, although Ms. Cepeda argues that § 34-27-3.1 requires actual receipt because the dictionary definition of "provide" is "an act

11

of furnishing or supplying a person," that definition does not include the entire phrase used in the statute: "by first class mail."

A party cannot be sure when first class mail will be delivered to or opened by the recipient and only has control over when it is mailed. The requirement of § 34-27-3.1 to "provide … by first class mail," therefore, is satisfied upon the date of mailing. Here, the defendants' notice is postmarked September 27, 2018; as such, the defendants mailed the notice several days before the deadline.

### 3. Failure to Provide Notice of Mediation (R.I.G.L. § 34-27-3.2)

On October 2, 2016, at the time that it still was the mortgagee, Bank of America sent Ms. Cepeda a notice of mediation as required by R.I.G.L. § 34-27-3.2. On January 4, 2017, a Mediation Coordinator executed a certificate indicating that Bank of America had complied with § 34-27-3.2. Ms. Cepeda asserts that this notice of mediation was invalidated by the fact that Bank of America subsequently transferred the mortgage to Wilmington, who, Ms. Cepeda argues, should have itself then provided another notice of mediation.

Nothing within § 34-27-3.2 provides for multiple opportunities to mediate within a single foreclosure action. Indeed, after two attempts "by the mediation coordinator to contact the mortgagor, the mortgagor fails to respond to the mediation coordinator's request to appear a mediation conference … the mediation requirements of this section shall be deemed satisfied…." R.I.G.L. § 34-27-3.2(g). The Mediation Coordinator in this case certified that Ms. Cepeda failed to respond to two attempts at contact. (ECF No. 52-3.)

Furthermore, the Rhode Island Supreme Court has held that when a mortgage is transferred or assigned the assignee or transferee acquires all the rights and powers of the transferor or assignor. *Ingram v. Mortg. Elec. Registration Sys, Inc.*, 94 A.3d 523, 528-29 (R.I. 2014). Thus, when the mortgage was transferred to Wilmington, Wilmington acquired all rights and powers of Bank of America, including those relative to the previously sent mediation notice.

### 4. Violation of the Fair Debt Collections Practice Act, 15 U.S.C. § 1692 *et seq.*

Ms. Cepeda's claim for Fay and Wilmington's alleged violation of the Fair Debt Collections Practice Act, 15 U.S.C. § 1692, is premised on the notion that the various notices mentioned above (the default notice, the mediation notice, and the foreclosure counseling notice) were improper and therefore the efforts to collect the debt were unfair and deceptive. However, because these notices complied with the relevant statutes, Ms. Cepeda's FDCPA claim cannot be sustained.

### 5. Failure to Provide Monthly Mortgage Statements in Violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*

Ms. Cepeda's claim under the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.*, is premised upon Wilmington's purported failure to provide her with monthly mortgage statements since January 5, 2018, and her allegation that the statements failed to comply with 12 C.F.R. § 1026.41 and 15 U.S.C. § 1638.

The record evidence, however, demonstrates that the defendants did send Ms. Cepeda monthly mortgage statements for all months relevant to her Complaint. (ECF No. 52-8.) Further, these statements contained all of the information required by 12

C.F.R. § 1026.41, including the amount due, an explanation of the amount due, a past payment breakdown, transaction activity, partial payment information, contact information, account information, and delinquency information. Ms. Cepeda additionally argues that these statements failed to comply with 12 C.F.R. § 1026.41 because she was wrongly assessed property preservation fees, advertising costs, and foreclosure fees.[4]

In support of her TILA claim, Ms. Cepeda asserts the following:

a. Her mortgage loan account has been charged unreasonable charges on the statements.

b. She has incurred the time and expense away from her usual activities to visit her attorney on at least ten occasions to discuss the inaccurate statements.

c. She has incurred postage costs, copying costs and stationery and envelope costs for transmission to the Defendant's loan servicer disputing the inaccurate statements.

---

[4] For their part, the defendants argue that Paragraph 9 of the Mortgage permits the Lender (Wilmington) to "do and pay whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Interest, including protecting and/or assessing the value of the Property … and [ ] paying reasonable attorneys' fees to protect its interest in the Property" in the event of the Borrower's default. Likewise, Paragraph 14 of the Mortgage permits the Lender to "charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorney's fees, property inspection and valuation fees."

> d. She has incurred attorney fees and costs for the prosecution of this action. Her fee agreement with her attorney provides that she will be responsible for legal fees and expenses incurred in regard to this action.

There being no allegation that Ms. Cepeda paid the allegedly improper fees, her claim for damages includes only the costs and fees of pursuing this lawsuit. That is to say, there is no explanation as to how the allegedly improper fees caused her actual harm. A plaintiff asserting a viable TILA claim must allege a "concrete" injury. *Accord Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548-50 (2016). In *Spokeo*, "[t]he Supreme court held that 'not all inaccuracies cause harm or present any material risk of harm' and, therefore, that "a complaint based upon only a technical violation of a statutory right, without any explanation of how the violation actually harmed the plaintiff, failed to establish standing." *Viera v. Bank of N.Y. Mellon as Tr. For Certificate Holders of Cwalt, Inc.*, 2018 WL 4964545, * 4 (D.R.I. Oct. 12, 2018) (quoting *Spokeo*, 136 S. Ct. at 1548, 1550). *See also St. Amour v. Federal Home Loan Mortg. Corp.*, 2019 WL 1453055, *2 (D.R.I. Apr. 2, 2019) (dismissing claims alleging TILA violations where the sole damages alleged pertained to costs and fees in prosecuting the lawsuit); *Pemental v. Bank of New York*, 2017 WL 3279015, *7 (D.R.I. May 10, 2017), *report and recommendation adopted by* 2017 WL 3278872 (D.R.I. Aug. 1, 2017), ("Post-*Spokeo* decisions make clear that this requirement applies to TILA; that is, a complaint that alleges a technical TILA violation, but fails to allege a concrete or particularized injury, must be dismissed."). Costs and attorneys' fees

incurred in prosecuting of a TILA claim "are not a substitute for the injury-in-fact requirement developed in *Spokeo*." *Viera*, 2018 WL 4964545, at *4.

Here, Ms. Cepeda's alleged damages are the costs she has incurred in making her claim as well as attorney fees. With no plausible injury-in-fact other than these attorney's fees and costs in prosecuting a TILA claim, Ms. Cepeda's TILA claim fails as a matter of law.

### III.   CONCLUSION

For the foregoing reasons, Fay and Wilmington's Motion for Summary Judgment (ECF No. 50) is GRANTED.  Bank of America's Motion to Dismiss (ECF No. 31) is GRANTED.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
September 28, 2020