UNITED STATES DISTICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**DOLORES CEPEDA**

    **VS**                              **C.A.2019-CV-5**

**BANK OF AMERICA, N.A.**
**FAY SERVICING, LLC**
**WILMINGTON TRUST NATIONAL ASSOCIATION**
**SOLEY AS TRUSTEE FOR THE MFRA TRUST 2014-2 ,ALIAS**

**MEMORANDUM OF LAW IN REPLY TO RESPONSE TO MOTION TO ALTER AND AMEND JUDGMENT PURSUANT TO F.R.C.P.59(e)**

      This matter was heard by the Court on the Motion for Summary Judgment pursuant FRCP 56  filed by Defendants   Wilmington Trust ("Wilmington" and Fay Loan Servicing ("Fay").  In the complaint, Plaintiff alleged a  violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA") for failure to mail the Plaintiff accurate periodic statements  as required by the provisions 15 U.S.C.§§ 1638 and 12 C.F.R. 1026.41 respectively. Plaintiff also asserted two claims for violations of the Fair Debt Collection Practices Act,  15 USC 1692 against Fay for deceptive conduct, specifically for twice seeking to foreclose on the Plaintiff by not complying with the terms of the mortgage and the note and by not providing the Plaintiff a Notice of Mediation prior to mailing a Notice of Sale and by not

providing the Plaintiff a Notice of Foreclosure Counseling at least forty five days prior to mailing a Notice of Sale, not including the date of mailing. The Plaintiff also filed a Complaint against Wilmington claiming that it had not complied with the terms of the mortgage and the note.  The Plaintiff also filed a supplemental memorandum of law, which incorporated Rhode Island state law pronouncements in  *Woel  v. Christiana Trust, as Trustee*, 228 A. 3d 339 (R.I., 2020).   This case which was decided June 2, 2020 extensively discusses Rhode Island contract and foreclosure  law and specifically holds that strict compliance without a demonstration of prejudice applies to any mortgage foreclosure cases.

In *FDIC v. World University, Inc*. 978 F.2d 10, 16 (1st Cir.1992), the First Circuit defined the basis for Motions for reconsideration pursuant to Rule 59:

Rule 59(e) motions are "aimed at *re*consideration, not initial consideration." *Harley-Davidson Motor Co., Inc. v. Bank of New England,* 897 F.2d 611, 616 (1st Cir.1990) (citing *White v. New Hampshire Dept. of Employment Sec.,* 455 U.S. 445, 451, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982)) (emphasis in original). Thus, parties should not use them to "raise arguments which could, and should, have been made before judgment issued." *Id.* (quoting *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986)). Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence. *Meyer,* 781 F.2d at 1268. They may not be used to argue a new legal theory. *Id.*

F.R.C.P. 59(e) permits a party to file a Motion to Amend or Alter the

Judgment within 28 days of the Entry of the Judgment. This Motion has

been timely filed. The First Circuit has noted that Court Orders if

unambiguous are not subject to collateral attack as to their meaning. In

*Negron-Almeda v. Santiago*, 528 F.3d 15 22-23 (1stCir.,2008) the Court

held:

District court orders are documents of considerable import. A district court
speaks to the parties and the court of appeals primarily through its
orders. *See In re Thinking Machs. Corp.,* 67 F.3d 23*23 1021, 1026 (1st
Cir.1995)* (explaining that "[c]ourt orders are customarily important events
in the life of a judicial proceeding; they are the primary means through
which courts speak"); *Advance Fin. Corp. v. Isla Rica Sales, Inc.,* 747 F.2d
21, 26 (1st Cir. 1984) (similar). Thus, the phrasing of a court order is
significant. When that phraseology is imprecise, there may be some play in
the joints. For example, a reviewing court can comb relevant parts of the
record to discern the authoring court's intention. *See, e.g., Weyerhaeuser Co.
v. Wyatt,* 505 F.3d 1104, 1111 (10th Cir.2007); *Subsalve USA Corp. v.
Watson Mfg., Inc.,* 462 F.3d 41, 45 (1st Cir.2006); *see also Martha's
Vineyard Scuba Hq. v. Unidentified Vessel,* 833 F.2d 1059, 1066-67 (1st
Cir.1987) (explaining that some deference is due to the writing judge in
elucidating the meaning and intendment of an imprecise or ambiguous
order). But when a court's order is clear and unambiguous, neither a party
nor a reviewing court can disregard its plain language "simply as a matter of
guesswork or in an effort to suit interpretive convenience." *Alstom Caribe,
Inc. v. Geo. P. Reintjes Co.,* 484 F.3d 106, 115 (1st Cir.2007); *see Lefkowitz
v. Fair,* 816 F.2d 17, 22 (1st Cir.1987) (enforcing district court order that
"contained not the slightest ambiguity" over a claim that the authoring judge
"must" have meant something different).

To avoid Manifest Error and to address issues raised but not referenced by

the Court in its decision, in order to clarify the decision the Plaintiff has filed

this Motion.

This memorandum will address the issues referenced in *Woel*, namely that there is a distinction between cure a default and reinstate after acceleration. The Plaintiff's note specified that the default letter could only incorporate the amount due for principal and interest up to the cure date certain specified in the default letter. However this language was not complied with because the December 15, 2017 purported default letter also included charges for escrow and fees and costs which were not authorized by the Note. The other charges are more appropriately included in an acceleration notice, not a default notice.

*Woel's* mandate of strict compliance requires that all aspects of the notices mailed to the Plaintiff must strictly comply with the terms of the mortgage and cannot be deceptive:

As a matter of contract law, strict compliance with the requirements contained in paragraph 22 is a condition precedent to acceleration and a valid foreclosure sale.

*Woel* indicated that strict compliance with all aspects of the mortgage was required, which includes an accurate amount of default. In *Woel* at page 11, the Court indicated its concern that the homeowner not be misled by the mortgagee:

Because mortgagees in Rhode Island may accelerate the mortgage and conduct a foreclosure sale without immediate judicial oversight, a strict compliance standard concerning the notice requirements prevents mortgagees from accelerating and foreclosing without first providing a notice of default that adequately informs the mortgagor of his or her rights under the mortgage contract. Strict compliance with paragraph 22 is essential to ensuring that mortgagors are fully informed of their rights and **will not be misled** by a default notice provided by a mortgagee.

The Plaintiff in this case was misled as to the amount necessary to cure the default and as a result this purported default letter was defective. *Woel* distinguished between cure and reinstate:

The language in paragraphs 19 and 22 illustrates the distinction between curing the default after acceleration and reinstating the mortgage after acceleration. Paragraph 22 explains that "the right to cure" is the mortgagor's right to pay the pre-acceleration default amount owed and thus be protected from acceleration. If the mortgagor fails to cure, then the mortgagee may accelerate the note, with the entire amount of the note immediately due and owing-not just the pre-acceleration default amount. The mortgagor may reinstate the mortgage-which would return the mortgage to its pre-acceleration status with monthly payments-by satisfying the four conditions set out in paragraph 19. Under paragraph 19, to reinstate the mortgage after acceleration, the mortgagor must: (1) cure the default; (2) cure any default of any other covenant or agreement in the mortgage; (3) **pay any expenses incurred in enforcing the security instrument, including, for example, reasonable attorneys' fees and property inspection and valuation fees** ; and (4) take any action as reasonably required by the mortgagee to protect its interest in the mortgage.

Thus in *Woel,* the Court noted that expenses charged to the mortgage loan account are not the proper subject of a Default Notice, pursuant to paragraph 22. Only the principal and interest due on the note are appropriate subjects of

a default notice. Other fees and expenses are the subject of an acceleration notice.

The Supreme Court in *Woel* recognized this established provision of mortgage law by noting the difference between cure the default and reinstate after acceleration. The mortgage is the security instrument, which provides collateral for a note. However the obligation arises from the Note, not the mortgage and the Note specifically requires that after acceleration, the mortgagor has an additional thirty days prior to invoking any remedy under the Security Instrument, which these defendants claim was the exercise of the statutory power of sale. The Court made it clear that acceleration had to be followed by a demand for all sums secured by the Security Instrument, the Court stated:

Paragraph 22 of the mortgage contract clearly and unambiguously required that, "prior to acceleration[, ]" the mortgagee must provide notice of default to the mortgagor and include certain information within that notice, including informing the mortgagor of "the right to reinstate after acceleration[.]" As a matter of contract law, strict compliance with the requirements contained in paragraph 22 is a condition precedent to acceleration and a valid foreclosure sale.

What is more, strict compliance with the notice requirements in a mortgage is especially important given that Rhode Island is a nonjudicial foreclosure state. Because mortgagees in Rhode Island may accelerate the mortgage and conduct a foreclosure sale without immediate judicial oversight, a strict compliance standard concerning the notice requirements prevents mortgagees from accelerating and foreclosing without first providing a notice of default

that adequately informs the mortgagor of his or her rights under the mortgage contract. Strict compliance with paragraph 22 is essential to ensuring that mortgagors are fully informed of their rights and will not be misled by a default notice provided by a mortgagee.[11]

Thus in addition to the requirements to cure the arrearage, before Defendants could send a Notice of Sale on behalf of the mortgagee, the Supreme Court has held that strict compliance with the mortgage and the note required the following:

1.  A default letter with a specific amount of principal and interest due along with a certain date to cure and other specific language in the mortgage which was not deceptive.

2.  A notice accelerating the mortgage loan, pursuant to paragraph 10 of the note providing the borrower thirty days from the date the notice is given pursuant to paragraph 15 of the mortgage to pay all sums secured by the mortgage.

3.  This second thirty day period provided the borrower the opportunity not to cure the default of principal and interest which the default letter was limited to cure, but the other components of the sums secured by the mortgage.

4.  Only after this acceleration notice was mailed and thirty days had passed could the note holder exercise the statutory power of sale.

The  Supreme Court in *Woel* clearly recognized these numerous steps

prior to mailing a Notice of Sale or any other action permitted by the

mortgage,  when it stated:

In this case, the default notice failed to inform plaintiff of the right to reinstate the mortgage after acceleration. Paragraph 22 provides that the default notice "shall" inform plaintiff "of the *right to reinstate* after acceleration[.]" (Emphasis added.) The default notice in this case, however, provided: "You have the *right to cure* the default after acceleration[.]" (Emphasis added.) These terms are not synonyms; yet a fair reading of the default notice suggests that, if plaintiff cured the default after acceleration, the mortgage would be reinstated. This is misleading, inaccurate, and, at best, incomplete.

The Defendant has not denied that an acceleration notice was not

mailed. Thus Plaintiff raised this issue in the complaint as a defect in the

foreclosure process and Defendants never provided an acceleration but instead

in its reply to the Response to the Motion for Summary Judgment cited the

case of *Viera v. Bank of New York Mellon*, CA. No 17-cv-523 for the

proposition that no secondary notice of acceleration is required to foreclose.

However the Rhode Island Supreme Court in *Woel* emphasized that a separate

notice of acceleration, as to which the Plaintiff has thirty days to reinstate

under the terms of the note and paragraph 19 of the mortgage, is required in

order exercise the statutory power of sale under Rhode Island law. Since the

Court in diversity must follow Rhode Island law, *Woel* supports the Plaintiff's

position on this issue.

Finally, the Court's concern for innocent purchasers for value with no knowledge of the defects in the foreclosure process are not implicated in this case. The purported purchaser is  an entity affiliated with the Defendant Trust and shares the same address.  Defendant, Wilmington Trust National Association solely as Trustee for the MFRA Trust 2014-2 ("Wilmington Trust")  claims to own Plaintiff's mortgage.  Wilmington Trust has a primary business address of 350 Park Ave, 20th Floor, New York, NY 10022 The purchaser, Sahara Property Management, LLC ("Sahara") is a limited liability company, organized pursuant to the laws of Delaware, with an address of 350 Park Avenue, 20th Floor, New York, NY 10222.

### ANALYSIS OF NOTE AND MORTGAGE  WHICH ARE REQUIRED TO BE READ TOGETHER PURSUANT TO ESTABLISHED PROVISIONS OF RHODE ISLAND LAW

State law clearly holds that any ambiguities in a contract are to be interpreted against the party which addressed the contract. Rhode Island law is quite specific that when a note and mortgage are executed at the same time they had to be read  together as integrated documents as stated in *Rhode Island DEPCO v. Coffey & Martinelli et al* 821 A.2d 222 (R.I., 2003) :

We also have held, in *Rotelli v. Cantanzaro,* 686 A.2d 91, 94 (R.I.1996), that instruments executed in the course of a single transaction at the same time and to accomplish the same purpose should be read and construed together.

 In Rotelli, the Supreme Court stated:


  It has long been a general rule in this jurisdiction that instruments executed "at the same time, for the same purpose and in the course of the same transaction * * * are to be considered as one instrument and are to be read and construed together."[1] *Old Kentucky Distributing Corp. v. Morin,* 50 R.I. 163, 165, 146 A. 403, 404 (1929)*; see also Maderios v. Savino,* 418 A.2d 839, 842 (R.I.1980) (promissory notes executed as part of single transaction construed together to determine the mutual rights and obligations of the parties)

Thus not only the mortgage must be reviewed to determine strict

compliance, but also the  provisions of the promissory note, since it was

executed at the same time as the mortgage.

## THE PROMISSORY NOTE READ TOGETHER WITH THE MORTGAGE REQUIRES THAT THE DEFAULT LETTER CAN ONLY CONTAIN A DEMAND FOR PAST DUE PAYMENTS OF PRINCIPAL AND INTEREST

The terms of the promissory note, particularly paragraph 6(C),  clearly

limited a default notice to past due payments of principal and interest. This

provision specifically states:


If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount **by a certain date,** the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

Paragraph  3  of the note  specifically limited the monthly payments as payments of principal and interest and as the remainder of the note contains no language whatsoever as to escrow. Paragraph 6(B) also specifically defines Default as "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default."

Paragraph 3(A) further defines monthly payments as:

I will pay principal and interest by making a payment every month" There is no other definition of monthly payment in either the note or the mortgage.  This definition was recognized by the Supreme Court in *Woel.* which held that the only component of the default letter was past due payments of principal and interest.  The Court noted that to cure a default after acceleration

This Court committed manifest error by not analyzing the terms of the integrated note and mortgage. However  the note and mortgage allow them to demand the amount due for principal and interest only in the Notice of Default.  This is not a mischaracterization, but is the express language of the note.  The mortgagee and note owner prepared this document and it is to be construed against the maker under Rhode Island law.  Thus any ambiguities are to be construed against it, not the mortgagors.  The note and mortgage

11

make it clear that fees, expenses and escrow are not components of the default notice. Paragraph 19 allows those items to be recouped if the borrower does not cure the default and seeks to reinstate after acceleration. The Supreme Court in *Woel* interpreted it this way stating that the original Motion Justice had denied an earlier motion by determining:

that the "right to reinstate after acceleration" is not equivalent to the "right to cure the default after acceleration[,]" because curing the default is only one of multiple steps that must be taken to reinstate after acceleration.

Those additional steps necessary to reinstate after acceleration pursuant to Paragraph 19 were:

Under subParagraph  (2) a borrower must after acceleration " cure any default of any other covenant or agreement in the mortgage". What were those covenants or agreement in the mortgage? The mortgage specifically requires payment of escrow on the date that periodic payments are due. These obligations are due after acceleration, under paragraph 19, not to cure the default.

Under subparagraph (3) the borrower had to "pay any expenses incurred in enforcing the security instrument, including, for example, reasonable attorneys' fees and property inspection and valuation fees. These included fees, which Defendants erroneously included in the default notice.

Under subparagraph (4) the borrower had to "take any action as reasonably required by the mortgagee to protect its interest in the mortgage." These would include paying any obligations which came ahead of the mortgage such as housing code violations.

Since this is a diversity case, Rhode Island law must govern the analysis, not any Federal law.  Before Fay could send a Notice of Sale  on behalf of the mortgagee, *Woel* made it clear that strict compliance with the mortgage and the note required a particular procedure. Plaintiff had to be provided a default letter in strict compliance with the note and mortgage which was not deceptive and included an accurate statement of the amount due for principal and interest providing her an opportunity to cure on a particularly specified date. If she did not cure, Paragraph  10 of the Note required the mortgagee or servicer acting on its behalf to send a notice accelerating  the mortgage note,  providing them thirty days from the date the notice was given pursuant to paragraph 15 of the mortgage to reinstate, which included all sums secured by the mortgage, not just the past amount due for principal and interest. The note provided that if she did not reinstate the note after receipt of an accurate Notice of Acceleration detailing the included the amount needed to reinstate, including the amount to cure the default, all subsequent payments and all other sums secured by the

13

mortgage, including reasonable fees and expenses as specified in paragraph 19 of the mortgage,  the mortgagee could then either exercise the statutory power of sale or seek other relief under the Security Instrument, without further demand.

This Court committed manifest error under Rhode Island law by not addressing the failure of Fay and Wilmington to comply with the note and mortgage and  ignored the  provisions of paragraph 10 of the note which required an acceleration notice when it stated:

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

The Supreme Court in Woel, clearly envisioned that a Notice of Sale had to be preceeded by an acceleration notice.  This failure to provide such a Notice  along with the allegations regarding the defects in the default letter of Fay should have been considered by the Court.  The letter deceptively advised the Plaintiff that failure to cure the default "may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding where applicable and sale of the property".  This

14

conjunctive sentence required two events to occur, acceleration and a judicial proceeding, which is applicable in Rhode Island, pursuant to R.I.G.L 34-27-1,  and only then could a sale occur based on the language of this default letter. As a result the Court committed manifest error by ignoring the *Woel* decision which clarified that acceleration was needed. Since no acceleration notice was mailed, this letter was defective.

The Court also committed manifest error by its application of  *Rivera v. Employee's Retirement Board of Rhode Island*, 20 A. 3d 905 (R.I., 2013). Rivera reviewed a dispute as to when a letter was actually deposited in the United States mail, not when the letter was actually received. The Plaintiff in Rivera was required to file an appeal within thirty days after the date of mailing of a letter, as to which the Defendant provided a postmark of a particular date.  The Supreme Court noted in *Rivera* that:

 For the purpose of ascertaining what was the date of "mailing notice" in any given case, we would consider a postmark to be conclusive (albeit not exclusive) evidence of the date of mailing. Thus unlike this case, Rivera involved a thirty day period which began on the date of mailing of the notice to file an appeal pursuant to R.I.G.L 42-35-15(b) which states:

 Proceedings for review are instituted by filing a complaint in the superior court of Providence County or in the superior court in the county in which the cause of action arose, or where expressly provided by the general laws in the sixth division of the district court or family court of Providence County, within thirty

(30) days after mailing notice of the final decision of the agency or, if a rehearing is requested, within thirty (30) days after the decision thereon

Thus *Rivera* had no bearing on a Statute such as this statute which specifically requires that the Notice of Foreclosure Counseling be provided45 days prior to mailing the Notice of Sale. The statutes prior to and after R.I.G.L. 34-27-3.1 indicate the legislative intent behind this statute which requires that the notice be provided, not mailed.  R.I.G.L 34-27-4 requiring a Notice of Sale requires mailing only thirty days before the first advertisement, not counting the date of mailing:

Provided, however, that no notice shall be valid or effective unless the mortgagor has been mailed written notice of the time and place of sale by certified mail return receipt requested at the address of the real estate and, if different, at the mortgagor's address listed with the tax assessor's office of the city or town where the real estate is located or any other address mortgagor designates by written notice to mortgagee at his, her, or its last known address, at least twenty (20) days for mortgagors other than individual consumer mortgagors, and at least thirty (30) days for individual consumer mortgagors, days prior to the first publication, including the day of mailing in the computation. The mortgagee shall include in the foreclosure deed an affidavit of compliance with this provision.

R.I.G.L 34-27-3.2 also requires that a mortgagor be provided a Notice of Foreclosure Counseling:

(d) The mortgagee shall, prior to initiation of foreclosure of real estate pursuant to § 34-27-4(b), provide to the mortgagor written notice at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices, that the mortgagee may not foreclose on the mortgaged property without first participating in a mediation conference. Notice addressed and

delivered as provided in this section shall be effective with respect to the mortgagor and any heir or devisee of the mortgagor.

This section of the General Laws thus recognizes that "provide" is equal to Delivery.

The Plaintiff created a genuine issue of material fact by stating that she received the regular mail notice on October 2, 2018. The Court committed manifest error by applying the so-called mail box rule and finding that the date of mailing was the date the notice was provided to the Plaintiff.   The Suprme Court in *Vicario v. Vicario*, 901 A. 2d 503 (R.I., 2006)  noted in a Family Court Order that a party had not provided the Court certain  documents within three weeks.   In *Insurance Company of North America v. Kayser-Roth*, 770 A. 2d 403 (R.I., 2001) the Supreme Court upheld the trial Judge's sanction interpreting provide as a transitive verb meaning to deliver:

 The preclusion order was tailored to preclude First State from introducing only the evidence that it repeatedly had refused to provide to opposing counsel so that opposing counsel could properly prepare for trial.

The General Assembly's use of provide in 34-27-3.1 and use of mail in 34-27-4 suggests that there is a clear distinction between the two verbs. The 45 day provision not including the date of mailing like in 34-27-4 indicates that the purpose of the statute was to distinguish provide from mailing. Section c of the statute made this clear:

17

(c) Failure of the mortgagee to provide notice to the mortgagor as provided herein shall render the foreclosure void, without limitation of the right of the mortgagee thereafter to reexercise its power of sale or other means of foreclosure upon compliance with this section. The mortgagee shall include in the foreclosure deed an affidavit of compliance with this section.

This section can be distinguished from 34-27-4(b), which states:

no notice shall be valid or effective unless the mortgagor has been mailed written notice of the time and place of sale by certified mail return receipt requested

34-27-3.1 is a precondition to the exercise of the statutory power of sale. It is respectfully suggested that this Court misinterpreted this statute and equated the act of mailing a document with the act of providing a document. For this reason, the Motion to Amend and Alter Judgment should be granted as to this Count, which would rescind the foreclosure as envisioned by the legislature.

The Court also committed manifest error by dismissing the FDCPA count not just on the foreclosure counseling and strict compliance argument, but also based on the fact that the Court did not address the prior mailing of the Notice of Sale as alleged in paragraph118 and 120:

118. It also made a threat to take legal action which could not legally be taken. Specifically it stated, through its attorney, by the letter dated July 23, 2018 that a Mortgage Foreclosure sale of the Plaintiff's property by statutory power of sale would occur on September 23, 2018.


120. The July 23, 2018 threat to conduct a Mortgage Foreclosure Sale on September 23, 2018 was a deceptive action on the part of Fay due to the failure to provide an accurate default notice and due to the fact the Plaintiff

was not mailed a Notice of Mediation nor was provided a Notice of Foreclosure Counseling at any time prior to the date the purported Notice of Sale dated July 23, 2018 was mailed to the Plaintiff.

This claim was distinct from the complaint relating to the November 15, 2018 Notice of Sale and was not considered when the Court made its decision.   There is no dispute that a Notice of Foreclosure counseling was not provided to Plaintiff forty five days before this Notice of Sale was mailed to her. She also incurred actual damages when her tenants received this letter and stopped paying her rent of $750.00 from September 2018 through January 2019 due to receipt of this first Notice of Sale. Thus the dismissal of the FDCPA case was manifest error, warranting that this Judgment be amended.

Finally Plaintiff suggests that the Plaintiff did incur actual damages regarding the inaccurate statements provided to her by Fay.  The Court committed manifest error by not recognizing the purpose behind this statute is to provide homeowners an accurate monthly statement, which accurately reflects their actual obligations.  They have a reasonable expectation to receive accurate monthly statements, which Congress found crucial in enacting the Truth in Lending Act.  The Rhode Island Supreme Court has found that for strict compliance the fact that a party did not make payments

as to an arrearage did not impact the obligation to send an accurate default

notice.

     The Court noted that the Plaintiff claimed the following actual

damages:

a. Her mortgage loan account has been charged unreasonable charges on the
statements.

b. She has incurred the time and expense away from her usual activities to
visit her attorney on at least ten occasions to discuss the inaccurate
statements.

c. She has incurred postage costs, copying costs and stationery and envelope
costs for transmission to the Defendant's loan servicer disputing the
inaccurate statements.

These were all actual damages and were not fees and costs related to the

pursuing of this lawsuit. Her affidavit in opposition to Summary Judgment

indicates in paragraph 98 that starting in March 2018, all the monthly

payments  made to Fay were returned to her. Thus the TILA Count should

not have been dismissed.

     If the Court decides to maintain its dismissal of the TILA or FDCPA

action *on  Spokeo* grounds, the Court should clarify to avoid mainifest error

that since this Court's actions regarding the TILA and FDCPA claims were

based on *Spokeo*, these dismissals were without prejudice and would have

no preclusive effect due to the lack of jurisdiction. The First Circuit in

*Dantzler v Empresas Berrios Inventory,* No 128-2028 (1st. Cir. May 1, 2020) held that a Spokeo dismissal was a dismissal for lack of jurisdiction, which is without prejudice.

For these reasons to avoid manifest error, this Court should amend its Order, and vacate the dismissal of the claims against Wilmington and Fay and in the alternative certify the question of the 34-27-3.1 notice and the 234-27-3.2 mediation notice to the Rhode Island Supreme Court to set forth a state Court ruling on these issues in view of the Supreme Court's recent decision in *Woel*.    The Plaintiff also requests oral argument for this Motion.


DOLORES CEPEDA

By her attorney,


October 26, 2020                              /s/ John B. Ennis
                                             JOHN B. ENNIS, ESQ. #2135
                                             1200 Reservoir Avenue
                                             Cranston, Rhode Island 02920
                                             (401) 943-9230
                                             Jbelaw75@gmail.com

**Certificate of Service**

I hereby certify that I emailed a copy of this Memorandum to Patrick T.
Uiterwyk and Justin Shireman on October 26, 2020  and by electronic filing.

/s/ John B. Ennis